UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| YALCIN AYASLI,<br><br>        Plaintiff,<br><br>        v.<br><br>SEZGIN BARAN KORKMAZ, KAMIL FERIDUN OZKARAMAN, FATIH AKOL, SBK HOLDINGS ANONIM SIRKETI, SBK HOLDINGS, USA, INC., BUGARAJ ELEKTRONIK TICARET VE BILISIM HIZMETLERI ANONIM SIRKETI, and MEGA VARLIK YONETIM ANONIM SIRKETI,<br><br>        Defendants. | Civil Action No. 19-cv-00183-JL |

DECLARATION OF SINAN GORKEM GOKCE

1. I, Sinan Gorkem Gokce, declare that I am a duly licensed Turkish attorney and a member of the bar of Istanbul, Turkey. I graduated from Istanbul University School of Law in 2005. I am currently the managing partner of my own firm, the Gokce Attorney Partnership, in Istanbul, Turkey. There are approximately 30 lawyers at my firm. Prior to founding my current firm, I was an associate in the Istanbul office of the international law firm Dentons. I am counsel-of-record for Defendant Bugaraj Elektronik Ticaret ve Bilisim Hizmetleri A.S. ("Bugaraj") in its litigation in Turkey against Plaintiff Yalcin Ayasli. I have personal knowledge of the facts stated in and documents attached to this Declaration as a result of that representation. I also have knowledge of the statements of Turkish law in this Declaration based on my experience practicing law in Turkey since 2005. I submit this Declaration in support of Sezgin Baran Korkmaz, SBK Holding, A.S., and Bugaraj's (collectively, the "Korkmaz Defendants") concurrently-filed motion to dismiss the above-captioned action for *forum non conveniens* and lack of personal jurisdiction (the "Motion").

## I. THE BORAJET AGREEMENT'S CHOICE-OF-LAW AND FORUM-SELECTION CLAUSE

2. I am informed and believe that the choice-of-law clause in Paragraph 7.1 of the BoraJet Agreement was drafted and inserted into the BoraJet Agreement by Ayasli's counsel during the BoraJet transaction. Neither the Korkmaz Defendants nor any of their lawyers or other representatives commented on, edited, or otherwise gave any input on the choice-of-law clause.

3. I am informed and believe that the forum-selection clause in Paragraph 7.2 of the BoraJet Agreement was drafted and inserted into the BoraJet Agreement by Ayasli's counsel during the BoraJet transaction. Neither the Korkmaz Defendants nor any of their lawyers or other representatives commented on, edited, or otherwise gave any input on the forum-selection clause.

4. Under Turkish Law, a forum-selection clause is presumptively mandatory and requires litigation in the chosen forum unless it explicitly states that the chosen forum is not the

exclusive forum for litigation.

5. Moreover, Turkish law does not limit the scope of a forum-selection clause to contract suits; all types of suits relating to the contract are within the scope of the forum-selection clause unless the forum-selection clause expressly limits the scope of the forum-selection clause.

6. Attached as Exhibit 1 is a true and correct copy of the relevant pages of the treatise *Turkish Civil Procedure* (15th edition) by Professor Hakan Pekcanitez, a prominent Turkish legal scholar, discussing the law of forum-selection clauses in Turkey.

7. Attached as Exhibit 2 is a true and correct copy of the relevant pages of the textbook, *Civil Procedure Law*, by Professor Baki Kuru, a prominent Turkish legal scholar, discussing the law of forum-selection clauses in Turkey.

## II. BUGARAJ'S CIVIL LAWSUIT AGAINST AYASLI IN TURKEY

8. On March 13, 2017, Bugaraj filed a civil complaint with a request for cautionary attachment against Ayasli in the Istanbul 3rd Commercial Court of First Instance for violations of the BoraJet Agreement dated December 29, 2016 (which memorialized Ayasli's sale of BoraJet to Bugaraj, is referenced in Paragraphs 405 and 414 of the Complaint in the above-captioned action, and is attached (without exhibits) to the concurrently-filed Declaration of Nafiz Cekirge). Attached as Exhibit 3 is a true and correct copy of that complaint.

9. On March 13, 2017, the court denied Bugaraj's attachment request. Attached as Exhibit 4 is a true and correct copy of that decision.

10. On April 3, 2017, Ayasli answered Bugaraj's complaint. Attached as Exhibit 5 is a true and correct copy of that answer.

11. On May 22, 2017, Bugaraj filed an answer to Ayasli's April 3, 2017, answer. Attached as Exhibit 6 is a true and correct copy of that answer.

12. On June 14, 2017, Ayasli filed an answer to Bugaraj's May 22, 2017, answer. Attached as <u>Exhibit 7</u> is a true and correct copy of that answer (without attachments).

13. On June 15, 2017, the 12th Chamber of the Istanbul Regional Court of Appeals affirmed the lower court's denial of Bugaraj's attachment request.

14. On August 23, 2017, the Istanbul 3rd Commercial Court of First Instance denied another attachment request by Bugaraj on the same ground as it denied Bugaraj's March 13, 2017, attachment request.

15. On November 21, 2017, Bugaraj filed a second complaint in the Istanbul 12th Commercial Court of First Instance against Ayasli and two other Turkish companies affiliated with Ayasli called Ortakoy Yali Turizm ve Ticaret Ltd. Sti. and Nuruosmaniye Kultur Turizm ve Ticaret Ltd. Sti. Attached as <u>Exhibit 8</u> is a true and correct copy of that complaint.

