

**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Anders Ekholm, hereby certify that the attached document is to the best of my knowledge and belief, a true and accurate translation from Turkish into English.

_____
Anders Ekholm

Sworn to before me this
August 23, 2019

_____
Signature, Notary Public

AURORA ROSE LANDMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LA6380858
Qualified in New York County
My Commission Expires 09-17-2022

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

| | |
|---|---|
| **GÜLÜM HUKUK** | **ATT. NEVZAT GÜLÜM** |

*Osmaniye Mahallesi Cemiyet Sokak No.4 Daire.3 OSMANİYE / BAKIRKÖY*
*PHONE: 0212 58343 40          FAX: 0212 583 43 54*

# TO THE PRESIDENCY
## OF
## ISTANBUL ( ) COMMERCIAL COURT OF FIRST INSTANCE

<u>**WITH CAUTIONARY ATTACHMENT REQUEST**</u>

**PLAINTIFF**         : BUGARAJ ELEKTRONİK TİC. VE BİLİŞİM HİZ. A.Ş.

**ATTORNEY**       : Att. Nevzat GÜLÜM
Address in the letterhead

**DEFENDANT**    : YALÇIN AYASLI (42856435568)
Harbiye Mah. Taşkışla Cad No. 3/56 ŞİŞLİ / ISTANBUL

**MATTER IN DISPUTE**  : The debt arising from the obligation that was not performed as per the contract dated 12/29/2016.

**VALUE OF THE CLAIM**  : TRY 253,305,035.00 (*With our right to file a lawsuit and to claim the surplus reserved*)

**STATEMENTS**       :

1- A SHARE TRANSFER AND PROFIT SHARING CONTRACT was signed by and between the client company and the defendant on 12/29/2016 with regards to the transfer of the shares of Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret Anonim Şirketi and Aydın Jet Havacılık Anonim Şirket, and the legal requirements were completed and the company shares were transferred to the client company.

2- Article No. 3 of the Contract is exactly as follows:
*"3.1 The receivables and debts of the companies whose shares have been transferred as of the signature date are specified in the balance sheet and list of actions annexed to the contract, except for new operational invoices that will be received in December 2016. Transferor hereby acknowledges and confirms that the companies do not owe any debts arising from any contract or tort regardless of their legal grounds, except for those indicated in the balance sheets in Appendix-1 and the list of actions in Appendix-2, except the operational invoices that will be received in December 2016.*

*3.2 For 2 years from the signature date, in the event that a warning letter is drawn, an executive proceeding is started or a lawsuit is filed against the company for any reason due to all legal, commercial, financial disputes that might have arisen before the share transfer date, and the debts that might have arisen from these disputes or if the companies are compelled to pay such a debt except the new operational invoices to be received in December 2016, then all kinds of responsibilities will be borne by the transferor. In this sense, the amount that may be claimed by the transferee shall be paid to the transferee by the transferor immediately without having to send a warning notice, to start a proceeding or to file a lawsuit".*

[signature]

3- As a result of the inspection and calculation carried out after the Client company has taken over the companies subject to the contract, it was determined that the balance annexed to the contract does not reflect the truth, and as a result of the audits conducted on the commercial books and documents, it was determined that there were irregularities with regards to the matters specified below.

| ACCOUNT | ACCOUNT NAME | AMOUNT TRY | AMOUNT $ |
|---|---|---|---|
| 120 | RECEIVABLES | 508,868 | 144,598 |

Certain sums that are shown as company receivables are not actually receivables and they are shown as a balance because the concerned party failed to issue the invoices that it was supposed to issue during the previous terms.

| 127 | OTHER TRADE RECEIVABLES | 1,609,497 | 457,347 |
|---|---|---|---|

In the Agency difference accounts, it was discovered that there is a balance left from 2014 and before as well as difference accounts arising from Öger Tour that went bankrupt in 2015.

| 195 | WORK ADVANCES | 461,049 | 131,009 |
|---|---|---|---|

These are the receivables, which were taken by the General Manager and other personnel, whose employment contracts were terminated prior to December 2016, but were not returned at the time of the termination of their contracts and which cannot be requested back because a letter of release had been given.

