

City of New York, State of New York, County of New York

I, Anders Ekholm, hereby certify that the attached document is to the best of my knowledge and belief, a true and accurate translation from Turkish into English.

_____
Anders Ekholm

Sworn to before me this
August 23, 2019

_____
Signature, Notary Public

AURORA ROSE LANDMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LA6380858
Qualified in New York County
My Commission Expires 09-17-2022

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

[logo] ŞAFAK

    LAW FIRM

[illegible]

**To the Honorable Presidency of the 3rd Commercial Court of First Instance of Istanbul,**

                              **File No: 2017/242 E.**

| | |
|---|---|
| Defendant | : Yalçın AYASLI |
| Attorney | : Att. Burhan Asaf Şafak, |
| Plaintiff | : Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş. |
| Attorney | : Att. Sinan Görkem GÖKÇE, |
| Subject: | : Answer to the complaint |

                INTRODUCTION

The parties had agreed on the transfer of Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret A.Ş., which is not a party to this lawsuit, to the plaintiff by signing a share transfer and profit sharing agreement on 12.29.2016. (**Annex-1, copy of the Share transfer and profit sharing agreement and its annexes**) According to the agreement, a pledge has been established in favor of the plaintiff in consideration of the obligations of the defendant under the agreement. (**Annex-2, deed of pledge**)

The Plaintiff requested indemnification at the amount of TRY 253,305,035.00 (USD 71,978,016) for the loss which allegedly has arisen from the articles 3.1 and 3.2 of the said agreement.

The Plaintiff alleges that TRY 508,868.00 (USD 144,598.00) of the disputed amount was for some sums which were shown as company receivables but in fact were not receivable, TRY 1,609,497.00 (USD 457,347.00) of it the receivable difference accounts arising from Öger Tur were not true, TRY 461,049.00 (USD 131,009.00) of it could not be recovered due to the release letters provided for debts arising from allowances given to general managers and other personnel, TRY 243,215.00 TRY (USD 69,111.00) of it were some sums which were shown as company receivables but in fact they were not receivables, TRY 94,391,461.00 (USD 26,821,852.00) of it was the amount paid for the maintenance

              [signature]

required to be done for the planes at the end of its flight term for the planes leased other than rent was shown as a receivable, but in fact it should have been recorded in the passive (liabilities) part, TRY 17,276,872.00 (USD 4,909,318.00) of it was shown as due from companies, but the debt doesn't exist as those companies didn't issue any invoice, TRY 20,210,031.00 (USD 5,742,791.00) of it was in the same way shown as an additional receivable due from service fees for November 2016 and before, TRY 13,464,947.00 (USD 3,826,991.00) of it had to be paid as difference as exchange rate was not updated, TRY 5,052,990.00 (USD 1,435,835.00) of it was invoice difference which were not included in the balance sheet at the result of a settlement with Embraer company, TRY 48,121,224.00 (USD 13,673,910.00) of it was the cost to be made to ensure that the airplanes, which are restricted from flying, are ready to fly again as some of the airplanes shown in active status are not actually active, TRY 23,316,686.00 TRY (USD 6,625,607.00) of it was the loss suffered from being inactive during the repair period required for flying the planes which have flying restrictions, TRY 13,457,450.00 (USD 3,824,008.00) of it was the difference in the assets due to some of plane expenses were recorded under liabilities which were instead should have been recorded as expense. Thus, the loss items listed each with their grounds sum up to the action value.

RESPONSES

1- The legal relationship between the parties is, as it is clearly understood from the agreement they signed, the sale of the shares of Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret A.Ş. which belong to the defendant. Under usual circumstances, the sale and transfer of share certificates are done at a price that the transferor would receive. To be frank, the ordinary course of events require that a person who sells and transfers the shares he owns in a company, would receive a sales price for those shares he sold.

However, in the present case we see that the defendant, due to a special situation in the debts and credits structure of the company which is wholly owned by the defendant, undertook to pay even the bank credits which formed the debts of the company, and transferred all of his shares in consideration of the market debts as of the date of transfer to be paid by the plaintiff. In other words, the plaintiff transferred the company shares he owned by undertaking to pay the debts listed in the annex list numbered 3 (the total bank credits USD 43,384,108.00) as recorded in the balance sheet of the company.

The price undertook to be paid by the plaintiff in consideration of buying the defendant's shares is the company's debts, with the exception of article 3.1 and 3.2 of the agreement, as stated in the agreement. More clearly, the plaintiff would pay the debts states in the attached balance sheet in consideration of the shares he bought from the defendant. The plaintiff also undertook to pay any claim other than those debts stated in the attached balance sheet regardless of its form or nature.

