

**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Anders Ekholm, hereby certify that the attached document is to the best of my knowledge and belief, a true and accurate translation from Turkish into English.

Anders Ekholm

Sworn to before me this
August 23, 2019

Signature, Notary Public

AURORA ROSE LANDMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LA6380858
Qualified in New York County
My Commission Expires 09-17-2022

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

Gokce | Yarali Attorney Partnership

**Istanbul, 05/22/2017**

**TO THE HONORABLE PRESIDENCY OF**
**ISTANBUL 3RD COMMERCIAL COURT OF FIRST INSTANCE**

**File No.: 2017 / 242**

<u>**CLAIMANT**</u>        **: Bugaraj Elektronik Ticaret ve Bilisim Hizmetleri A.S.**
              Maslak Mah.Dereboyu Cad. Zagra Is Merkezi No: 14/C
              Sariyer, Istanbul

<u>**REPRESENTATIVE**</u>  **: Lawyer Sinan Gorkem Gokce**
              *(The address is on the letterhead)*

<u>**DEFENDANT**</u>        **: Yalcin Ayasli (42856435568)**
               Harbiye Mah. Taskisla Cad. No: 3/56 Sisli, Istanbul

<u>**REPRESENTATIVES**</u>: **Lawyer Burhan Asaf Safak**
              Cumhuriyet Cad. Erk Apt. No: 14 K. 4 D. 8 Elmadag,
              Sisli, Istanbul

<u>**SUBJECT MATTER**</u>  : It consists of the timely submission of our response to the response letter issued to us
              by the Defendant dated 03/24/2017.

<u>**EXPLANATIONS:**</u>

Our Client Company Bugaraj Elektronik Ticaret ve Bilisim Hizmetleri A.S. **(Bugaraj)** and Yalcin Ayasli **(Defendant)** signed a "Share Transfer and Profit Share Agreement" **(Agreement)** with regards to the transfer of Borajet Havacilik Tasimacilik Ucak Bakim Onarim ve Ticari Anonim Sirketi **(Borajet)** on 12/29/2016. However, not only did Yalcin Ayasli not comply with the obligations of the Agreement, but he also deceived the Client Company with false declarations. Accordingly, the Client Company Bugaraj had to take legal action and within the scope of its lawsuit petition dated 03/13/2016, it requested, **for the time being**, TRY 253,305,035.00 **($71,978,016.00)** to be collected from the defendant, together with the highest amount of interest rate applied to commercial obligations as of the Company transfer date i.e. 12/29/2016, and that collection amount to be paid to the claimant company for the following:

a) **The obligations the existence of which was revealed at a later stage** even though **they had never been shown** in the Agreement and in the Worksheet attached to the Agreement

1

Gokce | Yarali Attorney Partnership

**b)** **The expenses that were actually not retrievable** by Borajet even though they **had been deliberately shown as** Bora Jet's **receivables** in the Worksheet attached to the Agreement

**c)** **The expenses** caused by **the airplanes the faults and deficiencies of which were revealed at a later stage** even though they had been shown as without defect in the Worksheet and in the Agreement

**d)** **The losses caused** by the inability of the airplanes to fly within the minimum **period of time** required for the repair of **the airplanes the faults and deficiencies of which were revealed at a later stage**

**e)** **The obligations that were shown as less** in **the foreign currency obligations** of the Company written in the Worksheet after being converted to TRY, as **the currency exchange rate** had been **calculated at a lower rate** than the actual value

**f)** The items that **had been shown as an increase in the assets** of the Company even though they were actually Company expenses

**g)** The receivables that were shown as current company receivables even though they had been **closed** or there was **no capability to collect** them

Upon that, in his response letter issued to us, Defendant Yalcin Ayasli has done the following:

**a)** He admitted the existence of the Agreement, together with its provisions,

**b)** He claimed that Borajet was not handed over in return of any amount,

**c)** He stated that if there are any additional obligations that had not been stated in the appendices/Worksheet of the Agreement, the obligation would belong to the defendant in the event that an official notice is issued, a case is filed, a payment is made or enforcement proceedings is carried out as per clause 3.2 of the Agreement,

2

Gokce | Yarali Attorney Partnership

d) He argued that the legal claim is **substantially caused by the mistakes in the balance sheet** and claimed that the losses caused by these discrepancies **cannot be claimed within the scope of the Agreement dated 12/29/2016**,

e) He asserted that expert opinion should be consulted with regards to the losses caused by the airplanes' incapability to fly.

**At this stage, we must indicate that the claims that the Defendant's claims that there is no need to pay compensation are completely against the law.**

## THE SUMMARY OF THE EVENTS

**1.** Please allow us to state in the beginning that Bugaraj, one of the subsidiaries of SBK Holding, took over **Borajet with the belief that the declarations** of Yalcin Ayasli in the Share Transfer and Profit Share Agreement dated 12/29/2016 **were true**. **The structure of the Agreement** is as follows:

- The shares of the target company Borajet will be **taken over** by Bugaraj **based on the asset status reflected in the Worksheet** that is attached to the Agreement,

- **Bugaraj will pay the obligations within its responsibility** as part of the Worksheet and **the Agreement relationship** and save **Borajet from financial bottleneck** by means of the financial resources assured to the Company by doing so,

- After that, **to increase the value** of **the Company** with the condition that its business needs are met; in other words, **to create value** and then **to share that value between the parties of the Agreement** according to the framework that is set out in the Agreement.

However, the worksheet attached to the agreement is a piece of **fraud** and is far from reflecting the real financial status of Borajet. Client Bugaraj, which has taken over the shares within this context, has been exposed to big financial loss that goes over the value of this case. That is to say, the financial status of the target company has been reflected as a lot less than the "current" status as of the agreement date on the one hand by **hiding the passives**, and on the other hand by **showing the actives as much higher than necessary**. Accordingly,

3

Gokce | Yarali Attorney Partnership

**The company was made to believe** that **the Company could be saved with certain amount of investment** and **it can be sold in a way that will bring profit**.

However, when they were involved in the business, it was seen that Borajet is in so much more debt than what is shown in the Worksheet attached to the Agreement and that it is not really possible to save the situation regardless of all the investment that has been made.

In fact, there is an **Investigation** with **No. 2017 / 68314** being carried out with regards to this matter by **Istanbul Chief Public Prosecutor's Office** and an **ARREST DECISION** has been made regarding **the Suspect Yalcin Ayasli**.

Client Company Bugaraj is incurring loss due to

- **The amounts spent to pay for the existing debt of** the target company **Borajet** on the one hand,
- And **the inability to acquire the financial value Borajet will achieve because of that amount being spent**, on the other hand.

That is to say, the Client Company Bugaraj **has been exposed to both actual loss and profit loss** due to the handing over party acting against the obligations. Accordingly, the positive loss that the Client has incurred is caused by the Defendant party not executing the Agreement as required.

**In addition to** these losses, and **independently of the loss incurred**, there is a further, separate receivables item that is **caused by the independent warranty responsibility of the handing over Defendant party** based on his clear declaration in the Agreement. Within the frame of **clauses 3.1 and 3.2 of the Agreement**, the defendant party

> clearly accepts that **the companies do not have any obligations that are not reflected in the worksheets** arising from the agreement and tort and **guarantees against** any contrary situation.

**This situation is also accepted in the response letter**, and it is emphasized that the defendant accepts to compensate for any requests aside from the obligations that are stated in the Worksheet attached to the Agreement, regardless of their form and type.

According to that, this acceptance is also within the responsibility of the Defendant party for the claimant Client aside from the positive and negative loss – which would be valid even without this acceptance in the Agreement - that has been incurred by the claimant which has been set out above.

4

Gokce | Yarali Attorney Partnership

Contrary to what is stated in the response letter, **the scope of** Defendant **Yalcin Ayaslim's** responsibility will not solely be limited to the obligations that **were not shown in the addendum of the** Agreement but are revealed at a later stage. That is because the clear statement in the Worksheet and case list shows **the handing over Defendant party guarantees that** Borajet's **status of assets** shown in the addendums of the Agreement **reflects the reality**.

As a matter of fact, **even if the provisions in the Agreement** dated 12/29/2016 **did not exist**, Defendant Yalcin Ayasli would still have such **a legal responsibility**, and **it cannot be deemed** that **the purpose of this provision in the Agreement  is to constrict the scope of his responsibility**. The provision is completely the result of the Buyer's trust in the Seller as no due diligence procedure was carried out by the Buyer. Otherwise, within the scope of this Agreement provision which cannot be interpreted as the constriction of responsibility, it is obvious that **all kinds of lowness of Borajet's assets that will be revealed at a later stage will bring forth responsibility to the Seller**.

Even though it is stated in the response letter that the Agreement does not foresee that the defendant guarantees and accepts the existence of an active asset for the target company when he transferred his shares, it is clear that this statement is inappropriate. That is because, **in terms of the handing over party's acceptance of his responsibility**, **it is not imperative that such explicit acceptance with regards to the company's actives and their status must exist** in the Agreement made by the parties.  It is in the nature of the Agreement that **the airplanes in an aviation company** that flies passengers and has various airplanes within its responsibility **actually have the capacity to fly, that their parts are installed** and **not taken away**. In order for the handing over party **not to be responsible** for those, that, i.e. **the status of the actives** and **the lack of responsibility** of the **handing over party,** should have been **clearly** written in the Agreement, and **not the opposite**.

It should be remembered that it is **not** absolutely **necessary** for the client company to **actually pay any amounts** in order for **the handing over party's responsibility** and the claimant client's **loss to be accepted**. A situation in which the **figures in the actives** actually belong to the **passives section deprives** the client **of** the **financial profit** to be acquired from the company that it has fully purchased. Loss of profit is a **positive loss** item, and even though it has not been clearly accepted by the handing over party in the Agreement, this situation whereby the **Client has been deceived causes loss for the Client**.

5

Gokce | Yarali Attorney Partnership

It has been found that the Company that the Client has purchased the shares of and **has put in** considerable amount of **financial resource** and **know-how** for is **a lot less valuable** than they have been informed. There is no doubt that this is **an item of loss for the Client** and it **must be compensated for by** the relevant/responsible person i.e. **the Defendant**.

The amount of the difference between the real status of Borajet on the date of the sale and the status stated in the addendums of the Agreement and their realization figures have been presented in our previous petitions, and it will also be **submitted** to the honorable **court** with expert financial reports, which can also become evident with expert opinion analysis.

**2.**      The obligations of Borajet is being paid by Bugaraj and/or its subsidiaries by means of transfer and ever increasing resources. **When the obligations, receivables and assets that have been declared for Borajet** in the Agreement **are calculated, it does not seem possible to turn Borajet into a profiting company from an accounting and financial point of view**.

However, time has shown that Borajet's **assets and receivables** are **a lot less** than what was declared in the Agreement dated 12/29/2016, and that its **obligations and losses** are **a lot more** than what was declared in the Agreement. The situation can be explained within the legal systematics as follows:

- When compared with all the Borajet obligations stated within the scope of the Agreement dated 12/29/2016, the Company has a total **of $29,588,845.00 additional obligations** (as much as it has been identified to date),

- When compared with all the Borajet receivables stated within the scope of the Agreement dated 12/29/2016, the Company has a total **of $31,939,555.00 less receivables** (as much as it has been identified to date),

- When compared with all the Borajet assets stated within the scope of the Agreement dated 12/29/2016, the Company has a total of **$3,824,008.00 less assets** (as much as it has been identified to date),

- 

- When compared with the potential loss foreseen for Borajet within the scope of the Agreement dated 12/29/2016, the Company has a total **of $6,625,607.00 more loss** (as much as it has been identified to date),

6

Gokce | Yarali Attorney Partnership

Within this frame, the Client Company has incurred a total of **$71,978,015.00** loss (as much as it has been identified at this stage) due to the Agreement dated 12/29/2016. In addition, there is a further additional difference of **$33,442,231.06** between the table shown in the Agreement dated 12/29/2016 and the real status, which has not been a subject matter of this case yet. We reserve all our rights with regards to this amount. Due to all kinds of loss with broad meaning not reflected in the Addendum of the Agreement, the Defendant party, i.e. the previous owner of Borajet, has responsibility for the legal provisions with regards to the compensation of both the clear acceptance in the Agreement and the loss of profit and the actual loss amount that the client has incurred.

As it has been stated above, the investigation No. 2017 / 68314 of the afore-mentioned fraud of Yalcin Ayasli by Istanbul Chief Public Prosecutor's Office is ongoing, and many ex-employees / current employees of Borajet are providing witness statements as part of the investigation and some facts are being revealed. As an example, in his statement dated 05/10/2017, Borajet's Head of Financial Affairs Tolga Uzumcu stated that;

- He has been working at Borajet since 2014,
- Even though the company is technically bankrupt, some **accounts are shown as active** on paper in order to save the company from bankruptcy,
- There are amendments especially in accounts with **No. 180, 280, 226 and 264** that can deceive the 3rd parties,
- The technical maintenance expenses and maintenance reserve deposits, **which must be shown as passive, are shown as active**,
- A lot of invoices and balance sheets (that showed **the Company's obligations**) were deliberately not included in the worksheet **prior to the sale of the Company**,
- Yalcin Ayasli bought Borajet Bakim Sirketi [Borajet Maintenance Company] (even though the Company was in loss) for **$29.5 million** and sold it to Borajet Havacilik [Borajet Aviation] just on paper in order to show strong equities for the Company, but in fact, there was no cash flow.

