UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Yalcin Ayasli,<br><br>      Plaintiff,<br><br>  v.<br><br>Sezgin Baran Korkmaz, Kamil Feridun Ozkaraman**,** Fatih Akol, SBK Holdings A. S., SBK Holdings, USA, Inc., Bugaraj Elektronik Ticaret ve Bilisim Hizmetleri A.S., and Mega Varlik Yonetim A.S.<br><br>      Defendants. | Case No. 1:19-cv-00183-JL |

**DECLARATION OF YALCIN AYALSI IN SUPPORT OF PLAINTIFF'S
SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO TRANSFER**

I, Yalcin Ayasli, under oath, state and depose as follows:

1. I am a United States citizen and a resident of Nashua, New Hampshire.

2. As the named Plaintiff in this litigation, I am familiar with the facts and circumstances underlying the Plaintiff's Supplemental Brief in Support of Motion to Transfer.

3. On or around February 22, 2018, Professor Hakan Yavuz called to inform me that Defendant Sezgin Baran Korkmaz had shown up at his office at the University of Utah, unannounced and uninvited, and made certain threatening remarks to him directed both to him and to me.

4. During that meeting, Mr. Korkmaz confronted Professor Yavuz about the efforts that Professor Yavuz had been making in Turkey on my behalf trying to clear me of the FETO

1

smear that had been put on me by Mr. Korkmaz after the July 2016 failed coup attempt. Professor Yavuz told me that Mr. Korkmaz was upset that Professor Yavuz was working to clear my name, because Mr. Korkmaz was relying on the FETO accusation against me to force me to "settle" with him.  Mr. Korkmaz also demanded that Professor Yavuz attempt to set up a meeting for him with me.

5. A few days later, fearing that Defendant Korkmaz might also appear uninvited and unannounced at my home, I contacted ADT and made payment to ADT to have a home security system installed at my home in Nashua, New Hampshire.

6. Professor Yavuz's effort to clear my name with Turkish government officials was critical to my ability to defend myself in the sham criminal and commercial cases in Turkey. The Korkmaz Defendants initiated a number of criminal and civil proceedings against me in Turkey.  This included two commercial cases, a criminal fraud case, a criminal complaint filed on behalf of my former BoraJet GM, Kadir Peker, who they bribed, and a criminal complaint alleging that I was a member of FETO.  This FETO complaint referred to a series of media articles alleging that (1) I designed the By Lock system used by terrorists during the coup attempt (I didn't); (2) that I had prior knowledge of the planned coup (I didn't); (3) that I committed espionage against the Turkish government (I didn't); (4) that I funded FETO operations (I didn't); (5) that I laundered money for FETO (I didn't); (6) that I secreted Fethullah Gulen into Turkey in my private plane for coup-planning meetings (I didn't); and (7) that I am actually a CIA agent having secret meetings in Turkey at my residence and on my boat (I am not, and have never been).

7. Just prior to Defendant Korkmaz's visit to Utah in February 2018, in the Istanbul Third Commercial Court of First Instance, Defendant Bugaraj filed a petition for a preliminary

attachment on over $100M (USD) of my residential and commercial property along with an "expert report" outlining alleged damages related to the commercial claims filed against me.

8. Also prior to Defendant Korkmaz's visit to Utah, the Istanbul Office of Chief Prosecutor had transferred the "FETO investigative file" against me to the Terrorism Bureau for further investigation against me.

9. *Since* Defendant Korkmaz's visit to Utah, I have suffered damages.

10. *First*, I have incurred substantial attorneys' fees and costs to defendant myself against the baseless, improperly motivated, sham criminal and civil litigations in Turkey.

11. *Second,* I also incurred significant expenses in retaining a public relations firm in Turkey in an effort to respond to the damaging political and public relations effects on my businesses, my reputation and my good will due to the RICO Enterprise's continuing attacks on me and my family.

12. *Third,* my lawyer, Attorney Tolga Danisman, was arrested, his office (Herguner) and home was searched, and law enforcement seized his laptop, mobile devices, flash drives, and documents from his office, and the Herguner firm subsequently withdrew from representing me in the sham cases pending against me in Turkey out of concerns for their own safety and the safety of their lawyers and staff.

13. *Fourth*, because of my inability to defend myself in the sham litigations, the Istanbul Third Commercial Court of First Instance entered a judgment against me in October 2019 in an amount exceeding $85 million (USD), and, on February 25, 2019, liened all of my and my children's real estate holdings in Turkey by issuing an order at a suddenly-scheduled hearing where my counsel could not be present because it was held just days after my counsel's

office and home in Istanbul was raided and he had been detained on suspicion of being a FETO agent.

14. *Fifth,* my public relations consultant was arrested on FETO-related allegations and stopped working on my behalf.

15. *Sixth,* I had to find and engage new legal counsel in Turkey and to incur the costs of that counsel getting "up to speed" on the multiple sham cases brought against me by Mr. Korkmaz, including reading and digesting more than 20 files of prior documentation.

16. Since Defendant Korkmaz's visit to Utah, I have also continued to suffer reputational harm in the United States and in Turkey. The FETO investigation against me remains open, the sham criminal fraud case continues, and the execution office will soon conduct a public auction to sell off all of my real estate and personal items produced from a lifetime of my hard work unless I can clear my name of the admittedly false FETO charges made against me by Mr. Korkmaz.

17. I also filed this complaint in the District of New Hampshire alleging an open-ended RICO conspiracy involving extortion, money laundering, and wire fraud scheme, which might not have been required if my reputation had been restored in Turkey prior to the filing of this case in February 2019.

18. All of the payments I made to cover the above listed expenses, attorneys' fees, and costs came from funds located in my New Hampshire-based financial accounts.

19. I also learned that just in the past couple of weeks, Mr. Korkmaz has been actively sharing Professor Yavuz's declaration, which was filed in this case on May 19, 2020, at ECF Dkt. 60–3 at 5–8, with sources in Turkey in an effort to further damage my reputation there. Defendant Korkmaz had Professor Yavuz's declaration translated and delivered to the Turkish

Prosecutor's Office responsible for the open FETO investigation against me claiming that its content is antagonistic to the Turkish government and judiciary and therefore a proof of my FETO ties.

20. As a result of Defendant Korkmaz's efforts in distributing Professor Yavuz's declaration, an article was published in the Turkish press just last week, attached hereto as **Exhibit A**, branding Professor Yavuz as a FETO sympathizer and warning Professor Yavuz and others like him that "if you come to Turkey after this your place is the prison" and "it is my job to monitor traitors like you and inform the society of what you do."

Dated: June 23, 2020

Dr. Yalcin Ayasli