16. On December 29, 2017, the Istanbul 12th Commercial Court of First Instance consolidated the case with Bugaraj's other pending case in the Istanbul 3rd Commercial Court of First Instance commenced on March 13, 2017, with the consolidated case to be heard in the latter forum.

17. On January 15, 2018, Ayasli filed an answer in the consolidated case. Attached as <u>Exhibit 9</u> is a true and correct copy of that answer (without attachments).

18. In an undated document, Bugaraj requested another attachment. Attached as <u>Exhibit 10</u> is a true and correct copy of that attachment request (with certain attachments).

19. On February 23, 2018, Ayasli responded to Bugaraj's attachment request. Attached as <u>Exhibit 11</u> is a true and correct copy of that response (without attachments).

20. On March 2, 2018, the court rejected Bugaraj's attachment request.

21. On March 7, 2018, Bugaraj filed an answer to Ayasli's January 15, 2018, answer.

Attached as Exhibit 12 is a true and correct copy of that answer.

22. On June 8, 2018, Ayasli filed an answer to Bugaraj's March 7, 2018, answer. Attached as Exhibit 13 is a true and correct copy of that answer (without attachments).

23. On February 17, 2019, and June 10, 2019, a court-appointed panel of seven independent experts consisting of aeronautical engineers, lawyers, and financial professionals issued original and supplemental expert reports in favor of Bugaraj in the amount of approximately $80 million (plus $40 million in continent damages); this was about $5 million more than Bugaraj originally sought. In the Turkish legal system, courts give expert reports great deference and rarely depart from their findings. Attached as Exhibits 14 and 15 are true and correct copies of the original and supplemental reports.

24. On February 25, 2019, the court granted Bugaraj's attachment request based on the February 17, 2019, expert report's findings in favor of Bugaraj. Attached as Exhibit 16 is a true and correct copy of that decision

25. On March 11, 2019, Bugaraj filed a response to the expert report. Attached as Exhibit 17 is a true and correct copy of that response.

26. On June 26, 2019, Ayasli filed a response to the expert reports. Attached as Exhibit 18 is a true and correct copy of that response.

27. On June 27, 2019, Bugaraj requested an increase in the amount sought in the original trial due to the increased damages determined by the expert reports. Exhibit 19 is a true and correct copy of that response.

28. There have been 10 hearings in Bugaraj's commercial suits against Ayasli. The last hearing was on June 27, 2019.

29. No party has objected to jurisdiction in the civil litigation described above.

### III. BUGARAJ'S CRIMINAL COMPLAINT AGAINST AYASLI

30. On May 5, 2017, Bugaraj filed a criminal complaint against Ayasli with the Istanbul Public Prosecutor's Office, alleging fraud in the Bugaraj transaction. Attached as Exhibit 20 is a true and correct copy of that criminal complaint.

31. On October 4, 2017, the prosecutor issued an indictment based on Bugaraj's complaint. Attached as Exhibit 21 is a true and correct copy of that indictment.

32. On October 10, 2017, Ayasli objected to the indictment. Attached as Exhibit 22 is a true and correct copy of that objection (without attachments).

33. On October 23, 2017, the Istanbul 2nd High Criminal Court accepted the indictment. Attached as Exhibit 23 is a true and correct copy of that decision.

### IV. AYASLI'S CRIMINAL COMPLAINT AGAINST THE KORKMAZ DEFENDANTS IN TURKEY

34. On November 24, 2017, Ayasli filed a criminal complaint with the Istanbul Chief Public Prosecutor's Office seeking an indictment against the Korkmaz Defendants and others in connection with the sale of his regional Turkish airline BoraJet to Bugaraj. Attached as Exhibit 24 is a true and correct copy of that complaint (without attachments).

35. On September 7, 2018, the Istanbul Chief Public Prosecutor's Office issued a written decision declining to indict the Korkmaz Defendants (or anyone else named in Ayasli's complaint). Attached as Exhibit 24 is a true and correct copy of that decision.

### V. CASE DURATION

36. I examined the Turkish Ministry of Justice's case duration statistics for various types of actions commenced in the trial Istanbul courts.

37. Because of the complexity of the above-actioned action, those statistics are not a particularly good predictor of how long it would take to complete a complex lawsuit similar to the

above-captioned action in the Istanbul trial courts.

38. Based on my experience, I estimate that a lawsuit akin to the above-captioned action would take approximately three years to complete through trial in the Istanbul trial courts.

## VI. AYASLI CAN OBTAIN RELIEF FOR HIS CLAIMS UNDER TURKISH LAW

39. Ayasli can obtain relief in Turkey for the claims that he asserts in the above-captioned action under various sections of the Turkish Obligations Law. There is no legal barrier to Ayasli commencing such a lawsuit in the civil courts in Istanbul, Turkey.

40. For instance, Turkish Obligations Law Article 36 permits claims based on contracts induced through deception. The deceived party may void the contract.

41. Turkish Obligations Law Articles 37-38 permit contract claims based on contracts induced through intimidation. The intimidated party may void the contract.

42. Turkish Obligations Law Article 49 permits tort claims, including claims for fraud, defamation, and invasion of privacy. In addition, a party can file a criminal complaint with the prosecutor's office for defamation under Turkish Penal Code Article 125.

43. Turkish Obligations Law Articles 58 and 112 provide for compensation for tort and breach of contract cases.

44. Attached as <u>Exhibit 25</u> are relevant sections of the Turkish Obligations Law.

I declare under penalty of perjury under the laws of the United States, New Hampshire, and the Republic of Turkey that the foregoing is true and correct.

Executed this 4th day of September, 2019, at Istanbul, Turkey

*/s/ Sinan Gorkem Gokce*
Sinan Gorkem Gokce