| 196 | PERSONNEL ADVANCES | 243,215 | 69,111 |
|---|---|---|---|

These are the receivables, which were taken by the General Manager and other personnel, whose employment contracts were terminated prior to December 2016, but were not returned at the time of the termination of their contracts and which cannot be requested back because a letter of release had been given.

| 226 | SECURITY DEPOSITS PAID FOR MAINTENANCE | 94,391,461 | 26,821,852 |
|---|---|---|---|

These are the maintenance fees for the airplanes operated and rented by the companies being transferred, which are included in the lease contract except for the rent. These fees refer to the amounts that are paid to the lessor for the maintenance works required in accordance with the number of hours flown by the airplanes that are leased and as per their age. This amount that must be reserved by the lessee as per the contract was paid to the accounts notified by the lessor against the invoices which have been issued, and they cannot be repaid and they must be written in the liabilities section of the financial statement within the framework of international rules. This is the difference that was formed because this item was shown under the assets section within the balance sheet submitted to the client company.

| 320 | VENDORS | 17,276,872 | 4,909,318 |
|---|---|---|---|

This is the total sum of service fees for November 2016 and before, which were paid previously but invoiced in December 2016 to the service provider companies to make it seem like there are receivables owed to the companies.

| 381 | EXPENSE ACCRUALS | 20,210,031 | 5,742,791 |
|---|---|---|---|

This is the total sum of service fees for November 2016 and before for which invoices have not been issued yet.

| | EXCHANGE RATE DIFFERENCE | 13,467,947 | 3,826,991 |
|---|---|---|---|

The total sum of the exchange rate difference that must have been incurred between 09/30/2016 and 12/28/2016 in the balance sheet annexed to the contract.

| 320 | EMBRAER | 5,052,990 | 1,435,835 |
|---|---|---|---|

The difference between the invoices that have been issued in accordance with the contract that was signed with Embraer.

[signature]

| | | | |
|---|---|---|---|
| 379 | TECHNICAL MAINTENANCE FEES FOR THE AIRPLANES THAT ARE NOT OPERATED | 48,121,224 | 13,673,910 |

Total sum of technical expenses that must be incurred to ensure that the airplanes, which are restricted from flying, are ready to fly again as some of the airplanes shown in active status are not actually active.

| | | | |
|---|---|---|---|
| | COSTS INCURRED DUE TO THE AIRPLANES THAT ARE NOT OPERATED | 23,316,836 | 6,625,607 |

Additional costs to be incurred due to inactive airplanes.

| | | | |
|---|---|---|---|
| 180 – 280 | AIRPLANE MAINTENANCE COSTS FOR THE FOLLOWING MONTHS | 15,187,594 | 4,315,638 |

Airplane maintenance costs which were written in the assets column under prepaid expenses for following months/years even though they had to be written as expenses.

| | | | |
|---|---|---|---|
| 264-267 | RENTAL AIRPLANE SPECIAL COSTS / DEPR. | 13,457,450 | 3,824,008 |

Airplane maintenance costs written in the assets column under special costs even though they had to be written as expenses.

      100% of the shares of the Maintenance Company, paid capital of which was equivalent to TRY 4.8 million, were sold to Yalçın AYASLI by the Aviation Company in 2015 for $29,500,000, and 100% of the shares were repurchased by the Aviation Company from Yalçın AYASLI in 2016 for TRY 88,134,200 ($29,500,000). As a result of this, the value of the maintenance company within the aviation balance sheet was shown higher in a fictitious manner.

      4- The differences between the balance submitted by the defendant party as an annex to the contract as per the transfer contract and the calculations made after the company was transferred, are among the factors that will have a direct impact on the companies' equities due to loss/profit and its value as of the company's purchase date.