[signature]

The commitments of the defendant that those debts stated in the balance sheet would not increase are contained in the article 3.1 and 3.2 of the agreement. The plaintiff, show these provisions as the basis of the case by misinterpreting them or by including their own losses.

2- In the article 3.1 of the agreement relied by the plaintiff, the defendant declares what constitutes the debts and receivables as of December 2016. In the same article, he accepts and acknowledges that there is no debt which has arisen either from contract, tort or any other legal ground whatsoever, except the future invoices to be received operationally, other than those in the balance sheet and claim list in the annexes numbered 1 and 2 of the agreement.

Following the acknowledgements, in the article 3.2 of the agreement, it is stated that in case a debt which is contrary to the acknowledgement arises, if this debt is initiating execution proceedings or sending a notice or filing a lawsuit in any manner whatsoever or in case of payment being made for the debt for any reason, then the defendant shall be liable.

When two articles of the agreement are considered together, it is seen that the parties agreed by taking the balance sheet dated 12.28.2016 and the claims list which they confirmed with their signatures on the agreement's annex and thus decided on the agreement price.

Again, when the two articles of the agreement are considered together, the defendant when transferring his shares to the plaintiff did not guarantee and undertake the presence of any assets belonging to the company being transferred.

3- When the claimed items in the plaintiff's statement of claim is examined individually, it is seen that many items are based on an alleged loss due to being entered under the assets rather than liabilities. In other words, the allegation related to the figures which make up the claim relies on the fact that the figures which had to be entered in the liabilities section were entered in the assets section by using the balance sheet technique wrong.

In fact, such allegations impose no obligation on the plaintiff under the agreement. In other words, there is no out-of-pocket payment to be made by the plaintiff due to the said errors. Even if the figures entered in the assets section are moved to the liabilities section, the plaintiff will not actually pay these debts.

[signature]

4- The only expense item in the plaintiff's claims is the money alleged to be paid by the plaintiff for flying again the planes which are determined to be unable to fly and the potential loss which might be incurred due to the inactivity of the planes during repairment.

First of all, due to their extent, the correctness of these amounts should be determined for each plane separately and they should be demonstrated with their evidences.

Secondly, even if it is demonstrated, due to the content of the agreement, these amounts cannot be claimed from the defendant under the agreement because there is no warranty in relation to the assets, in other words, there is no provision related to the position of the planes.

*Evidences       : The Agreement, mortgage agreement table, records of the company, which is not a party to the lawsuit, whose shares were transferred, debt payment documents to be submitted, expert witness, on-site discovery, if required, and all kinds of evidences that are acceptable under the law, oath, etc. …*

*Conclusion: For the reasons explained we request dismissal of the request and claim which don't comply with the agreement and assessment of the court costs and lawyer's fee to the plaintiff. 04.03.2017*

**Attorney for the Defendant,**

**Att. Burhan Asaf Şafak**

[signature]



**ŞAFAK**
HUKUK BÜROSU

CUMHURİYET CADDESİ
ERK APT. NO: 38 D. 9
ELMADAĞ - ŞİŞLİ / İSTANBUL
TEL: 0212 225 6001
FAKS: 0212 225 6099
e-mail: safak@safakhukuk.com

**İstanbul 3. Asliye Ticaret Mahkemesi Sayın Başkanlığı'na,**

**Dosya No: 2017/242 E.**

| | | |
|---|---|---|
| **Davalı** | : | Yalçın AYASLI, |
| **Vekili** | : | Av. Burhan Asaf Şafak, |
| **Davacı** | : | Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş. |
| **Vekili** | : | Av. Sinan Görkem GÖKÇE, |
| **Konusu** | : | Dava dilekçesine cevapların sunulmasıdır. |

## AÇIKLAMALAR

Taraflar 29.12.2016 tarihinde hisse devir ve kar paylaşım sözleşmesi imzalayarak, dava dışı Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret A.Ş.'nin davacıya devri hususunda anlaşmışlardır. **(Ek-1, Hisse devir ve kar paylaşım sözleşmesinin ekleriyle birlikte örneği)** Sözleşme gereği davacı lehine davalının sözleşmede yer alan taahhütleri karşılığı ipotek de tesis edilmiştir. **(Ek-2, İpotek belgesi)**

Davacı anılan sözleşmenin 3.1. ve 3.2 maddesinden kaynaklanan zararları olduğu iddiasıyla 253.305.035,00 TL (71.978.016 USD) tazminat talebinde bulunmuştur.