**(Appendix-1: Tolga Uzumcu's statement dated 05/10/2017)**

Alternatively, to give another example; Borajet's technical managers Olcay Ozbay and Ceylan Topal stated that;

- The airplanes **have a lot of missing parts**,

7

Gokce | Yarali Attorney Partnership

- Only **4** airplanes can fly,
- **6** airplanes cannot fly,
- 3 airplanes are used as a **spare part donor** and the spare parts removed from those airplanes are installed on the other airplanes,
- The **airplanes** that have been sent for repair and maintenance cannot be **collected** due to having no money.

**(Appendix-2: Olcay Ozbay's statement dated 05/11/2017)**
**(Appendix-3: Ceylan Topal's statement dated 05/11/2017)**

Similarly, in his statement, Boraket's previous General Manager and Chairman of the Board of Directors Fatih Akol stated that;

- He participated in the negotiations within the frame of the Share Transfer Agreement,
- Yalcin Ayasli took over the responsibility for any extra obligations and missing receivables other than stated in the Worksheet of the Agreement,
- Yalcin Ayasli has **control over even the tiniest detail of Borajet** from an operational and managerial point of view,
- Yalcin Ayasli was aware of the financial status of Borajet.
- **(Appendix-4: Fatih Akol's statement dated 05/11/2017)**

It is clear that these statements should be taken into consideration whilst considering the faultiness of Yalcin Ayasli, and that the afore-mentioned individuals should be heard in the court as a witness.

**A.  WHEN COMPARED WITH ALL THE BORAJET OBLIGATIONS STATED WITHIN THE SCOPE OF THE AGREEMENT DATED 12/29/2016, IT HAS BEEN FOUND THAT THE COMPANY HAS A TOTAL OF $29,588,845.00 ADDITIONAL OBLIGATIONS.**

As per clause **3.1** of the Agreement, Yalcin Ayasli accepts and declares that Borajet does not have any further obligations other than what is stated in the Worksheet,

and as per clause **3.2** of the Agreement, he accepts to **immediately** pay any additional obligations that might be revealed, without the need for any notice.

8

Gokce | Yarali Attorney Partnership

The additional obligation amount of **$29,588,845.00** which has not been shown in the Agreement and its appendices in any form can be classified into **4 categories**:

**AA) The obligation amount of $4,909,318.00 that was revealed at a later stage even though it was not shown in the Account No. 320 of the Worksheet attached to the Agreement in any form**

From an accounting point of view, **Sellers' Account No. 320** is the account in which the obligations arising from a company's goods and service purchases are recorded. In normal circumstances, an obligation that arises from a purchase should be recorded in this account. However, a **lot of obligations** have been revealed that **had been deliberately not recorded neither in Account No. 320 nor in any other accounts** in the Agreement, the addendum of the Agreement or in any other commercial books even though they belonged to the period prior to 12/29/2019, the date on which the Share Transfer Agreement was signed. The invoices and agreements for the total obligation amount **of $6,345,153.00**, the existence of which was revealed after Borajet had been taken over by Client Company, have been presented to the Court.

**BB) Accrued Expenses the existence of which was revealed at a later stage even though they had been deliberately not shown in the Account No. 381 of the Worksheet attached to the Agreement**

From an accounting point of view, **Accrued Expenses Account No. 381** refers to the account in which the expenses that are to be paid in the following months are monitored even though they were accrued in the period the work was done. In normal circumstances, such obligations that are not mature debt within the period in which the agreement was formed, they should be fully recorded in this account.

However, Borajet has a total additional obligation amount of **$5,742,791.00** that **was not recorded in the books and not shown in the Agreement even though it arose** in the period prior to 12/29/2019, the date on which the Agreement was signed. The invoices and agreements of the corresponding debt have been presented to the Court.

9

Gokce | Yarali Attorney Partnership

**CC) The cost of maintenance and missing parts for the airplanes for the amount of $13,673,910.00 even though it was now shown neither in the Agreement nor in the Worksheet attached to the Agreement**

Due to the fact that all of Borajet's airplanes that have been taken over are actually leased airplanes, the responsibility for the regular maintenance and completeness of the airplanes belongs to Borajet as the lessee as an **obligation**. If the periodic airplane maintenance is not adhered to and if there are any missing parts in the leased airplanes, it means that the lessee company **is not fulfilling its obligation** for the lessor company in terms of maintenance and replacing the missing parts.

In our situation which is the subject matter of the case; even though it is not stated in the Agreement or in the Worksheet in any form, it has been found that the airplanes that are licensed under Borajet have **850 missing parts** and an amount of **$13,673,910.00** needs to be spent towards the expenses of repair and missing parts to make up for it. It is without any doubt that even though Borajet has actually an additional obligation amount of **$13,673,910.00** to the lessor companies and Client Company has not been informed of this additional obligation. There is no doubt that Borajet's airplanes have been handed over with serious defects and deficiencies and there was a **n effort to show a higher value for the Company by hiding the obligations**.

**The Report** with regards to these obligations that has been prepared by Olcay Ozbay, Tolga Uzumcu and Ugur Ozkan **dated 12/31/2016** that have not been shown in the Agreement and the Worksheet has been submitted to the Court.

**DD) The difference of TRY 13,467,947.20 ($3,826.991.00) caused by the usage of older currency exchange rate with regards to the foreign currency obligations in the Worksheet**

As per the Tax Procedure Law, even if companies have obligations and receivables in foreign currency, they are converted to TRY by using **the exchange rate on the date on which the Worksheet is issued** and singularity is achieved accordingly. However, in the Worksheet that was issued on 12/29/2016, Defendant Yalcin Ayasli **showed the obligations of Borajet Havacilik as TRY 13,467,947.20 less** by calculating the obligations, especially in Account Numbers 320 and 340, by using **the currency exchange rate** on **09/30/2016 when the USD rate was lower**. Therefore, that difference should also be considered as **"additional obligations that are not shown in the Worksheet."**

10

Gokce | Yarali Attorney Partnership

**B. WHEN COMPARED WITH ALL THE BORAJET RECEIVABLES STATED WITHIN THE SCOPE OF THE AGREEMENT DATED 12/29/2016, IT HAS BEEN FOUND THAT THE COMPANY HAS A TOTAL OF $31,939,555.00 LESS RECEIVABLES.**

As it has been shown differently in the Agreement and Worksheet, Yalcin Ayasli deceived Client Company **by showing a higher value for Borajet**, claiming that Borajet has additional **receivables of $31,939,555.00**, which is not true in reality. However, as a result of the analyses and investigations carried out after the transfer, it has been found that Borajet has a lot less receivables than what is shown in the Agreement and Worksheet and **does not actually have total receivables of $31,939,555.00**.

The **receivables** amount **of $31,939,555.00,** which has been shown as existing in the Agreement and its appendices, can be classified into **5 categories**:

**AA) The maintenance reserve deposit of $26,821,852.00 which is shown as a receivable for Borajet in the long term even though it is actually irretrievable expense**

Defendant Yalcin Ayasli, who handed over his Borajet shares, has deceived Client Company by showing higher values for the companies by reflecting the legally irretrievable expenses as receivables on paper.

In normal circumstances, leased airplanes have to pay an **irretrievable Maintenance Reserve Deposit** to the lessor company that leases them in return of flight hours. **Even though it is called a deposit**, the Maintenance Reserve Deposit is used for the maintenance of airplanes **and is not returned to the lessee company under any circumstances**. Nevertheless, the Maintenance Reserve Deposits **of $26,821,852.00** that has been paid to the lessor companies are shown in the **Deposits Account No. 226** in the Worksheet, **as if they were retrievable**. It is common knowledge in the aviation industry that such **expenses are never recorded in deposit accounts as they are irretrievable**. Nevertheless, in order to show a higher value for the Company, the relevant amount has been shown **as a deposit to be returned to the company in the future**,

11

Abide-I Hurriyet Caddesi No: 158 Kat: 2 Sisli, Istanbul T: +90 212 352 88 33 Fax: +90 212 352 88 60
www.gokce.av.tr

Gokce | Yarali Attorney Partnership

**and Client Company has been deceived by deliberately showing a higher value for the Company.**

**BB) The amount of $4,315,638.00 has been shown as a future investment and has been recorded as active, instead of passive, even though it is some expense that belongs to the previous periods.**

From an accounting point of view, Account Numbers 180 and 280 refer to accounts in which **the amounts that have been already paid** towards the expenses in the following months and years are recorded. As an **example**; if the rent for the next 5 months has been paid in advance, that amount is recorded under the Account No. 180 rather than the "Expenses Account". That is because the service and benefits expected in return of the rent amount have not yet been received and refer to **the vested rights (receivables) for the future**. For that reason, the increase in this account shows that **the Company has the right to receive services in the future periods**, and only the expenses that bring rights for the future periods are recorded under this account.

In the situation which is the subject matter of the case; Yalcin Ayasli deceived Client Company with regards to the actives of Borajet by recording **the expenses to be made due to the wear and tear of the airplanes in the past periods** under Account Numbers 180 and 280 **as if those expenses will bring rights to Borajet in the future periods**. By doing so, the Company's value has been shown as **$4,315,638.00** higher than the actual by recording the expense amount of **$4,315,638.00** under **actives** accounts, which should have actually been recorded as **passives** under the "Expense Accounts."

When this figure is added together with the **maintenance and missing parts amount of $13,673,910.00** that has been mentioned above, it is clearly seen that;

- The relevant expenses do not actually bring any rights or benefits for the future, and even if they did, there would not be such high amounts of maintenance and missing parts costs,
- Yalcin Ayasli is severely culpable due to the fact that he has made incorrect declarations **deliberately**.

12

Gokce | Yarali Attorney Partnership

**CC) Missing receivables of $200,120.00 that has been shown as receivables from the staff even though it had been cleared**

To give another example; as the accounts **had been cleared** with the dismissed employees (therefore, any rights to request for the relevant advance payments from the staff had been cancelled), the Employment Advance Payments and Employee Advance Payments of **$200,120.00** that have been paid to the **Staff should not have been shown** as remaining **"receivables"** in the Worksheet; however, they have been shown as **receivables** in the Account Numbers 195 and 196 in the Worksheet dated 12/29/2016, and **Client Company has been falsely informed** with regards to the value of the Company on an **intentional and deliberate** basis**.**

**DD) The amount of $457,347.00 that has been accounted for as "Other Commercial Receivables" when it should have been accounted for as "Doubtful Receivables" as there was actually no capability to collect them anymore.**

The doubtful receivables accounts are accounts that should be used when there is less possibility to collect or when the debtor is unclear.  However, Yalcin Ayasli showed a higher value for the company on paper by recording the receivables with unidentified debtors or receivables from bankrupt companies (such as **Oger Tur** that has been shown as active in the "other commercial receivables" Account No. 127 in the Worksheet attached to the Agreement) in the books and under the **"Other Commercial Receivables Account No. 127"** in the Worksheet **as if they were normal receivables with high capability to collect**.

**EE) The amount of $144,598.00 that has been shown as existing receivables in the Worksheet and in the Agreement even though they had actually been exchanged**

In normal circumstances, any exchanged receivables should be deleted from the books; however, Yalcin Ayasli showed a higher value for the company on paper by not deleting the exchanged receivable of **$144,598.00** in the receivables Account No. 120.

   **C.  WHEN COMPARED WITH ALL THE BORAJET ASSETS STATED WITHIN THE SCOPE OF THE AGREEMENT DATED 12/29/2016, IT HAS BEEN FOUND THAT THE COMPANY'S REAL ASSETS ARE A TOTAL OF $3,824,008.00 LESS THAN WHAT IS STATED.**

13

Gokce | Yarali Attorney Partnership

Yalcin Ayasli deceived Client Company by **showing a higher value for Borajet** by showing an **additional asset** amount of **$3,824,008.00** in the Agreement and Worksheet, which is not true in reality. However, as a result of the analyses and investigations carried out after the transfer of Borajet, it has been found that Borajet has a lot less assets than what is shown in the Agreement and Worksheet and **does not actually have further assets of $3,824,008.00.**

In normal circumstances, **Special Expenses Account No. 264** consists of the expenses that account for **the improvement** of rented **real estates** or **the continuous improvement of their economic value**, and the amounts of **the assets** that have been built for the usage of the real estate that **will be left with the owner when the lease period is over**. To give an example; if a tenant builds an additional floor to the rented property, that will increase the value of the property, and that (in fact, increased) amount will be recovered from the owner of the property. Therefore, that will be recorded in the **Special Expenses Account No. 264**.

Similarly, the **"Other Intangible Fixed Assets Account" No. 267** is an account in which the (fixed) assets of the company are recorded.