      5- Even though the defendant party acknowledged to close off its debt owed to Credit Suisse as mentioned in article 3.6 of the contract within 45 days from the contract date, it did not fulfill its commitment, and therefore a notice of warning was sent through Beyoğlu 52nd Public Notary on 02/15/2017 with the number 01460 for the relevant payment to be made to the bank. However, defendant party in the response to the notice of warning issued by Beyoğlu 17th Public Notary dated 02/16/2017 and numbered 03419 claimed that the Bugaraj company undertook to make this payment, when the bank payment was not made by Yalçın Ayaslı, and as a result of this, it refrained from performing its obligation. Even this matter alone shows that the defendant was acting in a malicious manner. As a result of the investigations conducted, we have learned that the defendant submitted a loan application to certain banks in exchange for all of its assets and he was planning to liquidate his assets like this. For the reasons indicated herein, if this lawsuit that was filed is accepted, it is obvious that the decision will be lack of collectability. The banks, which can provide a loan to the defendant, will also be notified that this lawsuit has been filed.

      In order to ensure the enforceability of a potential acceptance decision by the Court, we hereby request a CAUTIONARY ATTACHMENT to be imposed on the movable properties, immovable properties, rights and receivables from third parties, its shares at the companies where it is a shareholder as well as sea vessels.

                                                                                           [signature]

    6- For the reasons explained above, it has become necessary to file this lawsuit for the collection of TRY 253,305,035.00 ($ 71,978,016) in total with the reservation of our right to claim and to file a lawsuit for surplus.

LEGAL GROUNDS: Code of Civil Procedure, Turkish Code of Commerce, miscellaneous legislative provisions

EVIDENCES       : Contract and its appendices, warning notices, expert witness report, witness statements, miscellaneous relevant evidences.

CONCLUSION      : Based on the reasons explained above and with the reservation of our right to claim and to file a lawsuit for surplus, we hereby kindly request a decision to be adopted for

| ITEM | TRY VALUE | $ VALUE |
| --- | --- | --- |
| OTHER TRADE RECEIVABLES | TRY 1,609,497 | $ 457,347 |
| PERSONNEL ADVANCES | TRY 243,215 | $ 69,111 |
| VENDORS | TRY 17,276,872 | $ 4,909,318 |
| EXCHANGE RATE DIFFERENCE | TRY 13,467,947 | $ 3,826,991 |
| TECHNICAL MAINTENANCE FEES FOR THE AIRPLANES THAT ARE NOT OPERATED | TRY 48,121,224 | $ 13,673,910 |
| AIRPLANE MAINTENANCE COSTS FOR THE FOLLOWING MONTHS | TRY 15,187,594 | $ 4,315,638 |

    and a total of TRY **253,305,035.00** ($ 71,978,016) (***With the reservation of our right to file a lawsuit and to claim surplus***), to be collected from the defendant together with the highest rediscount interest that will be accrued from 12/29/2016, which is the company's transfer date, and to be paid to the plaintiff company,

    A CAUTIONARY ATTACHMENT to be imposed on the movable properties, immovable properties, rights and receivables from third parties, its shares at the companies where it is a shareholder as well as sea vessels in order to guarantee our receivables,

    Trial costs and attorney fees to be demanded from the defendant. Kindly submitted for your information.

                                                                    Defendant's attorney
                                                                      Att. Nevzat GÜLÜM
                                                                      [signature]

APPENDIX:
A copy of the power of attorney
A copy of the contract and its appendices
5 folders of documents related to the balance sheet difference

# GÜLÜM HUKUK        AV. NEVZAT GÜLÜM

*Osmaniye Mahallesi Cemiyet Sokak No4 Daire.3 OSMANİYE / BAKIRKÖY*
*TEL: 0212 58343 40        FAX: 0212 583 43 54*

## İSTANBUL ( ) ASLİYE TİCARET MAHKEMESİ BAŞKANLIĞINA

**İHTİYATİ HACİZ TALEPLİDİR**

| | |
|---|---|
| **DAVACI** | : BUGARAJ ELEKTRONİK TİC. VE BİLİŞİM HİZ. AŞ |
| **VEKİLİ** | : Av. Nevzat GÜLÜM<br>Başlık adresi |
| **DAVALI** | : YALÇIN AYASLI (42856435568)<br>Harbiye Mah. Taşkışla Cad No.3/56 ŞİŞLİ/İSTANBUL |
| **DAVA KONUSU** | : 29/12/2016 tarihli sözleşme gereği yerine getirilmeyen ifa nedeniyle oluşan alacak. |
| **DAVA DEĞERİ** | : 253.305.035,00 TL *(Fazlaya ait dava ve talep haklarımız saklı kalmak kaydı ile)* |