Davacı sırayla, dava tutarının 508.868,00 TL (144.598,00 USD) kısmının şirket alacağı olarak gösterilen bazı tutarların aslında alacak olmadığı, 1.609.497,00 TL (457.347,00 USD) kısmının Öger Tur'dan kaynaklanan alacak farkı hesaplarının gerçek olmadığı, 461.049,00 TL (131.009,00 USD) kısmının fenel müdür ve diğer personele verilen avanslardan kaynaklanan alacağın ibraname verilmiş olması nedeniyle alınamadığı, 243.215,00 TL (69.111,00 USD) kısmının şirket alacağı olarak gösterilen bazı tutarların aslında alacak olmadığı, 94.391.461,00 TL (26.821.852,00 USD) kısmının kiralanan uçaklar için kira bedeli haricinde uçağın uçtuğu dönemin sonunda yapılması gereken bakımlar için ödenen miktarın alacak olarak gösterildiği ve aslında bu tutarın alacak

olarak gösterilmeyip pasif (borç) kısımda tutulması gerektiği, 17.276.872,00 TL (4.909.318,00 USD) kısmının bazı firmalardan alacak olarak gösterildiği, ancak bu firmaların fatura kesmemesi yüzünden alacağın var olmadığı, 20.210.031,00 TL (5.742.791,00 USD) kısmının da aynı şekilde Kasım 2016 ve öncesine ait hizmet bedelleri nedeniyle fazladan alacak olarak gösterildiği, 13.464.947,00 TL (3.826.991,00 USD) kısmının kur güncellemesi yapılmadığı için fark olarak ödenmesi gerektiği, 5.052.990,00 TL (1.435.835,00 USD) kısmının Embraer şirketiyle yapılan mutabakat sonucunda bilançoda yer almayan fark faturalar olduğu, 48.121.224,00 TL (13.673.910,00 USD) kısmının aktif olarak gösterilen uçaklardan bazılarının aktif olmayıp uçuş kısıtlısı olması nedeniyle tekrar uçurulabilme durumuna gelmesi için yapılması gereken harcama olduğu, 23.316.686,00 TL (6.625.607,00 USD) kısmının uçuş kısıtlısı olan uçakların uçurulması için yapılması gereken tamirat süresi boyunca gayrifaal olma nedeniyle uğranılan zararlar bulunduğu, 15.187.594,00 TL (4.315.638,00 USD) kısmının gider yazılması gereken bazı uçak harcamalarının bilançoda pasife yazılmış olması nedeniyle aktifte fark oluştuğu, 13.457.450,00 TL (3.824.008,00 USD) kısmının gider yazılması gereken bazı uçak harcamalarının bilançoda pasife yazılmış olması nedeniyle aktifte fark oluştuğu iddiasındadır. Böylece tek tek gerekçeleriyle sıralanan zarar tutarları toplamda dava değerine ulaşmış olmaktadır.

## CEVAPLAR

**1-** Tarafların arasındaki hukuki ilişki imzaladıkları dava konusu sözleşmeden açıkça anlaşılacağı üzere Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret A.Ş.'ne ait davalı hisselerinin satışına ilişkindir. Normal koşullarda hisse senetlerinin satış ve devirleri, devredenin alacağı bir bedel üzerinden gerçekleşir. Daha açık ifadeyle, bir şirkette sahibi olduğu hisseleri satan ve devreden kişinin sattığı bu hisseler karşılığında satım bedeli tahsil etmesi hayatın olağan akışı gereğidir.

Ancak olayımızda davalının hisselerinin tamamına sahip olduğu şirketin borç ve alacak yapısındaki özel durum nedeniyle davalının, şirketin borçlarını oluşturan banka kredilerini dahi kendisi ödemeyi taahhüt ederek, devir tarihi itibariyle piyasa borçlarını davacının ödemesi karşılığında hisselerinin tamamını devrettiği anlaşılmaktadır. Bir başka ifadeyle, davalı sahibi olduğu şirket hisselerini şirketin mizanında kayıtlı olan borçlardan 3 nolu ek listede belirtilenleri (banka kredileri toplamı 43.384.108,00 Amerikan Doları'nı) kendisi ödemeyi taahhüt ederek davacıya devretmiştir.