In the situation which is the subject matter of the case, Yalcin Ayasli recorded in Accounts 264 and 267

- A non-existent real estate,
- The maintenance expenses of **$3,824,008.00** that have been spent on the leased airplanes,
- Even though no values were added to the airplanes,
- Even though there were no rights to be claimed from any 3rd parties due to the expense amounts spent.

Therefore, Borajet's assets have been shown as **$3,824,008.00** more than the actual. If the repair and maintenance expenses had added any kind of value to Borajet (such as adding extra engines to the airplanes), such a mistake would be slightly more excusable; however, the fact that the relevant maintenance and repair expenses **have been shown as increase in the assets of Borajet even though they did not add any additional value** is a plain act of **fraud**.

As a consequence, all these items mean that any profit that could be gained with the Client's Borajet operations that was guaranteed by the Defendant is eradicated and the Client is in loss.

14

Gokce | Yarali Attorney Partnership

**D.  WHEN COMPARED WITH BORAJET'S POTENTIAL LOSSES FORESEEN WITHIN THE SCOPE OF THE AGREEMENT DATED 12/29/2016, IT HAS BEEN FOUND THAT THE COMPANY HAS A TOTAL OF $6,625,607.00 (AS MUCH AS IT HAS BEEN IDENTIFIED TO DATE) MORE LOSS THAN WHAT IS STATED.**

As it has been stated above, even though it is not stated neither in the Agreement nor in the Worksheet in any form, it has been found that the airplanes that are licensed under Borajet have **850 missing parts** and an amount of **$13,673,910.00** needs to be spent towards the expenses of repair and missing parts to make up for it. However, spending **$13,673,910.00** will not resolve the Company's issues on its own. Accordingly, even if the Client Company had identified these issues on the day the transfer of shares was made and had enabled the required financing in order to start the maintenance and repair operations of the airplanes, the planes **would have been ready to fly at least 4 months later**. The fact that the airplanes cannot fly for a period of **4 months** causes some loss:

- The rent paid for the airplanes unable to fly
- The wages paid to the staff even if the airplanes do not fly
- General administrative expenses for the airplanes unable to fly

According to the report prepared by Tolga Uzumcu, Ugur Ozkan and Abdulbaki Keskin dated 12/31/2016, the total amount for such incurred loss is **$6,625,607.00**. (This report has been submitted to the Court.) We would like to highlight the important point that the amount only consists of **the inevitable expenses for 4 months**, and it does not include

- **The refunded ticket sales for 2017 that were sold** even though it was technically and legally impossible to fly the airplanes,
- **The additional expenses for the refund of the tickets bought from THY** [Turkish Airlines] at a higher cost  for any requesting customers (without reflecting the additional cost to the customers) within the frame of customer satisfaction,
- The loss caused due to Borajet **holding its flight operations**,
- **The fines and expenses paid** by Borajet due to the **leased airplanes** being **returned** to the Leasing companies,
- **The serious amount of commercial reputation loss** in the eyes of the industry and customers due to the Client Company's and Borajet's cancellation of its flights,

15

Gokce | Yarali Attorney Partnership

- The serious amount of commercial reputation loss in the eyes of the industry and customers due to the perception that **"Borajet's airplanes are faulty"**,
- The loss of profit due to **the lack of any potential sale revenue** in the future periods.

We reserve all our rights for any claims and litigations with regards to the above.

   **3.** As it has been clearly stated above, the Client Company's receivables from Yalcin Ayasli can be evaluated in 2 aspects from s legal point of view:

- The receivables that arise from **the non-compliance with the clear acceptance in clause 3.1 of the Agreement** that was signed between the parties on 12/29/2016.
- **The actual loss** that corresponds to the expenses spent due to the fact that the Agreement was not executed as required + **the loss of profit** that is caused due to the fact that it is impossible for the company to reach the asset status it should do.

As per clauses 3.1 and 3.2 of the Agreement, Yalcin Ayasli has declared that Borajet, the shares of which has been transferred, does not have any obligations (other than what is shown in the Agreement and Worksheet), and that he accepts to pay any additional obligations that might be revealed without the need for any notice. Thus, **the payment of the additional obligations of $29,588,845.00 to the Client Company**, which has been stated above, is Yalcin Ayasli's clear acceptance within the frame of the Agreement. In fact, the fact that any additional obligations that are not shown in the Agreement will be paid **has also been acknowledged by Yalcin Ayasli** in the response letter. However, Yalcin Ayasli clearly acts against the Agreement and does not pay the obligations to the Client Company.

There is also no doubt with regards to the existence of **$31,939,555.00 worth of missing receivables, $3,824,008.00 less assets, and $6,625,607.00 more loss**.

We would like to highlight the important point that these figures do not include

- The exaggerated amount that is caused by the fact that **Borajet's subsidiary Borajet Bakim Onarim ve Ticaret Anonim Sirketi** [Borajet Maintenance Repair and Trade Inc.] has been shown as if it has a value of **$29,500,000.00** in the Worksheet attached to the Agreement even though its equity was actually below zero.
- The interest amount of **$1,300,000.00** requested by Embraer Company due to late interest,

16

Gokce | Yarali Attorney Partnership

- The fact that Embraer cancelled the discount of **$830,000.00** due to late payment on the invoices,
- **The ticket amounts of $1,465,666.24 that had to be refunded to the customers as they had been sold** even though it was not possible for the airplanes to fly from a technical and legal point of view,
- **The expenses of the tickets that had to be purchased from THY** [Turkish Airlines] **at a higher cost** as there were no corresponding sales (within the frame of maintaining customer satisfaction and the company reputation, and more importantly, to prevent the customers' compensation claims and administrative sanctions due to the fact that the client company could not deliver the result of the sales to its customers),
- **The additional receivables of $346,564.82 that are not possible to collect** even though they were shown in the Account No. 120 of the Worksheet,
- **The amount of commercial reputation loss** incurred by SBK holding, Bugaraj, and Borajet.

The Client Company Bugaraj reserves the right to claim all kinds of compensations and receivables that arise from the differences of these items in the following stages of the case or by filing a separate case.

As a result, Borajet's financial status has been falsely declared at an amount **exceeding $100,000,000.00** and the Client Company Bugaraj was put under the impression that Borajet is **investable**. In that context, Client Company Bugaraj

- Accepted to take over Borajet,
- Accepted to pay Yalcin Ayasli 25% of the net amount to be gained by the sale of Borajet in the future (Agreement Clause 2.2),
- Made large amounts of investment by **transferring resources** to Borajet in order to improve the financial status of Borajet and turn it into **a profitable company**.

However, the facts that were revealed after Borajet had been taken over showed **a discrepancy of over $100,000,000.00** in the Agreement and Worksheet, and it has been found that **Borajet cannot be turned into a profitable company with the strategy based on the Worksheet**.

For that reason, the Client Company has incurred large amounts of loss, which is the subject matter of this case.

**Within this frame, the LOSS OF PROFIT that the Client Company has experienced is currently classified as "UNDETERMINED RECEIVABLES,"**

17

Gokce | Yarali Attorney Partnership

**and it should be compensated for by the Defendant Yalcin Ayasli once it has been identified by the court.**

<u>**LEGAL REASONS :**</u> Enforcement Bankruptcy Law, Civil Procedures Law, Turkish Code of Obligations, Supreme Court Practices, and miscellaneous legislations.

<u>**OUR EVIDENCE :**</u> Our list of evidence has been attached to our response letter to the response, with our rights reserved for providing evidence and making declarations in the following stages of jurisdiction including findings and expert opinion reports, witness statements and oaths, as well as for providing evidence and making declarations against any other evidence to be presented.

<u>**RESULT AND REQUEST :**</u> Provided that all our declaration and evidence submission rights are reserved, we would like to get the following decisions;

1. **TRY 253,305,035.00** ($71,978,016.00) must be collected from the defendant, together **with the highest amount of interest rate applied to commercial obligations** as of the company transfer date i.e. 12/29/2016 and must be paid to the Client Company,

2. **The loss of profit** that the Client Company has experienced must be identified and must be paid to the Client Company, together **with the highest amount of interest rate applied to commercial obligations**, as a compensation by the Defendant Yalcin Ayasli,

3. The costs of legal proceedings and the representation fees must be CHARGED TO THE DEFENDANT, together with the interest amount.

**Claimant Bugaraj Elektronik Ticaret ve Bilisim Hizmetleri A.S.**
**Representative**
**Lawyer Sinan Gorkem Gokce**

18

**T.R.**
**ISTANBUL**
**CHIEF PUBLIC PROSECUTOR'S OFFICE**

**Investigation No.**: 2017/68314 Investigation

**STATEMENT REPORT**

Witness TOLGA UZUMCU, father's name ISMAIL, mother's name NILGUN, date of birth ▇▇▇▇▇▇, place of birth in village/neighborhood of UMURBEY BELGESI in LAPSEKI district of CANAKKALE province, birth registered in Vol: 41, family row no: 194, row no: 13, single, graduate of High School or Faculty, and said he resides at the address Hacihesna Hatun Mah. Pasa Limani Cad. Altin Isik Apt. No: 18 K:4 D:10 Uskudar, Istanbul.

Mobile Number: +90 533 298 46 84

THERE IS NO OBSTACLE TO BEING A WITNESS, THE CONSEQUENCES OF PERJURY HAVE BEEN EXPLAINED, THE OATH WAS TAKEN AS APPROPRIATE.

**HE WAS ASKED:**

I know Yalcin Ayasli. He was the owner of Bora Jet. I was the president of financial affairs in that company. I started working in September 2014. In the year 2016, we reported the technical bankruptcy of the company to the management. I express this in terms of accounts only. Furthermore, the company had more obligations than it could bear and had less revenue as of 2015, which would have meant technical bankruptcy in the balance sheets; therefore, upon the instruction of the board of directors, Zahide Uner, the officer responsible for financial affairs, and Fatih Akol, the general manager, were consulted and some window dressing was done to strengthen the equities by recording the airplane technical and maintenance expenses under the actives of the balance sheet for the accounts 180-280-226-264. In addition, on 12/31/2016, the company management made this decision in order to save the company from technical bankruptcy and to be able to carry out our operations in line with the instructions of Directorate General of Civil Aviation. The group CFO Zahide Uner informed me about this decision orally. As it was disadvantageous to record those conversations in writing, she always gave instructions orally. During this period when we worked, some invoices received by the company were returned as the company was not in a position to pay its obligations, and those were not included in the balance sheet and worksheet. Those invoices were included in the company records at a later stage, after the company had been sold. And some liabilities that arise from some of the agreements that the company signed were not shown in the worksheet attached to the company sale agreement.

When I stated that there were missing items in the worksheet dated December 28, 2016, Ms Uner told me that the missing items were going to be paid to the buyers after the sale and an agreement would be reached.

A decision was taken, once again, to reflect stronger equities for Bora Jet Aviation for a transaction by selling the active Bora Jet maintenance company to Yalcin Ayasli from Bora Jet Aviation in August 2015 for the amount of $29,500,000.00 and then buy it back for the same amount in January 2016 so that stronger equation could be shown. No cash transaction was carried out.

Another point I would like to raise is that during the sale agreement, Lawyer Murat Isen on behalf of Yalcin Ayasli, Zahide Uner and Fatih Akol recorded and declared that Yalcin Ayasli would submit to the company and the buyers the cancellation of his receivables from the company. As far as I know, that commitment was not followed later. Ms Uner and Mr Akol reported all transactions to Yalcin Ayasli. If the company had not been sold to S.B.K Holding, it would not be possible to continue its operations. I currently do not work for that company. There is nothing else I would like to add. 05/10/2017

KUBILAY ERYIGIT 36046            KURSAT BULUT 187068
                                TOLGA UZUMCU

Public Prosecutor            Court Clerk            Witness

[Barcode]

You can access this document in the UYAP Information System at the website address http://vatandas.uyap.tr with yPecD5l – bzhVnZt – SmucJ1P – efG/Vw=.

**T.R.**
**ISTANBUL**
**CHIEF PUBLIC PROSECUTOR'S OFFICE**

**Investigation No.**: 2017/68314 Investigation

### STATEMENT REPORT

Witness OLCAY OZBAY, father's name NECATI, mother's name GUNAY, date of birth ▮▮▮▮▮▮▮, place of birth in village/neighborhood of DERECIK in ARHAVI district of ARTVIN province, birth registered in Vol: 12, family row no: 47, row no: 78, married, graduate of High School or Faculty, and said he resides at the address Adnan Kahveci Mah. Karan Sk. No: 5 Ic Kapi No: 37 Beylikduzu, Istanbul.

Mobile Number: +90 538 540 97 81

THERE IS NO OBSTACLE TO BEING A WITNESS, THE CONSEQUENCES OF PERJURY HAVE BEEN EXPLAINED, THE OATH WAS TAKEN AS APPROPRIATE.