**AÇIKLAMALAR** :

1-Müvekkil şirket ile davalı arasında Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret Anonim Şirketi ve Aydın Jet Havacılık Anonim Şirketinin hisselerinin devri konusunda 29/12/2016 tarihinde HİSSE DEVİR VE KAR PAYLAŞIM SÖZLEŞMESİ imzalanmış, yasal gereklilikler tamamlanarak şirket hisseleri müvekkil şirkete geçirilmiştir.

2- Sözleşmenin 3.maddesi aynen;

*"3.1 Hisseleri devredilen şirketlerin imza tarihi itibariyle Aralık 2016'da yeni gelecek operasyonel faturalar hariç sözleşmeye ekli mizanda ve dava listesinde belirtilen borçları ve alacakları bulunmaktadır. Devir eden şirketlerin Ek-1 deki mizanlarda ve Ek-2 deki dava listesi dışında Aralık 2016'da yeni gelecek operasyonel faturalar hariç her hangi bir sözleşmeden, haksız fiilden kaynaklı ve hukuki gerekçesi ne olursa olsun hiçbir borcu olmadığını kabul ve ikrar eder.*

*3.2 İmza tarihinden itibaren 2 yıl boyunca Aralık 2016 da yeni gelecek operasyonel faturalar hariç şirketlerin mevcut ticari defter ve kayıtlarında ve sözleşme ekinde yer almaması kaydıyla hisse devri tarihinden önce doğmuş olan tüm hukuki, ticari, mali uyuşmazlıkları ve iş bu uyuşmazlıklardan doğan borçları nedeni ile her hangi bir sebeple şirket aleyhine ihtarname keşide edilmesi, icra takibi yapılması, dava açılması veya şirketlerin böyle bir borcu ödemesi durumunda tüm sorumluluk devir edende olacaktır. Bu anlamda devir alan tarafından talep edilecek miktar devir eden tarafından hiçbir ihtara takibe veya davaya gerek kalmadan derhal devir alana ödenecektir."* şeklindedir.

3- Müvekkil şirket sözleşme konusu olan şirketleri devir aldıktan sonra yapılan inceleme ve hesaplama sonucu sözleşmeye ekli mizanın gerçeği yansıtmadığı, ticari defter ve belgeler üzerinde yapılan incelemede ise aşağıda belirtilen hususlarda usulsüzlüklerin bulunduğu tespit edilmiştir.

| HESAP | HESAP İSMİ | TUTAR TL | TUTAR $ |
|---|---|---|---|
| 120 | ALACAKLAR | 508.868 | 144.598 |

Şirket alacağı olarak görülen bazı bedellerin alacak olmayıp muhatap tarafın daha önceki dönemlerde kesmesi gereken faturaları kesmemesi nedeniyle bakiye vermektedir.

| 127 | DİĞER TİCARİ ALACAK | 1.609.497 | 457.347 |
|---|---|---|---|

Acente fark hesaplarında 2014 ve öncesine ait bakiye ile 2015 yılında iflas eden Öger Tur dan kaynaklanan fark hesaplarının mevcut olduğu anlaşılmıştır.

| 195 | İŞ AVANSLARI | 461.049 | 131.009 |
|---|---|---|---|

2016 Aralık öncesi iş akdi feshedilen Genel Müdür ve diğer personeller tarafından alınmış ancak fesih esnasında iade alınmamış ve ibraname verildiği için geri alınamayacak alacaklardır.

| 196 | PERSONEL AVANSLARI | 243.215 | 69.111 |
|---|---|---|---|

2016 Aralık öncesi iş akdi feshedilen Genel Müdür ve diğer personeller tarafından alınmış ancak fesih esnasında iade alınmamış ve ibraname verildiği için geri alınamayacak alacaklardır.