Davacının davalının hisselerini alım karşılığında ödemeyi taahhüt ettiği bedel sözleşmenin 3.1. ve 3.2. maddelerinde istisnaları belirtilmek kaydıyla şirketin borçları olarak belirtilmiştir. Daha açık ifadeyle, davacı davalıdan aldığı hisseler karşılığında ekli mizanda belirtilen borçları ödeyecektir. Davalı, ekli mizanda

belirtilen borçlar dışında bir talep gelmesi halinde şekil ve niteliğine bakılmaksızın karşılanacağını da taahhüt etmiştir.

Davalının, mizanda belirtilen borçların artmayacağı yönündeki bu taahhütler sözleşmenin 3.1. ve 3.2. maddelerinde yer almaktadır. Davacı, bu maddeleri yanlış yorumlayarak ya da zararlarını da içine katarak davanın dayanağı olarak göstermiştir.

2- Davacının dayandığı sözleşmenin 3.1 maddesinde, davalı Aralık 2016 itibariyle borç ve alacakların nelerden ibaret olduğunu beyan etmektedir. Aynı maddede sözleşmenin 1 ve 2 numaralı ekinde bulunan mizan ve dava listesi dışında operasyonel olarak gelecek faturalar hariç herhangi bir sözleşmeden doğmuş, haksız fiilden veya hukuki gerekçesi ne olursa olsun herhangi bir sebepten kaynaklanan borç bulunmadığını kabul etmektedir.

Kabullerin ardından sözleşmenin 3.2. maddesinde kabule aykırı borç doğmuş olması halinde bu borcun herhangi bir şekilde icra takibi yapılarak, ihtarname keşide edilerek, dava açılarak ileri sürülmesi durumunda ya da herhangi bir nedenle borç için ödeme yapılması durumunda davalıya ait olacağı hüküm altına alınmıştır.

Sözleşmenin her iki maddesi birlikte değerlendirildiğinde; tarafların anılan sözleşmenin ekine imzalarıyla teyit ettikleri 28.12.2016 tarihli mizanı ve dava listesini esas alarak anlaştıklarını ve sözleşme bedelini böylece belirledikleri ortaya çıkmaktadır.

Yine sözleşmenin her iki maddesi birlikte değerlendirildiğinde davalının hisselerini davacıya devrederken hisse devri yapılan şirkete ait bir aktifin varlığını garanti ve taahhüt ettiği görülmemektedir.

3- Davacının dava dilekçesinde talep ettiği kalemler tek tek incelendiğinde çoğu kalemlerin bilançonun pasiflerinde yer alması gerekirken aktiflerinde yer verilmesi nedeniyle zarar iddiasına dayandığı görülmektedir. Diğer bir deyişle talebi oluşturan rakamlara yönelik iddialar bilanço tekniği yanlış kullanılarak pasif kısımda yer alması gereken rakamların aktif kısımda yazılmış olmasına dayanmaktadır.

Bu tarz iddiaların aslında sözleşmeye dayalı olarak davacıya yüklediği bir borç bulunmamaktadır. Bir başka söyleyişle belirtilen hatalar nedeniyle davacının cebinden çıkacak bir para da ortada yoktur. Bilançonun aktifinde olan rakamlar pasife alınsa bile fiiliyatta davacı bu borçları ödemeyecektir.

**4-** Davacının iddialarında yer alan tek sarf kalemi uçamayacağı tespit edilen uçakların yeniden uçurulması için harcayacağını iddia ettiği para ve onarım süresince uçakların atıl kalması nedeniyle uğranılması muhtemel kayıplarıdır.

Öncelikle mahiyeti itibariyle bu bedellerin doğruluğu tek tek uçak bazında saptanmalı ve delilleriyle ortaya konmalıdır.

İkinci olarak ortaya konmuş olsa bile sözleşmenin içeriği gereği aktiflere ilişkin bir taahhüt bulunmadığından, başka bir ifadeyle uçakların pozisyonuyla ilgili hükümler yer almadığından sözleşmeye dayalı olarak bu bedellerin ödenmesi davalıdan istenemez.

***Deliller*** : *Sözleşme, ipotek akit tablosu, dava dışı hisse devri yapılan şirkete ait kayıtlar, ibraz edilecek borç ödeme belgeleri, bilirkişi incelemesi, gerektiğinde mahallinde keşif ve kanunda delil olarak kullanılabileceği belirtilen her türlü delil, yemin vs...*

***Netice*** : *Arz ve izah edilen nedenlerle, sözleşmeye uygun olmayan taleplerin ve davanın reddiyle yargılama gideriyle avukatlık ücretinin davacı üzerinde bırakılmasını talep ederim. 03.04.2017*

Davalı Vekili,
Av. Burhan Asaf Şafak