**HE WAS ASKED:**

I know Yalcin Ayasli. He was the owner of Bora Jet. I work as a chief technical officer in the company. I knew that the company was in difficult position in terms of financial payments. Our obligations to some of the suppliers that provided service to use could not be paid. For that reason, some of the spare parts could not be delivered, so the parts of the airplanes on the ground were removed and installed on the other airplanes.  The maintenance of the spare parts that were with the suppliers abroad could not be carried out as they could not be paid for, and it was not possible to take them back as no payment was made. As a result, there were 6 airplanes on the ground that were not able to fly at the time of the company sale on 12/29/2016. There were 4 airplanes that could fly. The maintenance and replacement costs of the spare parts that were removed from those airplanes were reported to the finance department of the company. I am not aware why they are not stated in the worksheet and balance sheet. I did prepare a report that showed the technical status of the airplanes on December 31, 2016 and submitted it to the management. There is nothing else I would like to add. **05/10/2017**

KUBILAY ERYIGIT 36046                               KURSAT BULUT 187068

OLCAY OZBAY

Public Prosecutor                            Court Clerk                                Witness

[Barcode]

You can access this document in the UYAP Information System at the website address http://vatandas.uyap.tr with BN9webj – n5bnlwr – ZdfF9K7 – 18CoCI=.

**T.R.**
**ISTANBUL**
**CHIEF PUBLIC PROSECUTOR'S OFFICE**

**Investigation No.**: 2017/68314 Investigation

## STATEMENT REPORT

Witness MEHMET CEYLAN TOPAL, father's name HALIL, mother's name FERSUN SIBEL, date of birth
████████, place of birth in village/neighborhood of BITEZ in BODRUM district of MUGLA province, birth
registered in Vol: 9, family row no: 15, row no: 28, married, graduate of High School or Faculty, and said he
resides at the address Altunizade Mah. Atifbey Sok. No: 9F Ic Kapi No: 8 Uskudar, Istanbul.

THERE IS NO OBSTACLE TO BEING A WITNESS, THE CONSEQUENCES OF PERJURY HAVE BEEN
EXPLAINED, THE OATH WAS TAKEN AS APPROPRIATE.
**HE WAS ASKED:**
I know the suspect Yalcin Ayasli. He is the previous owner of the company. I am the general technical manager
of the company. 3 airplanes were completely unable to fly as of 12/29/2016. The other 3 airplanes were unable to
fly due to having missing parts or broken parts. The reason for this situation is that 3 airplanes are used as a
source for spare parts, and the other 3 airplanes are unable to fly due to missing parts. The main reason for that is
the financial distress that the company has been in. It is because the spare parts we sent for repair and
maintenance did not come back as the payments had not been made. I was aware that the company had
difficulties to pay. The part pricings were submitted to the finance department. We did tell Finance, but they told
us that they could not buy them because there was no money. There is nothing else I would like to add.
05/11/2017

KUBILAY ERYIGIT 36046                    KURSAT BULUT 187068
                                         TOLGA UZUMCU

Public Prosecutor                Court Clerk                      Witness
                                                                 [Signature]


[Barcode]

You can access this document in the UYAP Information System at the website address http://vatandas.uyap.tr with weOSBP+ - 3zHIuLP –
mXGTqfr – m0tAAk=.

**T.R.**
**ISTANBUL**
**CHIEF PUBLIC PROSECUTOR'S OFFICE**

**Investigation No.**: 2017/68314 Investigation

## STATEMENT REPORT

Witness FATIH AKOL, father's name YASAR, mother's name FATMA, date of birth ▮▮▮▮▮▮▮, place of birth in village/neighborhood of KAYALIBAG in SEYHAN district of ADANA province, birth registered in Vol: 25, family row no: 547, row no: 16, married, graduate of High School or Faculty, and said he resides at the address Pinar Mah. Kilic Sk. No: 2E Ic Kapi No: 2 Sariyer, Istanbul.

Mobile Number: +90 533 460 73 44

THERE IS NO OBSTACLE TO BEING A WITNESS, THE CONSEQUENCES OF PERJURY HAVE BEEN EXPLAINED, THE OATH WAS TAKEN AS APPROPRIATE.

HE WAS ASKED:

I know Yalcin Ayasli. He was the previous owner of the company. I was the Chairman of the Board of Directors and General Manager of the company. I left my job after the company was sold. I knew that the company was in a difficult position to make payments. The sale of the company was made by the representatives of Yalcin Ayasli, under Yalcin Ayasli's direct leadership, the members of the board of directors and myself all together. The essence of the company sale agreement was that the seller would be responsible for any obligations that might arise other than what was shown in the worksheet and that the seller would be responsible for any receivables that were shown but were not able to be collected. Yalcin Ayasli accepted both orally and in writing that he would take on any liabilities other than what was shown in the worksheet.

Yalcin Ayasli had control over even the tiniest details of the company from the operational and administrative aspects. He was aware of the company's daily management. The information with regards to the daily passenger numbers and turnover per flights was shared with him. In addition to that, the company's monthly and quarterly financial and operational information was also shared with him on a regular basis. And the company budgets as of the beginning of the year were implemented by his approval. The company's operational information, the financial situation that the company was in, and the company needs were presented to him with daily and periodic reports.

In addition, Yalcin Ayasli had cancelled all of his receivables from Bora Jet, Aydin Jet and Bora Jet Technic as part of the sale agreement. He confirmed that he would submit the document relating to this to the buyers. There is nothing else I would like to add. 05/11/2017

KUBILAY ERYIGIT 36046                    KURSAT BULUT 187068                         FATIH AKOL

Public Prosecutor                        Court Clerk                      Witness

[Barcode]

You can access this document in the UYAP Information System at the website address http://vatandas.uyap.tr with zNLfDMA – 8DQxDJE – P9KmP1L – bnC4UA=.

Gökçe | Yaralı Avukatlık Ortaklığı

İstanbul, 22.05.2017

## İSTANBUL 3. ASLİYE TİCARET MAHKEMESİ
## SAYIN BAŞKANLIĞI'NA

Dosya No: 2017/242

**DAVACI** : **Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş.**
Maslak Mah. Dereboyu Cad. Zağra İş Merkezi No:14/C
Sarıyer/İSTANBUL

**VEKİLİ** : **Av. Sinan Görkem Gökçe**
*(Adres Antettedir)*

**DAVALI** : **Yalçın Ayaslı (42856435568)**
Harbiye Mah. Taşkışla Cad. No 3/56 Şişli/İstanbul

**VEKİLİ** : **Av. Burhan Asaf Şafak**
Cumhuriyet Cad. Erk Apt. No. 14 K.4 D.8 Elmadağ,
Şişli, İstanbul

**KONU** : Davalı'nın 24.03.2017 tarihinde tarafımıza tebliğ edilen cevap
dilekçesine karşı süresi içinde cevaba cevap dilekçemizin
sunulmasından ibarettir.

## AÇIKLAMALAR :

Müvekkil Şirket Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş. (**Bugaraj**) ile
Yalçın Ayaslı (**Davalı**), Borajet Havacılık Taşımacılık Uçak Bakım Onarım ve
Ticaret Anonim Şirketi'nin (**Borajet**) devrine ilişkin 29.12.2016 tarihinde "Hisse
Devir ve Kar Paylaşım Sözleşmesi" (**Sözleşme**) imzalamışlardır. Ne var ki Yalçın
Ayaslı, Sözleşme'deki yükümlülüklerine uymadığı gibi Müvekkil Şirket'i yanlış
beyanlarla aldatmıştır. Bunun üzerine Müvekkil Şirket Bugaraj, yasal yollara
başvurmak zorunda kalarak 13.03.2016 tarihli dava dilekçesi kapsamında

a) Sözleşme'de ve Sözleşme'ye ekli Mizan'da **hiç gösterilmediği** halde
**mevcudiyeti sonradan açığa çıkan borçlar** için

1

**b)** Sözleşme'ye ekli Mizan'da bilinçli olarak Bora Jet'in **alacağıymış gibi gösterildiği** halde esasında Borajet tarafından **geri alınması mümkün olmayan giderler** için

**c)** Mizan'da ve Sözleşme'de eksiksizmiş gibi gösterildiği halde **arızaları ve eksiklikleri sonradan ortaya çıkan uçaklar**dan kaynaklanan **masraflar** için

**d)** **Arızaları ve eksiklikleri sonradan ortaya çıkan uçakların** tamir edilmesi için geçen asgari **sürede uçakların uçamamasından kaynaklanan zararlar** için

**e)** TL'ye çevrilerek Mizan'a aktarılan Şirket'in **döviz borçlarında kur** gerçek değerinden **düşük hesaplandığı** için daha **azmış gibi gösterilen borçlar** için

**f)** Esasında Şirket'in gideriyken sanki Şirket'in **malvarlığında bir artış meydana gelmiş gibi gösterilen** kalemler için

**g)** Esasında **kapanmasına** veya **tahsil kabiliyeti kalmamasına** rağmen hala şirket alacağıymış gibi gösterilen alacaklar için

**şimdilik** 253.305.035,00 TL (**71.978.016 $**)'nin Şirket devir tarihi olan 29.12.2016 tarihinden itibaren ticari alacaklara uygulanan en yüksek faizle birlikte davalıdan tahsil edilerek davacı şirkete ödenmesini talep etmiştir. Bunun üzerine Davalı Yalçın Ayaslı, 24.04.2017 tarihinde tarafımıza tebliğ edilen cevabi dilekçesinde

**a)** Sözleşme'nin varlığını hükümleriyle birlikte ikrar etmiş,

**b)** Borajet'in herhangi bir bedelle devredilmediğini iddia etmiş,

**c)** Eğer Sözleşme'nin eklerinde/Mizan'da belirtilmeyen ilave borçlar ortaya çıkarsa bunların ancak Sözleşme'nin 3.2'nci maddesi uyarınca ihtarname keşide edilmesi, dava açılması, ödenmesi veya icra takibi yapılması durumunda borcun davalıya ait olacağını belirtmiş,

**d)** Dava talebinin **büyük oranda bilançodaki yanlışlıklardan kaynaklandığını** öne sürerek bu farklardan doğan zararın **29.12.2016 tarihli Sözleşme kapsamında talep edilemeyeceğini** iddia etmiş,

**e)** Uçakların uçmamasından kaynaklanan zararlar için bilirkişiye gidilmesi gerektiğini

ileri sürmüştür.

**Bu noktada belirtmeliyiz ki Davalı'nın tazminat ödemeye gerek olmadığına yönelik iddiaları bütünüyle hukuka aykırıdır.**

## OLAYLARIN ÖZETİ

**1.** Hemen en başta belirtelim ki, SBK Holding iştiraklerinden Bugaraj, Borajet'i, Yalçın Ayaslı'nın 29.12.2016 tarihli "Hisse Devir ve Kar Paylaşım Sözleşmesi"ndeki **beyanların doğruluğuna inanarak** devralmıştır. **Sözleşme kurgusu,**

- Hedef şirket Borajet'in hisselerinin, Sözleşme ekinde yer alan **Mizanın yansıttığı malvarlığı durumu itibarıyla** Bugaraj tarafından **devralınması,**

- **Bugaraj'ın** Mizan'da yer alan ve **Sözleşme ilişkisi kapsamında kendi sorumluluğu altındaki borçları ödemesi** ve bu yolla Şirket'e sağlayacağı mali kaynak kapsamında **Borajet'in mali darboğazdan kurtarılması,**

- Akabinde **Şirket'in** işletmesel ihtiyaçlarının karşılanması suretiyle **değerinin artırılması,** daha doğru bir deyişle bir **değer yaratılması** ve sonrasında **bu değerin Sözleşme tarafları arasında** -Sözleşme'de belirlenen oran muvacehesinde- **paylaşılmasıdır.**

Ancak sözleşme ekindeki mizan, bir **dolandırıcılık** eseri olarak Borajet'in gerçek mali durumunu yansıtmaktan çok uzaktır. Bu bağlamda hisseleri devralan Müvekkil Bugaraj, işbu davanın değerini aşan büyük bir maddi zarara maruz kalmıştır. Şöyle ki, hedef şirketin mali durumu bir taraftan **pasiflerin gizlenmesi,** bir taraftan da **aktiflerin olması gerekenden çok daha yüksek gösterilmesi** suretiyle sözleşme tarihi itibarıyla, "olan"dan çok daha az kötü yansıtılmıştır. Böylelikle **Müvekkil**

3

**Şirket, belli bir miktar yatırım ile şirketin kurtarılabileceğini** ve **kar elde edilerek satılabileceği** yönünde **inandırılmıştır**.

Ancak işin içine görülmüştür ki, Borajet, Sözleşme'ye ekli Mizan'da gösterilenden çok yüksek montanlarda borca batık durumdadır ve yapılan onca yatırıma rağmen durumun kurtarılması pek mümkün değildir.

Zaten konuyla ilgili **İstanbul Cumhuriyet Başsavcılığında 2017/68314** No'lu bir **Soruşturma** yürütülmekte olup, konuyla ilgili **Şüpheli Yalçın Ayaslı** hakkında **YAKALAMA KARARI** çıkarılmıştır.