| 226 | ÖDENEN BAKIM DEPOZİTOLARI | 94.391.461 | 26.821.852 |
|---|---|---|---|

Devir alınan şirketlerin işlettiği ve kiralık alınan uçakların, kira bedeli haricinde kira sözleşmesinde yer alan, bakım ücretleridir. Bu ücretler, kiralayana; Kiralık uçakların, uçtuğu saat ve yaş itibarı ile yapılması gereken bakımlar için ödenen miktardır. Sözleşme gereği kiracının ayırması gereken bu miktar, kiralayanın bildirdiği hesaplara, kesilen faturalar karşısında ödenmiş olup geri alınması mümkün olmayan ve uluslararası kurallar çerçevesinde mali tablonun pasif kısmında yer alması gereken bir miktardır. Müvekkil şirkete sunulan mizanda bu kalem, aktif kısımda gösterildiğinden dolayı oluşan farktır.

| 320 | SATICILAR | 17.276.872 | 4.909.318 |
|---|---|---|---|

Daha önce ödeme yapılıp şirketlerin alacağı varmış gibi görülen hizmet firmaları ile Aralık 2016'da faturalandırılıp Kasım 2016 ve öncesine ait hizmet bedelleri toplamıdır.

| 381 | GİDER TAHAKKUKLARI | 20.210.031 | 5.742.791 |
|---|---|---|---|

Henüz faturası kesilmemiş Kasım 2016 ve öncesine ait hizmet bedelleri toplamıdır.

| | KUR FARKI | 13.467.947 | 3.826.991 |
|---|---|---|---|

Sözleşmeye ekli mizanda 30/09/2016 ile 28/12/2016 arasında yapılması gereken kur farkı toplamı.

| 320 | EMBRAER | 5.052.990 | 1.435.835 |
|---|---|---|---|

Embraer ile yapılan anlaşma gereği kesilmiş faturaların farkıdır.

| 379 | UÇMAYAN UÇAKLARIN TEKNİK BAKIM KARŞILIĞI | 48.121.224 | 13.673.910 |

Aktif olarak görülen uçaklardan bazılarının aktif olmayıp uçuş kısıtlısı olan uçakların tekrar uçabilir duruma gelmesi için yapılması gereken teknik harcama toplamı

| | UÇMAYAN UÇAKLAR NEDENİYLE OLUŞAN MALİYETLER | 23.316.836 | 6.625.607 |

Gayrı faal uçakların neden olacağı ek maliyetler.

| 180-280 | GELECEK AYLARA AİT UÇAK BAKIM GİDERLERİ | 15.187.594 | 4.315.638 |

Gider yazılması gerekirken gelecek aylara/yıllara ait giderler adı altında aktifleştirilen uçak bakım giderleri.

| 264-267 | KİRALIK UÇAK ÖZEL MALİYETLERİ / AMOR. | 13.457.450 | 3.824.008 |

Gider yazılması gerekirken özel maliyet adı altında aktifleştirilen uçak bakım giderleri.

Ödenmiş sermayesi 4.8 milyon TL olan Bakım Şirketinin % 100 hissesi 2015 yılında Havacılık Şirketi tarafından Yalçın AYASLI'ya 29.500.000 $ karşılığı satılmış, % 100 hisse Havacılık Şirketi tarafından 2016 yılında Yalçın AYASLI'dan 88.134.200 TL (29.500.000 $) karşılığında geri alınmıştır. Böylece havacılık bilançosunda bakım şirketinin değeri fiktif olarak yüksek gösterilmiştir.

4- Davalı tarafın devir sözleşmesi gereğince sözleşme eki olarak vermiş olduğu mizan ile şirket devredildikten sonra yapılan hesaplamalar arasındaki farklar şirketlerin kar/zarar dolayısıyla öz varlığını ve şirketin satın alınma tarihi itibarı ile değerini doğrudan etkileyecek faktörlerdendir.