Müvekkil Şirket Bugaraj,

- Bir taraftan hedef şirket **Borajet'in mevcut borçlarını ödemek için harcadığı bedel,**
- Bir taraftan **bu bedelin harcanması suretiyle Borajet'in ulaşacağı maddi değerin elde edilmemesi** sebebiyle

zarara uğramaktadır. Yani Müvekkil Şirket Bugaraj, devreden tarafın borca aykırı davranışı sebebiyle **hem fiili zarara uğramış hem de kar kaybına maruz kalmıştır.** Bu şekilde Müvekkil'in uğradığı olumlu zarar, Sözleşme'nin Davalı tarafça gerektiği şekilde ifa edilmemesinden kaynaklanmaktadır.

**Öte yandan** bu zararlar bir tarafa, **uğranılan zarardan bağımsız bir şekilde, devreden Davalı tarafın** Sözleşme'deki açık beyanına dayalı **bağımsız garanti sorumluluğundan kaynaklanan** ayrı bir alacak kalemi daha bulunmaktadır. **Sözleşmenin 3.1. ve 3.2. maddeleri** çerçevesinde davalı taraf,

> **Şirketlerin** *sözleşmeden, haksız fiilden ve diğer hiçbir şekilde* **mizanlara yansımamış bir borcunun bulunmadığı** *yönünde* **açık bir taahhüt** *vermekte ve aksine durumu* **tekeffül etmektedir.**

**Cevap dilekçesinde de bu durum kabul edilmekte** ve Sözleşme ekindeki Mizan'da belirtilen borçlar dışında bir talep gelmesi halinde, bunun şekil ve niteliğine bakılmaksızın karşılanacağının davalı tarafından taahhüt edildiği açıkça vurgulanmaktadır.

Öyle ise işbu taahhüt de, müvekkilin uğradığı ve yukarıda ortaya konulan - Sözleşme'deki bu taahhüt olmasaydı dahi geçerli olacak- olumlu ve olumsuz

4

zararları dışında, Davalı tarafın davacı Müvekkil'e yönelik sorumluluk alanına dâhildir. Davalı **Yalçın Ayaslı'nın sorumluluğunun kapsamı,** -cevap dilekçesinde belirtilenin aksine- sadece **Sözleşme ekinde açıkça gösterilmeyen, ancak sonradan ortaya çıkan borçlar ile de sınırlı olmayacaktır.** Zira Mizan ve dava listesine yapılan açık atıf göstermektedir ki, **Davalı devreden taraf,** Borajet'in işbu Sözleşme eklerine yansıyan **malvarlığı durumunun gerçeği yansıttığını tekeffül etmektedir.**

Zaten 29.12.2016 tarihli **Sözleşme'deki hükümler olmasaydı dahi** bu yönde bir **kanuni sorumluluğu** olacak olan Davalı Yalçın Ayaslı'nın bu **Sözleşme hükmü ile sorumluluk alanının daraltılmasının amaçlandığı düşünülemez.** Hüküm, tamamen Alıcı tarafın due diligence prosedürü yapılmaması sebebiyle, davalı Satıcıya güvenmesinin karşılığıdır. Yoksa sorumluluğun daraltılması şeklinde yorumlanması mümkün olmayan işbu Sözleşme hükmü kapsamında, **Borajet'in sonradan ortaya çıkan malvarlığındaki her türlü düşüklüğün, Satıcının sorumluluğunu doğuracağı** aşikârdır.

Cevap dilekçesinde davalının hisseleri devrederken hedef şirkete ait bir aktifin varlığını garanti ve taahhüt ettiğinin Sözleşme'de öngörülmediği belirtilse de, bu beyanın isabetsiz olduğu açıktır. Şöyle ki, **devredenin sorumluluğunun kabulü açısından,** taraflar arasındaki Sözleşme'de **şirket aktiflerine ve onların durumuna yönelik bu şekilde açık bir taahhüdün varlığı şart değildir.** Havayolu ile yolcu taşıyan ve çeşitli uçakların uhdesinde bulunduğu **bir havayolu şirketindeki uçakların, gerçekten de uçabilir durumda olacakları,** **parçalarının takılı olacağı ve kaçırılmamış olacağı,** Sözleşme'nin doğasında vardır. **Devredenin** bunlardan **sorumlu olmaması için** bunun, **yani aktiflerin durumunun ve devredenin bila sorumluluğunun** Sözleşme'de **açıkça** yazması gerekirdi, yoksa **aksinin değil.**

Unutulmamalıdır ki, **devredenin sorumluluğunun kabulü** ve davacı müvekkilin **zararının kabulü için** mutlaka müvekkil şirketin **fiilen bir bedel ödemesi şart değildir. Aktifteki rakamların** esas yerinin **pasif taraf** olması gibi bir durum, müvekkilin tamamını satın aldığı şirketten elde edeceği **ekonomik kazançtan onu mahrum etmektedir.** Kar kaybı da, bir **olumlu zarar** kalemidir ve Sözleşme'de devreden tarafından açıkça taahhüt edilmese de, **Müvekkil'in yanıltılması** suretiyle gerçekleşen bu durum, **Müvekkil'in zararına yol açmaktadır.**

5

Müvekkil'in hisselerini devraldığı, ciddi bir **maddi kaynak** ve **know-how aktardığı** Şirket'in, esasında kendisine bildirilenden çok daha **değersiz bir durumda olduğu** anlaşılmıştır. Bunun **Müvekkil açısından bir zarar kalemi olduğu** ve muhatabı/mesulü olan **Davalı tarafından tazmini gerektiği** şüphesizdir.

Borajet'in satış tarihi zamanındaki gerçek durumu ile Sözleşme eklerindeki durum arasındaki fark miktarı ve bunun gerçekleşme kalemleri, önceki dilekçelerimizde ortaya konulduğu gibi, **uzman mali raporlar** ile de ayrıca muhterem **mahkemeye sunulacak,** ayrıca bilirkişi incelemesi ile de ortaya çıkabilecektir.

**2.** Bugaraj ve/veya bağlı teşebbüsler bünyesinden Borajet'e şu aşamaya kadar aktarılan ve her geçen gün artan kaynak ile Şirket'in borçları kapatılmaya başlanmıştır. Zira Sözleşme'yle **Borajet'e ait olduğu beyan edilen borçlar, alacaklar ve malvarlıkları hesaplandığında Borajet'i kar elde eden bir şirkete dönüştürmek muhasebesel ve finansal açıdan mümkün gözükmektedir.**

Ne var ki zaman içerisinde Borajet'in **malvarlığının ve alacağının** 29.12.2016 tarihli Sözleşme'de beyan edildiğinden **çok daha az; borcunun ve zararının ise** Sözleşme'de beyan edilenden **çok daha fazla olduğu** ortaya çıkmıştır. Durumu hukuki sistematik içerisinde ifade etmek gerekirse;

- 29.12.2016 tarihli Sözleşme kapsamında Borajet'e ait olduğu ifade edilen tüm borçlarla karşılaştırıldığında Şirket'in toplamda (şu ana kadar tespit edilebildiği kadarıyla) **29.588.845 $'lık ilave borcunun** bulunduğu,

- 29.12.2016 tarihli Sözleşme kapsamında Borajet'e ait olduğu ifade edilen tüm alacaklarla karşılaştırıldığında Şirket'in toplamda (şu ana kadar tespit edilebildiği kadarıyla) **31.939.555 $'lık eksik alacağı** bulunduğu,

- 29.12.2016 tarihli Sözleşme kapsamında Borajet'e ait olduğu ifade edilen tüm malvarlıklarıyla karşılaştırıldığında Şirket'in toplamda (şu ana kadar tespit edilebildiği kadarıyla **3.824.008 $ daha az malvarlığının** bulunduğu,

- 29.12.2016 tarihli Sözleşme kapsamında Borajet'in öngörülmesi muhtemel zararlarıyla karşılaştırıldığında, Şirket'in toplamda (şu ana kadar tespit edilebildiği kadarıyla) **6.625.607 $ daha fazla zararının** bulunduğu tespit edilmiştir.

6

Bu kapsamda Müvekkil Şirket, 29.12.2016 tarihli sözleşmeyle (şu aşamada tespit edilebildiği kadarıyla) toplamda **71.978.015 $'lık** zarara uğramıştır. Ayrıca 29.12.2016 tarihli Sözleşme'deki gösterilen tablo ile gerçek durum arasında henüz bu davanın konusu edilmemiş olan ilave **33.442.231,06 $'lık** fark daha bulunmaktadır. İşbu bedele yönelik her türlü yasal hakkımız saklıdır.Borajet'in önceki sahibi konumundaki Davalı taraf, Sözleşme ekindeki Mizan'da yansımayan geniş anlamdaki her türlü zarardan ötürü, hem Sözleşme'deki açık taahhüdü hem de müvekkilin uğradığı kar kaybı ve fiili zarar miktarının tazminine yönelik yasal hükümler karşısında sorumludur.

Yukarıda da bahsedildiği üzere, Yalçın Ayaslı'nın söz konusu dolandırıcılığı hakkında İstanbul Cumhuriyet Başsavcılığında 2017/68314 No'lu soruşturma devam ediyor olup soruşturma kapsamında Borajet'te çalışmış/çalışan birçok kişi **tanık olarak ifade vermekte** ve birtakım gerçekler açığa çıkmaktadır. Örnek vermek gerekirse; 10.05.2017 tarihli beyanında **Borajet Mali İşler Müdürü Tolga Üzümcü**

- 2014'ten beri Borajet'te çalıştığını
- Şirket'in teknik iflasta olmasına rağmen iflastan kurtulmak için kağıt üzerinde birtakım **hesapların aktifte gösterildiğini**,
- Özellikle **180, 280, 226 ve 264 No'lu** hesaplarda 3. Kişileri yanıltacak oynamalar yapıldığını,
- **Pasifte gösterilmesi gereken** teknik bakım gideri ve bakım rezervi depozitolarının **aktifte gösterildiğini**
- **Şirket satılmadan önce (Şirket'in borçlarını** gösteren) birçok faturanın bilanço ve mizana kasten alınmadığını
- Şirket'in öz kaynağını güçlü göstermek için Yalçın Ayaslı'nın Borajet Bakım Şirketi'ni (Şirket zararda olmasına rağmen) kağıt üzerinde **29.5 Milyon $'a** alıp Borajet Havacılık'a sattığını, esasında nakit para akışının hiç olmadığını

ifade etmiştir.

**(Ek-1: Tolga Üzümcü'nün 10.05.2017 tarihli ifadesi)**

Veya başka bir örnek vermek gerekirse; Borajet'te teknik müdürleri olan Olcay Özbay ve Ceylan Topal,

- Uçaklarda **birçok eksik parça** olduğunu

7

Gökçe | Yaralı Avukatlık Ortaklığı

- Yalnızca **4** uçağın uçabildiğini,
- **6** Uçağın ise uçamadığını
- 3 tane uçağın **yedek parça donörü** olarak kullanıldığı ve bunlardan sökülen parçaların diğer uçaklara takıldığını
- Tamire ve bakıma gönderilen **uçakların** para olmadığı için **geri alınamadığını** ifade etmişlerdir.

**(Ek-2: Olcay Özbay'ın 11.05.2017 tarihli ifadesi)**
**(Ek-3: Ceylan Topal'ın 11.05.2017 tarihli ifadesi**

Aynı şekilde Borajet'in eski Genel Müdürü ve Yönetim Kurulu Başkanı Fatih Akol ise verdiği ifadede;

- Hisse Devir Sözleşmesi kapsamında müzakerelere katıldığını,
- Yalçın Ayaslı'nın Sözleşme'deki Mizan'a göre fazla çıkan borçlardan ve eksik çıkan alacaklardan sorumlu olmayı üstlendiğini,
- Yalçın Ayaslı'nın operasyonel ve yönetimsel olarak **Borajet'in en küçük ayrıntısına bile hakim olduğu**
- Yalçın Ayaslı'nın Borajet'in mali durumundan haberdar olduğunu

İfade etmiştir.

**(Ek-4: Fatih Akol'un 11.05.2017 tarihli ifadesi)**

Yalçın Ayaslı'nın kusur durumunun değerlendirilmesinde bu ifadelerin de değerlendirilmesi gerektiği açık olup, ayrıca ismi geçen şahısların mahkemede tanık olarak dinlettirilmeleri de elzemdir.

**A. 29.12.2016 TARİHLİ SÖZLEŞME KAPSAMINDA BORAJET'E AİT OLDUĞU İFADE EDİLEN TÜM BORÇLARLA KARŞILAŞTIRILDIĞINDA ŞİRKET'İN FAZLADAN 29.588.845 $ BORCU ORTAYA ÇIKMIŞTIR.**

Sözleşme'nin **3.1**'nci maddesi uyarınca Yalçın Ayaslı, Borajet'in Mizan'da ve defterlerde gösterilenden başka borcu bulunmadığını kabul ve beyan etmekte olup

8

Gökçe | Yaralı Avukatlık Ortaklığı

Sözleşme'nin **3.2**'nci maddesi uyarınca, ilave bir borç çıkması halinde ilgili ilave borcu hiçbir ihtara gerek kalmaksızın **derhal** ödemeyi kabul etmektedir.