5- Davalı taraf sözleşmenin 3.6 maddesinde Credit Suisse'e ait borcu sözleşme tarihinden itibaren 45 gün içinde ödeyip kapatmayı taahhüt etmesine rağmen bu taahhüdünü yerine getirmediğinden Beyoğlu 52. Noterliğinin 15/02/2017 tarih ve 01460 yevmiye sayılı ihtarnamesi ile ilgili bankaya ödeme yapması ihtar edilmiştir. Ancak davalı taraf Beyoğlu 17. Noterliğinin 16/02/2017 tarih ve 03419 yevmiye sayılı cevabi ihtarında banka ödemesinin Yalçın Ayaslı tarafından ödenmediğinde Bugaraj firmasının bu ödemeyi yapmayı üstlendiğini iddia ederek taahhüdünü yerine getirmekten kaçınmıştır. Bu husus tek başına bile davalının kötü niyetli olduğunu göstermektedir. Yapılan araştırmalarda davalının tüm mal varlığı karşılığında bazı bankalardan kredi çekme başvurusu yaptığını ve mal varlığını bu şekilde tasfiye etmeyi düşündüğünü öğrenmiş bulunmaktayız. Bu nedenlerle açılan işbu davanın kabulü durumunda alınacak hükmün tahsil kabiliyetinin olamayacağı aşikardır. Davalının kredi alabileceği bankalara da iş bu davanın açılmış olduğu ihtar edilecektir.

Mahkeme tarafından verilecek olası kabul hükmünün icra edilebilmesini temin amacıyla davalının taşınır, taşınmaz, üçüncü şahıslar üzerindeki hak ve alacakları, hissedar olduğu şirketlerdeki hisseleri, deniz araçları üzerine, İHTİYATİ HACİZ tatbik edilmesini talep etmekteyiz.

6- Yukarıda açıklanan nedenlerle fazlaya ait talep ve dava haklarımız saklı kalmak kaydı ile toplam 253.305.035,00 TL (71.978.016 $)nin tahsili için iş bu davanın açılması zorunluluğu hâsıl olmuştur.

HUKUKİ NEDENLER: HMK, TTK, sair mevzuat hükümleri

DELİLLER : Sözleşme ve ekleri, ihtarnameler, bilirkişi tetkikatı, tanık beyanları, Sair ilgili deliller.

NETİCE : Yukarıda izah edilen nedenler dolayısıyla fazlaya ait talep ve dava haklarımız saklı kalmak kaydı ile şimdilik;

| KALEM | TL DEĞERİ | $ DEĞERİ |
| --- | --- | --- |
| DİĞER TİCARİ ALACAK | 1.609.497 TL | 457.347 $ |
| PERSONEL AVANSLARI | 243.215 TL | 69.111 $ |
| SATICILAR | 17.276.872 TL | 4.909.318 $ |
| KUR FARKI | 13.467.947 TL | 3.826.991 $ |
| UÇMAYAN UÇAKLARIN TEKNİK BAKIM KARŞILIĞI | 48.121.224 TL | 13.673.910 $ |
| GELECEK AYLARA AİT UÇAK BAKIM GİDERLERİ | 15.187.594 TL | 4.315.638 $ |

olmak üzere toplam **253.305.035,00** TL (71.978.016 $)*(Fazlaya ait dava ve talep haklarımız saklı kalmak kaydı ile)* şirket devir tarihi olan 29/12/2016 tarihinden itibaren işleyecek en yüksek reeskont faizi ile birlikte davalıdan tahsil edilerek davacı şirkete ödenmesine,

Alacağımızı temin amaçlı olarak davalının taşınır, taşınmaz, üçüncü şahıslar üzerindeki hak ve alacakları, hissedar olduğu şirketlerdeki hisseleri, deniz araçları üzerine İHTİYATİ HACİZ tatbik edilmesine,

Yargılama giderleri ile vekâlet ücretinin davalıya yükletilmesine karar verilmesini saygı ile arz ve talep ederiz.

Davacı vekili
Av. Nevzat GÜLÜM

EKİ :
Vekâletname örneği
Sözleşme ve ekleri örneği
Mizan farkı ile ilgili 5 klasör doküman