Sözleşme ve eklerinde hiçbir şekilde gösterilmemesine rağmen fazladan çıkan **29.588.845** $'lık borç **4 sınıfta** kategorize edilebilir:

## AA) Sözleşme'ye ekli Mizan'ın 320 No'lu Hesabında hiç gösterilmemesine rağmen mevcudiyeti sonradan açığa çıkan 4.909.318 $'lık borç

Muhasebesel anlamda **320 No'lu Satıcılar Hesabı**, bir şirketin yaptığı mal ve hizmet alımlarından doğan borçların kaydedildiği hesaptır. Normal şartlarda satın almadan kaynaklanan bir borcun bu hesaba işlenmesi gerekmektedir. Ne var ki Hisse Devir Sözleşmesi'nin imzalandığı 29 Aralık 2016 tarihinden önceki döneme ait olmasına rağmen ne Sözleşme'de, ne Sözleşme'ye ekli mizanda ne de ticari defterlerde **ne 320 No'lu hesaba ne de diğer hesaplara kasten kaydedilmeyen birçok borç** ortaya çıkmıştır. Mevcudiyeti Müvekkil Şirket'çe Borajet devralındıktan sonra anlaşılan toplamda **6.345.153 $'lık** borcun faturaları ve sözleşmeleri Mahkeme'ye sunulmuştur.

## BB) Sözleşme'ye ekli Mizan'ın 381 No'lu hesabında bilinçli olarak gösterilmemesine rağmen mevcudiyeti sonradan açığa çıkan Gider Tahakkukları

Muhasebesel anlamda **381 No'lu Gider Tahakkukları Hesabı**, içinde çalışılan dönemde ortaya çıkmış olmakla birlikte ödenmesi gelecek aylarda yapılacak giderlerin izlendiği hesabı ifade eder. Normal şartlarda sözleşme kurulduğu dönemde muaccel olmayan borçların bu hesaba eksiksiz şekilde kaydedilmesi gerekmektedir.

Ne var ki Borajet'in, Sözleşme'nin imzalandığı 29 Aralık 2016 tarihinden önceki dönemde **doğmuş olmasına rağmen defterlere işlenmeyen ve Sözleşmede de gösterilmeyen** toplam **5.742.791** $'lık ilave borcu bulunmaktadır. İlgili borçların faturaları ve sözleşmeleri Mahkeme'ye sunulmuştur.

9

**CC) Ne Sözleşme'de ne de ekli Mizan'da gösterilmediği halde uçaklardaki 13.673.910 \$'lık bakım maliyeti ve eksik parça**

Devralınan Borajet'in tüm uçakları esasında kiralık olduğu için uçakların rutin bakımlarının ve bütünlüğünün sorumluluğu bir **borç** olarak kiracı olan Borajet'tedir. Eğer ilgili kiralanan uçaklarda bakım periyotlarına uyulmazsa ve uçakta parçalar eksik çıkarsa kiracı şirket, kiralayan şirkete bakımları yapıp eksiklikleri giderme konusunda **borcunu yerine getirmemiş** olur.

Davaya konu olayımızda; ne Sözleşme'de ne de Mizan'da hiçbir şekilde belirtilmemesine rağmen Borajet adına lisanslı uçaklarda **850 adet eksik parça** olduğu ve eksikliklerin giderilmesi için **13.673.910 \$** tutarında tamir ve parça masrafı yapılması gerektiği tespit edilmiştir. Bu durumda esasında Borajet'in kiralayan şirketlere **13.673.910 \$** değerinde ilave borcu bulunduğu halde, bu ilave borcun Müvekkil Şirket'e bildirilmediği hususunda şüphe bulunmamaktadır. Burada, Borajet bünyesindeki uçakların ağır kusurlu olarak ayıplı şekilde devredildiği ve **borçların gizlenerek Şirket'in değerinin yüksek gösterilmeye çalışıldığı** hususunda şüphe bulunmamaktadır.

Ne Sözleşme'de ne de Mizan'da gösterilmeyen bu borca ilişkin Olcay Özbay, Tolga Üzümcü ve Uğur Özkan tarafından hazırlanan **31.12.2016 Tarihli Rapor** Mahkeme'ye sunulmuştur.

**DD) Mizandaki döviz borçlarına ilişkin eski tarihli düşük kur uygulanmasından kaynaklanan 13.467.947,2 TL (3.826.991 \$) değerindeki fark**

Vergi Usul Kanunu uyarınca şirketin borçları ve alacakları döviz cinsinden olsa da, **Mizan'ın düzenlendiği tarihteki güncel kur** üzerinden TL'ye çevrilerek Mizan'a kaydedilir ve bu sayede teklik sağlanmış olur. Ne var ki Davalı Yalçın Ayaslı, 29.12.2016 tarihinde düzenlenen Mizan'da özellikle 320 ve 340 No'lu hesaplardaki **borçları Dolar'ın daha düşük olduğu 30.09.2016** tarihindeki **kur üzerinden** hesaplayarak **Borajet Havacılık'ın borçlarının 13.467.947,2 TL daha düşük olarak gözükmesini sağlamıştır.** Dolayısıyla bu farkın da "**Mizan'da gösterilmeyen ilave borç**" olarak nitelendirilmesi gerekmektedir.

10

## B. 29.12.2016 TARİHLİ SÖZLEŞME KAPSAMINDA BORAJET'E AİT OLDUĞU İFADE EDİLEN TÜM ALACAKLARLA KARŞILAŞTIRILDIĞINDA ŞİRKET'İN TOPLAMDA 31.939.555 $'LIK EKSİK ALACAĞI OLDUĞU ORTAYA ÇIKMIŞTIR.

Sözleşme ve Mizan'da farklı gösterilmesinden ötürü Yalçın Ayaslı, Borajet'in gerçek durumdan farklı olacak şekilde **ilave 31.939.555 $ alacağı** olduğunu iddia ederek **Borajet'in değerini yüksek göstermek** suretiyle Müvekkil Şirket'i aldatmıştır. Ne var ki Borajet devralındıktan sonra yapılan inceleme ve araştırmalar neticesinde Borajet'in, Sözleşme ve Mizan'da gösterilenden çok daha az olacak şekilde toplamda **31.939.555 $ alacağının aslında mevcut olmadığı** tespit edilmiştir.

Sözleşme ve eklerinde varmış gibi gösterilmesine rağmen eksik çıkan **31.939.555 $'lık alacak 5** sınıfta kategorize edilebilir:

### AA) Esasında geri alınması mümkün olmayan bir gider olmasına rağmen sanki uzun dönemde Borajet'in alacağıymış gibi gösterilen 26.821.852 $ değerindeki bakım rezervi depozitosu

Borajet Paylarını devreden Davalı Yalçın AYASLI, esasında geri alınması hukuken mümkün olmayan giderleri alacakmış gibi göstererek kâğıt üzerinde şirketlerin değerini yüksek göstermiş ve Müvekkil Şirket'i aldatmıştır.

Normal şartlarda kiralanan uçakların uçuş saati karşılığında kiraya veren şirkete **geri alınamaz şekilde Bakım Rezervi Depozitosu** vermesi gerekmektedir. Her ne kadar **ismi depozito olsa da** Bakım Rezervi Depozitosu, uçakların bakımı için kullanılmakta ve **hiçbir şekilde kiracı şirkete geri verilmemektedir**. Hal böyle olmasına rağmen kiraya veren şirketlere ödenen **26.821.852 $'lık** Bakım Rezervi Depozitoları 29.12.2016 tarihli Mizan'da **sanki geri alınacakmışçasına 226 No'lu Depozitolar Hesabında** gösterilmiştir. Havacılık sektöründeki herkesin de bileceği gibi **geri alınması mümkün olmadığı** için **bu giderler hiçbir şekilde depozitolar hesabına kaydedilmemektedir**. Buna rağmen Şirket'in **değerini yüksek göstermek adına** ilgili meblağ, **Şirket'in gelecekte**

Gökçe | Yaralı Avukatlık Ortaklığı

**kasasına geri gelecek bir depozito** olarak gösterilmiş ve **Şirket'in değeri kasten yüksek gösterilerek Müvekkil Şirket aldatılmıştır.**

**BB)** **Esasında geçmiş dönemlere ait bir gider olmasına rağmen gelecek döneme yönelik yapılmış bir yatırım gibi gösterilen 4.315.638 $ pasif yerine aktife kaydedilmiştir.**

180 ve 280 No'lu hesaplar, muhasebesel anlamda gelecek aylar ve yıllardaki giderler için **şimdiden ödenen meblağın** kaydedildiği hesapları ifade eder. **Örnek** vermek gerekirse, eğer gelecek 5 ayın kirası peşin olarak ödenirse ilgili bedel "Giderler Hesabı"na değil 180 No'lu hesaba kaydedilir. Zira ilgili kiraların karşılığında beklenen hizmet ve yarar henüz elde edilmemiş olup ilgili tutar, **geleceğe yönelik kazanılmış hakları (alacakları)** ifade eder. Dolayısıyla bu hesaptaki artış, **Şirket'in gelecek dönemlerde hizmet alma hakkına** sahip olduğunu gösteriyor olup yalnızca gelecek dönemlere yönelik hak kazandıran giderler bu hesaba kaydedilir.

Davaya konu olayda ise Yalçın Ayaslı, uçakların **geçmiş dönemlerdeki yıpranmalar sonucu yapılması gereken harcamaları, sanki Borajet'e gelecek dönemlerde bir hak kazandıracakmışçasına** 180 ve 280 No'lu hesaplara kaydederek Borajet'in aktifleri hususunda Müvekkil Şirket'i aldatmıştır. Doğal olarak "Gider Hesapları" adı altında, **pasif karakterde** kaydedilmesi gereken bu **4.315.638 $'lık** giderin **aktif karakterdeki** hesaplara kaydedilmesi sonucu Şirket'in değeri olduğundan **4.315.638 $** yüksek gösterilmiştir.

Hele ki bu gerçek, yukarıda sözü edilen **13.673.910 $'lık bakım maliyeti ve eksik parça** ile birleştirildiğinde

- İlgili giderlerin gerçek anlamda geleceğe yönelik bir hak ve alacak kazandırmadığını, zira kazandırmış olsaydı zaten bu denli yüksek meblağda bakım maliyeti ve eksik parçanın çıkmayacağını,
- Yalçın Ayaslı'nın **kasten** yanlış beyanda bulunarak ağır kusurlu olduğunu

açıkça gözler önüne sermektedir.

12

**CC) Esasında ibralaşılmasına rağmen hala personelden alacakmış gibi gösterilen 200.120 $'lık eksik alacak**

Başka bir örnek vermek gerekirse; işten çıkarılan personelle **ibralaşıldığı** (dolayısıyla personelden ilgili avansları talep etme hakkı ortadan kalktığı) için Personel'e ödenen **200.120 $'lık** İş avansları ve Personel Avansları, Mizan'da artık **"alacak" olarak gösterilmemesi** gerekirken 29.12.2016 Tarihli mizanda 195 ve 196 No'lu hesaplarda **alacak** olarak gösterilmiş ve Şirket'in değeri hakkında **Müvekkil Şirket kasten ve bilinçli bir şekilde yanlış bilgilendirilmiştir.**

**DD) Esasında tahsil kabiliyeti kalmadığı için "Şüpheli Alacaklar" olarak muhasebeleştirilmesi gerekirken "Diğer Ticari Alacak" olarak muhasebeleştirilen 457.347 $**

Şüpheli alacaklar hesabı, esasında tahsil imkânı azalan veya borçlusu belirsiz olan alacakların varlığında kullanılması gereken hesaplardır. Ne var ki Yalçın Ayaslı, borçlusu tespit edilemeyen alacakları veya (Sözleşme'ye ekli Mizan'ın 127 nolu "diğer ticari alacak" hesabında aktifleştirilen **Öger Tur** gibi) iflas eden şirketlerden olan alacağı, **sanki tahsil kabiliyeti oldukça yüksek olan normal bir alacakmışçasına** defterlere ve Mizan'a "**127 No'lu Diğer Ticari Alacaklar**" hesabına kaydederek Şirket'in değerini kâğıt üstünde gerçekte olduğundan yüksek göstermiştir.

**EE) Esasında takas edilmesine rağmen Mizan'da ve Sözleşme'de hala mevcut bir alacakmış gibi gösterilen 144.598 $**

Normal şartlarda takas edilen bir alacağın defterlerden silinmesi gerekmesine rağmen Davalı Yalçın Ayaslı, takas edilmiş **144.598 $'lık** alacağı 120 No'lu alacaklar hesabından silmeyerek Şirket'in değerini kâğıt üzerinde olduğundan yüksek göstermiştir.

**C. 29.12.2016 TARİHLİ SÖZLEŞME KAPSAMINDA BORAJET'E AİT OLDUĞU İFADE EDİLEN TÜM MALVARLIKLARIYLA KARŞILAŞTIRILDIĞINDA, ŞİRKET'İN GERÇEK MALVARLIĞININ SÖZLEŞME KAPSAMINDA BEYAN EDİLENDEN TOPLAMDA 3.824.008 $ EKSİK OLDUĞU ORTAYA ÇIKMIŞTIR.**

13

Yalçın Ayaslı, Sözleşme ve Mizan'da, Borajet'in gerçek durumdan farklı olarak **ilave 3.824.008 \$ malvarlığı** varmış gibi göstererek **Borajet'in değerini daha yüksek göstermek** suretiyle Müvekkil Şirket'i aldatmıştır. Ne var ki Borajet devralındıktan sonra yapılan inceleme ve araştırmalar neticesinde Borajet'in, Sözleşme ve Mizan'da gösterilenden çok daha az olacak şekilde, **3.824.008 \$'lık malvarlığının aslında mevcut olmadığı** tespit edilmiştir.

Normal şartlarda **264 No'lu Özel Maliyetler Hesabı,** muhasebesel anlamda kiralanan **gayrimenkullerin geliştirilmesi** veya **ekonomik değerinin sürekli olarak artırılması amacıyla** yapılan giderler ile bu gayrimenkulün kullanılması için yapılıp **kira süresinin sonunda mal sahibine bırakılacak olan, varlıkların** tutarları kapsar. Bir örnekle açıklamak gerekirse, bir kiracı, kiraladığı gayrimenkule bir şekilde ilave bir kat çıkarsa, bu durumda gayrimenkulün değeri artacağı ve sonrasında bunun bedelini (hatta artan değerini) kiralayandan alacağı için bir **malvarlığı** hesabı olan **264 No'lu Özel Maliyet Hesabı'na** hesaplara kaydedilir.

**267 No'lu "Diğer Maddi Olmayan Duran Varlıklar Hesabı"** ise benzer şekilde şirketin (duran) malvarlıklarının kaydedildiği bir hesaptır.

Dava konusu olayda ise Yalçın Ayaslı,

- Bir gayrimenkul olmamasına rağmen,
- Kiralanan uçaklara yapılan **3.824.008 \$'lık** bakım masraflarını,
- Uçaklara ilave hiçbir değer katmadığı halde,
- Yapılan masraflardan ötürü 3. kişilere karşı herhangi bir hak ileri sürülemeyecek olmasına rağmen

264 ve 267 No'lu hesaplara kaydetmiştir. Dolayısıyla, Borajet'in mevcut malvarlığı gerçekten **3.824.008 \$** daha fazla olacak şekilde gösterilmiştir. Yapılan tamir ve bakım harcamaları Borajet'e bir şekilde değer katmış olsaydı (uçaklara ilave motor eklenmesi gibi) bir şekilde yine mazur görülebilecek bir hata gündeme gelecekken, ilgili bakım ve tamir harcamalarının **ilave hiçbir değer katmamasına rağmen sanki Borajet'in malvarlığında bir artış meydana getirmiş gibi gösterilmesi** açıkça bir **aldatma** faaliyetidir.

Tüm bu kalemler, sonuç itibarıyla Müvekkil'in Borajet operasyonu ile elde edebileceği, Davalı'nın tekeffülü altındaki karın yok edilmesi, bu miktarda Müvekkil'in zarara uğraması anlamına gelmektedir.

**D. 29.12.2016 TARİHLİ SÖZLEŞME KAPSAMINDA BORAJET'İN ÖNGÖRÜLMESİ MUHTEMEL ZARARLARIYLA KARŞILAŞTIRILDIĞINDA, ŞİRKET'İN TOPLAMDA (ŞU ANA KADAR TESPİT EDİLEBİLDİĞİ KADARIYLA) 6.625.607 $ DAHA FAZLA ZARARININ BULUNDUĞU TESPİT EDİLMİŞTİR.**

Yukarıda da ifade edildiği üzere ne Sözleşme'de ne de Mizan'da hiçbir şekilde belirtilmemesine rağmen Borajet adına lisanslı uçaklarda **850 adet eksik parça** olduğu ve eksikliklerin giderilmesi için **13.673.910 $** tamir ve parça masrafı yapılması gerektiği tespit edilmiştir. Ne var ki yalnızca **13.673.910 $'ın** harcanması tek başına Şirket'in sorununu çözmeyecektir. Zira Müvekkil Şirket, hisse devrinin gerçekleştiği gün bile ilgili tespitleri yapıp ilgili finansmanı hazırlayıp uçakların bakım ve onarım faaliyetlerine başlamış olsaydı bile uçaklar **en az 4 ay sonra uçuşa hazır hale geleceklerdi.** Uçakların 4 ay boyunca uçamayacak olması, birtakım zararlara yol açmaktadır:

- Uçamayan uçaklar için ödenen kiralar
- Uçaklar uçmasa bile maaş ödenen personel
- Uçamayan uçaklar için genel yönetim giderleri

31.12.2016 tarihinde Tolga Üzümcü, Uğur Özkan ve Abdulbaki Keskin tarafından hazırlanan rapora göre ilgili zararın toplamı **6.625.607 $** olmaktadır. (Bu rapor Mahkeme'ye sunulmuştur.) Önemine binaen vurgulamak isteriz ki bu tutar yalnızca **4 aylık kaçınılmaz masrafı kapsıyor** olup bu bedele;

- Uçması teknik ve hukuki olarak mümkün olmayan uçaklara rağmen **2017 yılı için satılan bilet bedellerinin iadesinin,**
- Dileyen müşterilere, müşteri memnuniyeti kapsamında çok daha yüksek maliyetlerle **THY'den** (müşteriye ilave ücret yansıtmayacak şekilde ) **satın alınan biletlerin ilave masrafının,**
- Borajet'in **uçuş operasyonlarını durdurmasından** kaynaklanan zararın,
- Borajet'in **kiralık uçaklarını** Leasing firmalarına **iade** etmesinden ötürü **ödediği cezaların** ve **yaptığı masrafların,**
- Müvekkil Şirket'in ve Borajet'in uçuşlarının iptali nedeniyle sektör ve müşteriler nezdindeki ciddi **ticari itibar kaybının,**

15

- **"Borajet uçakları arızalı" algısından** doğan sektör ve müşteriler nezdindeki ciddi ticari itibar kaybının,

- İlgili dönemlerde elde edilmesi muhtemel **satış gelirlerinden yoksunluğun** getirdiği kar kaybının

neden olduğu zararlar dahil değildir. Bunlara yönelik her türlü talep ve dava hakkımız saklıdır.

**3.** Yukarıda da açıkça gösterildiği üzere Müvekkil Şirket'in Yalçın Ayaslı'dan olan alacağı hukuken 2 boyutta değerlendirilebilir:

- Taraflar arasında 29.12.2016 tarihinde imzalanan **Sözleşme'deki 3.1. maddedeki açık taahhüde aykırılık**tan kaynaklanan alacak,

- Sözleşme'nin gereği gibi ifa edilmemesinden kaynaklanan yapılan masrafları karşılayan **fiili zarar** + şirketin ulaşması gereken malvarlığı durumuna erişmesinin imkânsızlığından kaynaklanan **kar kaybı**.

Yalçın Ayaslı, hisseleri devredilen Borajet'in (Sözleşme ve Mizan'da gösterilenden başka) herhangi bir borcunun olmadığını, eğer ilave borçlar çıkarsa bu borçları ihbara bile gerek kalmadan ödeyeceğini Sözleşme'nin 3.1 ve 3.2'nci maddeleri uyarınca taahhüt etmiştir. Dolayısıyla yukarıda da ifade edilen **29.588.845 \$'lık ilave borcun Müvekkil Şirket'e ödenmesi**, Yalçın Ayaslı'nın Sözleşme kapsamındaki açık taahhüdüdür. Nitekim Sözleşme'de gösterilmeyen **ilave borçların ödeneceği** cevap dilekçesinde **Yalçın Ayaslı tarafından da ikrar** edilmiştir. Buna rağmen Yalçın Ayaslı, Sözleşme'ye açıkça aykırı davranarak ilgili borçları Müvekkil Şirket'e ödememektedir.

Mevcudiyeti Borajet devralındıktan sonra ortaya çıkan **31.939.555 \$'lık eksik alacak, 3.824.008 \$'lık daha az malvarlığı ve 6.625.607 \$'lık daha fazla zararın** mevcudiyeti hususunda da şüphe bulunmamaktadır.

Önemine binaen tekrar etmek isteriz ki şu aşamada bu rakamlara;

- **Borajet'in** iştiraki olan **Borajet Bakım Onarım ve Ticaret Anonim Şirketi'nin** esasında öz sermayesinin eksiye düşmesine rağmen Sözleşme'ye ekli Mizan'da **29.500.000 \$'lık** değere sahipmiş gibi satılmasından kaynaklanan şişirilmiş değeri,

- Embraer Şirketi'nin vade farkından ötürü talep ettiği **1.300.000 \$'lık faiz**,

16

Gökçe | Yaralı Avukatlık Ortaklığı

- Faturaların geç ödenmesinden ötürü Embraer'in **830.000 $'lık indirimi iptal etmesi,**
- Uçakların teknik ve hukuki açıdan uçamamasına rağmen **satışı yapılıp müşterilere iade edilmek zorunda kalınan 1.465.666,24 $'**,
- Karşılığı olmayan satışlardan ötürü (müşteri memnuniyeti/şirketin itibarının korunması ve daha da önemlisi müvekkilin müşterilere yapmış olduğu satışları ifa edememesi ve bu kapsamda gerek müşterilerin tazminat talepleri ile idari yaptırımların önlenmesi kapsamında kapsamında) **THY'den yüksek fiyatlara alınmak zorunda kalınan biletlerin masrafı;**
- Mizan'ın 120 No'lu hesabında gösterilmesine rağmen **tahsil kabiliyeti bulunmayan 346.564,82 $'lık ilave alacak,**
- SBK Holding, Bugaraj ve Borajet'in uğradığı **ticari itibar kaybı**

dahil değildir. Müvekkil Şirket Bugaraj, davanın ilerleyen aşamalarında veya ayrı bir davayla bu kalemlerdeki farklılıklardan doğan her türlü zararı tazmine ve alacağı isteme hakkına sahiptir.

Dolayısıyla Borajet'in mali durumu, **100.000.000 $'ı aşacak şekilde** saptırılmış ve kasten Müvekkil Şirket Bugaraj'da, Borajet'te **yatırım yapılabilir** algısı oluşturulmuştur. Bu kapsamda Müvekkil Şirket Bugaraj;

- Borajet'i devralmayı kabul etmiş,
- Borajet'in gelecek dönemdeki satışından elde edilecek olan net bedelin **%25'ini** Yalçın Ayaslı'ya vermeyi kabul etmiş (Sözleşme Madde 2.2),
- Borajet'in mali durumunu düzeltip **kar elde eden bir şirkete** dönüştürmek amacıyla Borajet'e yüklü miktarda **kaynak aktararak** yatırım yapmıştır.

Ne var ki Borajet devralındıktan sonra ortaya çıkan gerçekler Mizan'da ve Sözleşme'de **100.000.000 $'ı aşkın bir sapma** olduğunu göstermiş ve **Mizan'dan yola çıkılarak ortaya koyulan strateji ile Borajet'in kar elde edebilir bir şirkete dönüşemeyeceği** ortaya çıkmıştır.

Bu durumda Müvekkil Şirket Bugaraj, işbu davaya konu büyük miktarda maddi zarara uğramıştır.

**Bu kapsamda Müvekkil Şirket'in yaşadığı KAR MAHRUMİYETİ şu aşamada "BELİRSİZ ALACAK" sınıfına girmekte olup ilgili alacağın tutarı**

Abide-i Hürriyet Caddesi, No:158 Kat:2 Şişli / İstanbul  T: +90 212 352 88 33 F: +90 212 352 88 60
www.gokce.av.tr

Gökçe | Yaralı Avukatlık Ortaklığı

mahkemece tespit edildikten sonra Davalı **Yalçın Ayaslı'dan** tazmin ettirilmesi gerekmektedir.

**HUKUKİ SEBEPLER :**   İcra İflas Kanunu, Hukuk Muhakemeleri Kanunu, Türk Borçlar Kanunu, Yargıtay İçtihatları ve sair mevzuat.

**DELİLLERİMİZ**   :   Keşif ve bilirkişi incelemesi, tanık beyanları, yemin de dâhil olmak üzere her türlü delil ile yargılamanın ilerleyen aşamalarında delil sunma ve beyanda bulunma ile sunulacak diğer delillere karşı delil sunma ve beyanda bulunma haklarımız saklı kalmak üzere, delil listemiz cevaba cevap dilekçemize ekli olarak sunulmaktadır.

**NETİCE VE TALEP :**

Her türlü beyan ve delil ikamesi haklarımız saklı kalmak kaydıyla, yukarıda arz ve izah edilen sebeplere binaen;

1. **253.305.035,00 TL** (71.978.016 $)'nin şirket devir tarihi olan 29.12.2016 tarihinden itibaren **ticari alacaklara uygulanan en yüksek faizle** birlikte davalıdan tahsil edilerek davacı Müvekkil Şirket'e ödenmesine,

2. Müvekkil Şirket'in yaşadığı **kar kaybının** tespit edilip **ticari alacaklara uygulanan en yüksek faizle** birlikte Davalı Yalçın Ayaslı'dan tazmin edilerek Müvekkil Şirket'e ödenmesine,

3. Yargılama giderlerinin ve vekâlet ücretinin faiziyle birlikte DAVALI'YA YÜKLETİLMESİNE,

karar verilmesi fazlaya ilişkin taleplerimizle ilgili tüm haklarımız saklı kalmak kaydıyla saygılarımızla bilvekale arz ve talep ederiz.

**Davacı Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş.**
**Vekili**
**Av. Sinan Görkem Gökçe**

18

**T.C.**
**İSTANBUL**
**CUMHURİYET BAŞSAVCILIĞI**

**Soruşturma No : 2017/68314 Soruşturma**

### İFADE TUTANAĞI

Tanık TOLGA ÜZÜMCÜ, İSMAİL Oğlu NİLGÜN'den olma, 31/07/1982 doğumlu, ÇANAKKALE ili, LAPSEKİ ilçesi, UMURBEY BELDESİ köy/mahallesi, 41 cilt, 194 aile sıra no, 13 sıra no'da nüfusa kayıtlı, Bekar, Yüksek Okul veya Fakülte Mezunu mezunu Hacıhesna Hatun Mah. Paşa Limanı Cad. Altın Işık Apt. No:18 K:4 D:10 Üsküdar/ İSTANBUL ikamet eder olduğunu söyledi.                                                           CEP:0 533 298 46 84

TANIKLIĞA ENGEL HALİ YOK, YALAN TANIKLIĞIN SONUÇLARI ANLATILDI.USULEN YEMİNİ YAPTIRILDI

**SORULDU:**

Ben Yalçın AYASLI'yı tanırım. Kendisi Bora Jet'in sahibiydi. Bende bu şirkette mali işler başkanıydım. 2014 Eylülde işe başladım. 2016 döneminde şirketin teknik iflasta olduğunu yönetime rapor ettik. Ben bunu sadece hesap üzerinden söylüyorum. Ayrıca 2015 yılı itibariyle şirket yükünden fazla borçlanmış olup geliri azalınca da bilançolarında teknik iflas söz konusu olacağı için yönetim kurulu talimatıyla Mali işlerden sorumlu Zahide ÜNER ve Genel Müdür Fatih AKOL ile istişare ederek 180-280-226-264 hesaplara uçak teknik ve bakım giderleri bilançonun aktifine koyularak öz kaynağı güçlendirici, makyajlama işlemleri yapılmıştır. Ayrıca 31/12/2016 yılında teknik iflasdan kurtarmak ve Sivil havacılık Genel Müdürlüğü talimatlarına uygun olarak faaliyetimize devam edebilmek için şirket yönetimi bu kararı almıştır. Grup CFO'su Zahide ÜNER bu kararı sözlü olarak bana iletmiştir. Bu konuşmaların yazıya dökülmesi sakıncalı olduğu için hep sözlü olarak talimat vermiştir. Bu çalıştığımız süre içerisinde şirketin borçlarını ödeyecek durumu olmadığından şirkete gelen bazı faturalar iade edilerek bilanço ve mizana alınmadı. Daha sonra şirket satıldıktan sonra bu faturalar şirket kayıtlarına alındı. Ve şirketin imzalamış olduğu bazı sözleşmelerden doğan bir takım yükümlülükler şirket satış sözleşmesinde ek olan mizanda gösterilmedi.

28 aralık 2016 tarihli mizanda eksik olan kalemler olduğu belirttiğimde Zahide hanım bana satış sonrasında eksik kalemlerin alıcılara ödeneceğini ve mutabakat sağlanacağını söylemişti.

Bora Jet Havacılık şirketinin yine öz kaynaklarını güçlü göstermek için aktifte bulunan Bora jet bakım şirketini Ağustos 2015'de Bora Jet Havacılık şirketinden Yalçın bey'e 29.500.000 USD bedelli satıp tekrar Ocak 2016'da aynı bedelle geri alarak öz kaynağını güçlü göstermek için işlem yapılması kararı alınmıştır. Hiç bir nakit işlem gerçekleşmemiştir.

Ayrıca diyeceğim başka konu da; satış sözleşmesi sırasında Yalçın AYASLI'nın adına avukat Murat İSEN Zahide ÜNER, Fatih AKOL, Ayaslı'nın şirketten alacaklı olduğu rakamlar için şirkete ve alıcılara ibra vereceğini kayıt ve beyan etmişlerdi. Bildiğim şey daha sonra bu taahhüt gerçekleşmedi. Yapılan tüm işlemlerde Zahide hanım ve Fatih bey, Yalçın beye raporlama yapıyordu. Bu şirket S.B.K HOLDİNG'e satılmasaydı faaliyetlerine devam etme şansı bulunmamaktaydı. Ben şu an bu şirkette çalışmıyorum. Ekleyeceğim başkaca bir husus yoktur. 10/05/2017

KUBİLAY ERYİĞİT 36046
Cumhuriyet Savcısı

KÜRŞAT BULUT 187068
Zabıt Katibi

TOLGA ÜZÜMCÜ
Tanık



**T.C.**
**İSTANBUL**
**CUMHURİYET BAŞSAVCILIĞI**

**Soruşturma No :** 2017/68314 Soruşturma

### İFADE TUTANAĞI

Tanık OLCAY ÖZBAY, NECATİ Oğlu GÜNAY'den olma, 13/03/1979 doğumlu, ARTVİN ili, ARHAVİ ilçesi, DERECİK köy/mahallesi, 12 cilt, 47 aile sıra no, 78 sıra no'da nüfusa kayıtlı, Evli, Yüksek Okul veya Fakülte Mezunu mezunu Adnan Kahveci Mah. Karan Sk. No:5 İç Kapı No:37 Beylikdüzü/ İSTANBUL ikamet eder olduğunu söyledi.

CEP: 538 540 97 81

TANIKLIĞA ENGEL HALİ YOK, YALAN TANIKLIĞIN SONUÇLARI ANLATILDI. USULEN YEMİNİ YAPTIRILDI.
**SORULDU:**

Ben YALÇIN AYASLI'yı tanırım. Kendisi Bora Jet'in sahibiydi. Ben şirkette teknik başkan olarak görev yapmaktayım. Şirketin mali ödeme güçlüğü içerisinde olduğunu biliyordum. Bize hizmet veren bazı tedarikçilere olan borçlar ödenemiyordu. Bu yüzden bazı yedek parçalar getirtilemiyordu, yedek parça yerine yerdeki uçaklardan sökmek yoluyla diğer uçaklara takılıyordu. Yedek parçalar yurt dışındaki tedarikçilerden paraları ödenmediği için bakımı yaptırılamamıştır parası ödenmediği için geri alınamamıştır. Bunun sonucunda 29/12/2016 tarihli şirket satış zamanında 6 uçak uçamayacak durumda yerdeydi. 4 uçak da uçabiliyordu. Bu uçaklardan sökülen eksik Parçaların bakım ve yenileme maliyeti şirketin finans departmanına bildiriliyordu. Mizan ve bilançoda neden yer almadığını benim bilgim dahili dışındadır. 31 Aralık 2016 itibariyle uçakların teknik durumunu gösteren bir rapor hazırlayıp yöneticilere sunmuştum. Ekleyecek başkaca bir husus yoktur. Dedi. **11/05/2017**

KUBİLAY ERYİĞİT 36046     KÜRŞAT BULUT 187068     OLCAY ÖZBAY
Cumhuriyet Savcısı             Zabıt Katibi               Tanık



**T.C.**
**İSTANBUL**
**CUMHURİYET BAŞSAVCILIĞI**

**Soruşturma No :** 2017/68314 Soruşturma

## İFADE TUTANAĞI

Tanık MEHMET CEYLAN TOPAL, HALİL Oğlu FERSUN SİBEL'den olma, 04/08/1979 doğumlu, MUĞLA ili, BODRUM ilçesi, BİTEZ köy/mahallesi, 9 cilt, 15 aile sıra no, 28 sıra no'da nüfusa kayıtlı, Evli, Yüksek Okul veya Fakülte Mezunu mezunu Altunizade Mah. Atıfbey Sk. No:9F İç Kapı No:8 Üsküdar/ İSTANBUL ikamet eder olduğunu söyledi. TANIKLIĞA ENGEL HALİ YOK, YALAN TANIKLIĞIN SONUÇLARI ANLATILDI USULEN YEMİNİ YAPTIRILDI.

**SORULDU:**

Ben şüpheli Yalçın AYASLI'yı tanırım. Kendisi şirketin eski sahibidir. Ben şirketin teknik genel müdürüyüm. 29/12/2016 tarihi itibariyle  3 tane uçak tamamen uçamaz durumdaydı. Diğer üç uçak da eksik parçası veya arızalanan parçalardan dolayı uçamaz durumdaydı.  Bunların bu durumda olmasının nedeni 3 uçağın yedek parça kaynağı  olarak kullanılması diğer 3 uçağında parça eksikliğinden dolayı uçamıyor olmasıdır. Bunun ana nedeni de şirketin yaşamış olduğu ekonomik sıkıntıdır. Tamire ve bakıma gönderdiğimiz yedek parçaların paraları ödenmemesi nedeniyle geri gelmemesinden dolayıydı. Şirketin ödeme güçlüğü çektiğini de biliyordum. Bu parça fiyatlamaları finans departmanına veriliyordu. Finansa söyledik fakat finans da bize para olmadığı için alamadıklarını söylüyordu. Ekleyecek başkaca bir husus yoktur. Dedi. 11/05/2017

KUBİLAY ERYİĞİT 36046       KÜRŞAT BULUT 187068       MEHMET CEYLAN
Cumhuriyet Savcısı                  Zabıt Katibi                           TOPAL
                                                                                            Tanık



T.C.
İSTANBUL
CUMHURİYET BAŞSAVCILIĞI

**Soruşturma No :** 2017/68314 Soruşturma

### İFADE TUTANAĞI

Tanık FATİH AKOL, YAŞAR Oğlu FATMA'den olma, 10/01/1964 doğumlu, ADANA ili, SEYHAN ilçesi, KAYALIBAĞ köy/mahallesi, 25 cilt, 547 aile sıra no, 16 sıra no'da nüfusa kayıtlı, Evli, Yüksek Okul veya Fakülte Mezunu mezunu Pınar Mah. Kılıç Sk. No:2E İç Kapı No:2  Sarıyer/ İSTANBUL ikamet eder olduğunu söyledi.

CEP: 533 460 73 44

TANIKLIĞA ENGEL HALİ YOK, YALAN TANIKLIĞIN SONUÇLARI ANLATILDI. USULEN YEMİNİ YAPTIRILDI.

SORULDU:

Ben Yalçın  AYASLI'yı tanırım. Kendisi şirketin eski sahibiydi. Ben şirkette Yönetim Kurulu Başkanı ve  Genel Müdürü  olarak görev yapmaktaydım.  Ben görevden satış olduktan sonra ayrıldım. Şirketin ödeme güçlüğü olduğunu biliyordum. Şirket satışını bizzat Yalçın AYASLI liderliğinde vekilleri, yönetim kurulu üyeleri  ve ben birlikte yaptık.  Şirket satış sözleşmesinin özü  mizanda gösterilen,  borçların dışında olabilecek borçlardan ve gösterilen fakat tahsil edilemeyecek alacaklardan satıcının sorumluluğunu üstlenmesiydi. Yalçın AYASLI'nın mizan  dışında  olacak  her türlü yükümlülüğü üstlenmeyi sözlü ve yazılı olarak taahhüt etmişti.

Yalçın Ayaslı şirketin operasyonel ve yönetimsel olarak en küçük ayrıntısına dahi hakimdi. Şirketin günlük yönetiminden haberdardı. Şirketin günlük uçuş doluluk oranı ve uçuş başına ciroya dair bilgi  dahi kendisi ile paylaşılıyordu. Bunun yanı sıra aylık ve  3 aylık şirketin finansal ve operasyonel  bilgileri  kendisiyle düzenli bir şekilde paylaşılmaktaydı. Ve şirketin bütçeleri de yılbaşı itibariyle kendisinin onayıyla yürürlüğe konmaktaydı. Şirketin operasyonel bilgileri,  içinde bulunduğu finansal zorluklar ve ihtiyaçlar kendisine günlük ve dönemsel raporlarla sunuluyordu.

Ayrıca satış sözleşmesinin bir parçası olarak Yalçın AYASLI, satış sözleşmesinin bir parçası olarak Bora Jet, Aydın Jet ve Bora Jet Teknikten olan tüm alacaklarını ibra etmişti. Buna ilişkin belgeyi de alıcı tarafa teslim edeceğini taahhüt etmişti. Ekleyecek başkaca bir husus yoktur. Dedi. 11/05/2017

KUBİLAY ERYİĞİT 36046    KÜRŞAT BULUT 187068    FATİH AKOL
Cumhuriyet Savcısı            Zabıt Katibi                      Tanık

