QUINN EMANUEL URQUHART & SULLIVAN, LLP
Harvey J. Wolkoff (Bar No. 532880) (*pro hac vice*)
  harveywolkoff@quinnemanuel.com
111 Huntington Street, Suite 520
Boston, Massachusetts 02199-3600
Telephone:  (617) 712-7100
Facsimile:  (617) 712-7200

Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Fatih Akol

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YALCIN AYASLI<br><br>                    Plaintiff,<br><br>         v.<br><br>SEZGIN BARAN KORKMAZ, et al.<br><br>                    Defendants. | Case No. 2:20-cv-09388-CAS-PD<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS, LACK OF PERSONAL JURISDICTION, AND FAILURE TO STATE A CLAIM**<br><br>Judge:  Hon. Christina A. Snyder<br>Hearing Date:  October 3, 2022<br>Hearing Time:  10:00 am<br><br>Complaint Filed:  October 10, 2020<br>Trial Date:  None Set |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 3, 2022, at 10:00 am or as soon thereafter as the matter may be heard in Courtroom 8D of the United States District Court for the Central District of California, defendant Fatih Akol will and hereby does move for an order dismissing him from this case based on insufficient (including untimely) service of process, lack of personal jurisdiction, and failure to state a claim against him.

This Motion is made pursuant to Rules 12(b)(5), 4(m), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Mr. Akol's service of process was invalid (and untimely, making dismissal with prejudice appropriate here), that exercising personal jurisdiction over Mr. Akol would violate the Due Process Clause of the U.S. Constitution, and that Plaintiff has failed to state a claim against him.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place over Zoom on August 23, 2022.  The parties were not able to reach a resolution that would eliminate the need for this Motion.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; and the simultaneously filed declaration of Fatih Akol.

DATED:  August 31, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____

Harvey J. Wolkoff
Diane Cafferata
Attorneys for Fatih Akol

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND.................................................................................. 2

APPLICABLE LEGAL STANDARDS .................................................................. 4

ARGUMENT ......................................................................................................... 5

I.   PLAINTIFF'S CLAIMS AGAINST MR. AKOL MUST BE DISMISSED WITH PREJUDICE DUE TO ITS INEXCUSABLE FAILURE TO EFFECT SERVICE OF PROCESS ........................................ 5

II.  PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION OVER MR. AKOL THROUGH PLAINTIFF'S RICO CLAIMS.................... 7

    A.   Plaintiff has not pled the elements of an 18 U.S.C. § 1962(c) or 18 U.S.C. § 1964(c) claim with respect to Mr. Akol............................ 10

        1.   There are no allegations sufficient to show Mr. Akol participated in or conducted the affairs of any enterprise, or that he was even aware of such an enterprise. ...................... 12

        2.   The predicate acts are not alleged with sufficient particularity or supported by anything other than conclusory statements. ................................................................ 13

        3.   Plaintiff has failed to allege the elements of a RICO Conspiracy claim. ................................................................ 15

    B.   The Presence of SBK Holdings, USA, Inc. in California does not justify personal jurisdiction over Mr. Akol because it does not serve the "ends of justice".................................................................. 16

III. PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION OVER MR. AKOL ON ANY OTHER BASIS ............................................. 18

    A.   The Court Lacks General Jurisdiction Over Mr. Akol ........................ 18

    B.   The Court Lacks Specific Jurisdiction Over Mr. Akol........................ 20

    C.   Exercising Jurisdiction Over Mr. Akol Would Offend Notions of Fair Play and Substantial Justice.................................................... 22

IV.  PLAINTIFF'S COMPLAINT AGAINST MR. AKOL SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ........................................................................................................ 23

CONCLUSION.................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Aanestad v. Beech Aircraft Corporation,*
   521 F.2d 1298 (9th Cir. 1974) ...................................................................24

*Alan Neuman Prods., Inc. v. Albright,*
   862 F.2d 1388 (9th Cir. 1988) .....................................................................4

*Ama Multimedia, LLC v. Wanat,*
   970 F.3d 1201 (9th Cir. 2020) ..................................................8, 18, 21, 23

*Antelope Valley Allied Arts Ass'n v. Lancaster Redevelopment Agency,*
   2011 WL 13218029 (C.D. Cal. Dec. 20, 2011) .......................................6, 7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................13, 23

*Attia v. Google LLC,*
   983 F.3d 420 (9th Cir. 2020) .....................................................................16

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
   874 F.3d 1064 (9th Cir. 2017) ...................................................................21

*Barkett v. Sentosa Props., LLC,*
   692 F. App'x. 411 (9th Cir. June 5, 2017) .................................................25

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................23

*Benny v. Pipes,*
   799 F.2d 489, 492 (9th Cir.1986) ................................................................7

*BNSF Ry. Co. v. Tyrrell,*
   137 S. Ct. 1549 (2017) ..............................................................................19

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.,*
   137 S. Ct. 1773 (2017) ..............................................................................18

*Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.,*
   788 F.2d 535 (9th Cir. 1986) ...................................................................8, 9

*Calder v. Jones,*
   465 U.S. 783 (1984) ..................................................................................21

*Core-Vent Corp. v. Nobel Indus. AB,*
   11 F.3d 1482 (9th Cir. 1993) .....................................................................22

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ..................................................................................19

*De Los Angeles Gomez v. Bank of Am., N.A.,*
   642 F. App'x 670 (9th Cir. 2016) ..............................................................24

*Direct Mail Specialists v. Eclat Computerized Techs., Inc.*,
   840 F.2d 685, 688 (9th Cir.1988) ........................................................... 7

*Enos v. U.S. Bank*,
   831 F. App'x. 289 (9th Cir. Dec. 14, 2020) ........................................... 25

*Fernandez-Lopez v. Hernandez*,
   2020 WL 9396523 (W.D. Tex. Oct. 1, 2020), *report and recommendation
   adopted*, 2020 WL 9396487 (W.D. Tex. Nov. 20, 2020) ......................... 9

*Geiche v. City & Cnty. of San Francisco*,
   2009 WL 1948830 (N.D. Cal. July 2, 2009) ........................................... 7

*Geraci v. Homestreet Bank*,
   347 F.3d 749 (9th Cir. 2003) .................................................................. 4

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002) .............................................................. 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ............................................................................. 20

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ............................................................................. 16

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ................................................................ 8

*Heimrich v. U.S. Dep't of Army*,
   947 F.3d 574 (9th Cir. 2020) ............................................................... 23

*Hinds Investments, L.P. v. Angioli*,
   654 F.3d 846 (9th Cir. 2011) ............................................................... 24

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ............................................................... 15

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
   649 F.2d 1266 (9th Cir. 1981) ............................................................. 22

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694, 701 (1982) ....................................................................... 6

*Jackson v. Hayakawa*,
   682 F.2d 1344 (9th Cir. 1982) ............................................................. 20

*M/S Bremen v. Zapata Off–Shore Co.*,
   407 U.S. 1 (1972) ................................................................................. 18

*Major v. United States I.R.S.*,
   201 F. App'x 564 (9th Cir. 2006) ........................................................ 24

*Mir v. Greines, Martin, Stein & Richland*,
   2015 WL 4139435 (C.D. Cal. Jan. 12, 2015), *aff'd*, 676 F. App'x 699 (9th
   Cir. 2017) ............................................................................................. 12

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ...................................................................... 13, 14

*Nat'l Grange of the Ord. of Patrons of Husbandry v. California State Grange*,
   182 F. Supp. 3d 1065 (E.D. Cal. 2016) ............................................................ 17

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ......................................................................... 18

*Picot v. Weston*,
   780 F.3d 1206 (2015) ...................................................................................... 21

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Circ. 2015) ......................................................................... 7

*Reves v. Ernst & Young*,
   113 S. Ct. 1163 (1993) ..................................................................................... 12

*RJ v. Cigna Behav. Health, Inc.*,
   2021 WL 1110261 (N.D. Cal. Mar. 23, 2021) ............................................ 14, 16

*Robo-Team NA, Inc. v. Endeavor Robotics*,
   313 F. Supp. 3d 19 (D.D.C. 2018) .................................................................... 17

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999) ........................................................................................... 7

*S.E.C. v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ................................................................... 4, 5, 6

*Sadighi v. Daghighfekr*,
   36 F. Supp. 2d 267 (D.S.C. 1999) .................................................................... 17

*Salinas v. United States*,
   522 U.S. 52 (1997) .................................................................................... 10, 15

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ............................................................................. 4

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) ............................................................................. 8

*Sec. Inv. Prot. Corp. v. Holmes*,
   76 F.3d 388 (9th Cir. 1996) ............................................................................. 12

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ......................................................................................... 10

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................. 8

*United States v. Merino*,
   846 F. App'x 494 (9th Cir. 2021) ..................................................................... 16

*United States v. Shifman*,
    124 F.3d 31 (1st Cir. 1997) ...................................................................... 10

*United States v. Si*,
    343 F.3d 1116 (9th Cir. 2003) ................................................................. 13

*United States v. Young*,
    720 F. App'x. 846 (9th Cir. Dec. 27, 2017) ............................................ 24

*Walls v. Int'l Longshoremen's and Warehousemen's Union, Local 23*,
    10 F. App'x 485 (9th Cir. 2001) .............................................................. 24

*Weimer v. EMC-Chase Quality Loan Serv.*,
    2011 WL 3809918 (C.D. Cal. Aug. 26, 2011) ....................................... 10

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ................................................................. 23

**Statutory Authorities**
18 U.S.C. § 1343 .......................................................................................... 13

18 U.S.C. § 1951 .......................................................................................... 13

18 U.S.C. § 1961(1)(A) ............................................................................... 13

18 U.S.C. § 1962 .......................................................................................... 10

18 U.S.C. § 1962(c) ............................................................................. 3, 10, 15

18 U.S.C. § 1964 .......................................................................................... 10

18 U.S.C. § 1964(c) ..................................................................................... 10

18 U.S.C.A. § 1965(b) ........................................................................... 8, 9, 17

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§
    1962(c), 1964(c) ....................................................................................... 3

**Rules and Regulations**
Fed. R. Civ. P. 4 ........................................................................................ 5, 7

Fed. R. Civ. P. 4(f)(3) ................................................................................ 5, 6

Fed. R. Civ. P. 4(k)(2) ................................................................................. 18

Fed. R. Civ. P. 4(m) ............................................................................... 1, 4, 6

Fed. R. Civ. P. 9(b) .................................................................................... 4, 5

Fed. R. Civ. P. 12(b)(2) ............................................................................... 1, 4

Fed. R. Civ. P. 12(b)(5) ............................................................................ 1, 4, 5

Fed. R. Civ. P. 12(b)(6) ................................................................................. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Additional Authorities**

*California Secretary of State Record for SBK Holdings USA, Inc.* (36241709) ....... 17

## **INTRODUCTION**

This case comes before the Court by way of transfer almost two years ago from the District of New Hampshire.  Since then, Plaintiff has literally done nothing in this case.  The District of New Hampshire concluded it had no personal jurisdiction over Mr. Akol in New Hampshire.  Therefore, it had no power to issue binding orders as to him. Dkt. 73.  For that reason, the District of New Hampshire's minute order allowing service of process via email on Mr. Akol is not valid.  And because Mr. Akol was served by email and only by email in the New Hampshire case, and never served again since transfer, he has never received valid service of process.  Mr. Akol can be dismissed from this case pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process, and since the 90 day deadline for that service has long since passed (Fed. R. Civ. P. 4(m)) that dismissal should be with prejudice.

Similarly, although the District of New Hampshire concluded it lacked personal jurisdiction over Mr. Akol and could not bind him, it nonetheless concluded— erroneously—that personal jurisdiction would be proper in the Central District of California.  It is not, and the case against Mr. Akol should be dismissed for lack of personal jurisdiction as well pursuant to Federal Rule of Civil Procedure 12(b)(2). Finally, although extremely long and verbose, the complaint fails to allege facts against Mr. Akol and should be dismissed for failure to state a claim under Rule 9(b) and the principles of *Iqbal* and its progeny.

Yalcin Ayasli's ("Plaintiff") lengthy, convoluted Corrected Complaint ("Complaint") tells the story as to defendant Akol of a business deal he now regrets.  In the Complaint, Plaintiff broadly alleges that Mr. Akol violated the RICO statute, but alleges no facts supporting the notion that Mr. Akol engaged in a criminal enterprise, criminal conspiracy, or any other violations of law.  In short, Plaintiff does nothing more than describe a general manager of his Turkish airline – Defendant Akol – who conducted business negotiations in Turkey at his request.  Plaintiff apparently now regrets signing off on the sale, believes defendants other than Mr. Akol tried to paint

him as a Turkish political dissident in order to effectuate the sale on discounted terms, and sees connections between those other defendants and a renewable energy tax credit scheme.  None of those allegations can convert Mr. Akol's participation in the negotiations and sale of an airline in Turkey on Plaintiff's behalf into criminal acts under RICO.  Notably, the Complaint makes no claim that Mr. Akol is the source of any lies, misrepresentations, or omissions.

Instead, the thin reed on which Plaintiff relies with respect to Mr. Akol's involvement in the supposed vast criminal enterprise and conspiracy is that "upon information and belief, Mr. Akol was threatened and/or bribed" by the criminal enterprise.  Compl. ¶ 400.  A completely conclusory allegation such as this, with no alleged facts in support, *made upon information and belief,* is insufficient to confer nationwide jurisdiction over Mr. Akol as a supposed RICO co-conspirator.  The only other substantive allegation involving Mr. Akol is that Mr. Akol's alleged RICO co-conspirator hit him in the face with an ashtray.  *Id.* ¶¶ 498, 574.  If anything, under these allegations, Mr. Akol was a victim of the alleged scheme, yet Plaintiff seeks to paint his former general manager as part of a vast criminal conspiracy.

The allegations against Mr. Akol fail to satisfy any pleading standard, much less the heightened standards required for fraud allegations under RICO.  Because the Plaintiff has not stated a valid RICO claim against Mr. Akol, personal jurisdiction over Mr. Akol under the RICO statute is unavailable.  In fact, Plaintiff's claims against Mr. Akol should be dismissed outright for failure to state a claim.  There is no basis for general or specific personal jurisdiction over Mr. Akol in California.

***In sum***, Mr. Akol should be dismissed from this case based on insufficient service of process, lack of personal jurisdiction and due to Plaintiff's failure to state a claim against him.

## **FACTUAL BACKGROUND**

Fatih Akol is a Turkish national who, after the Complaint was filed, moved from Turkey to California.  Compl. ¶ 56.  It is undisputed that Mr. Akol soon thereafter

moved out of California and now lives in New Jersey to be closer to his child.  Akol Decl. ¶¶ 1-4.  Plaintiff Yalcin Ayasli is a Turkish and American citizen resident in New Hampshire.  Compl. ¶ 1.  BoraJet is a Turkish regional airline, wholly owned by Plaintiff until he approved its sale in December 2016.  *Id.* ¶¶ 4, 405.  Mr. Akol became the General Manager of BoraJet at Mr. Ayasli's behest at some point during the time of Plaintiff's ownership of the company. *Id.* ¶ 187.  In December 2016, Ayasli asked Akol to begin efforts to sell BoraJet because of his mounting financial difficulties. *Id.* ¶ 395.  Akol identified several potential buyers, *id.* ¶¶ 397, 399, with SBK Turkey eventually emerging as the most promising option, *id.* ¶ 402.  Ayasli admits that, as BoraJet's sole owner, he signed an agreement on December 29, 2016 to sell the company to Bugaraj, a subsidiary of SBK Turkey. *Id.* ¶ 405.  The sale was for minimal money upfront, *id.* ¶ 414, but Bugaraj agreed to take on portions of BoraJet's significant debt.  *Id.* ¶ 411.  Following the sale, Defendant Sezgin Baran Korkmaz, who is purported to have control and influence over SBK Turkey (which bears his initials), allegedly threatened Mr. Akol.  *Id.* ¶¶ 40-42, 453.  Korkmaz also told Plaintiff and others that he had assaulted Mr. Akol.  *Id.* ¶¶ 498, 574.

Nonetheless, in February 2019, Plaintiff filed the operative Complaint, accusing Mr. Akol for the first time of participating in a criminal scheme, with Mr. Korkmaz, to defraud Plaintiff of his ownership interest in BoraJet, specifically through violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964(c) ("Substantive RICO") (Claim I), violation of 18 U.S.C. § 1962(c) ("RICO Conspiracy") (Claim II), violations of the New Hampshire Consumer Protection Statute, RSA 358:A (Claim III), and fraudulent misrepresentation (Claim IV).  Plaintiff received the New Hampshire Court's permission to serve Mr. Akol by email and did so on January 23, 2020.  Dkt. 31.

Entirely lacking from this meandering and prolix complaint is any claim that Mr. Akol made any false statements or misrepresentations before, during, or after the

1   BoraJet sale negotiations, that Mr. Akol joined the alleged criminal enterprise, or that

2   Mr. Akol derived any benefit for his alleged participation in the scheme.

3                          **APPLICABLE LEGAL STANDARDS**

4          Federal Rule of Civil Procedure 12(b)(5) permits a defendant to move for

5   dismissal due to insufficient service of process.  Under FRCP 4(m), "[i]f a defendant is

6   not served within 90 days after the complaint is filed, the court – on motion or on its

7   own after notice to the plaintiff – must dismiss the action without prejudice against that

8   defendant or order that service be made within a specified time."  And "neither actual

9   notice nor simply naming the defendant in the complaint will provide personal

10  jurisdiction without substantial compliance with Rule 4."  *S.E.C. v. Ross*, 504 F.3d

11  1130, 1140 (9th Cir. 2007) (quotation omitted).

12         Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move for

13  dismissal due to lack of personal jurisdiction.  "Where a defendant moves to dismiss a

14  complaint for lack of personal jurisdiction, the plaintiff bears the burden of

15  demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor*

16  *Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

17         Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move for

18  dismissal for failure to state a claim.  "A complaint should not be dismissed for failure

19  to state a claim unless it appears beyond doubt that the plaintiff can prove no set of

20  facts in support of his claim which would entitle him to relief." *Geraci v. Homestreet*

21  *Bank*, 347 F.3d 749, 751 (9th Cir. 2003) (quotation omitted).  "All material allegations

22  in a complaint must be taken as true and viewed in the light most favorable to the

23  plaintiff." *Id.*  Federal Rule of Civil Procedure 9(b) imposes a heightened pleading

24  standard for claims alleging fraud, including RICO claims where fraud is alleged as a

25  component of a predicate act.  Fed. R. Civ. P. 9(b); *Alan Neuman Prods., Inc. v.*

26  *Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("The allegations of predicate acts in the

27  complaint concerning those elements of RICO are entirely general; no specifics of time,

28  place, or nature of the alleged communications are pleaded.  This is a fatal defect [of

the complaint] under Fed.R.Civ.P. 9(b), which requires that circumstances constituting fraud be stated with particularity.")

## ARGUMENT

### I.   PLAINTIFF'S CLAIMS AGAINST MR. AKOL MUST BE DISMISSED WITH PREJUDICE DUE TO ITS INEXCUSABLE FAILURE TO EFFECT SERVICE OF PROCESS

Service of process is integral to a court's exercise of personal jurisdiction: "The familiar 'minimum contacts' test, coupled with statutory authorization, provides a *basis* for an exercise of jurisdiction, but '[s]ervice of process is the *mechanism* by which the court [actually] acquires' the power to enforce a judgment against the defendant's person or property." *Ross*, 504 F.3d at 1138. And the right mechanism for service of process is laid out the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4. A complaint can be dismissed for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5).

At the time Plaintiff filed his Complaint in the District of New Hampshire, Mr. Akol was living abroad in Turkey. Compl. ¶ 56. The Federal Rules allow service of process on an individual in a foreign country three ways: (1) by the Hague Convention, an international agreement governing service of process; (2) by a method that is reasonably calculated to give notice per specified criteria; or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f). Plaintiff moved for permission to serve Mr. Akol under Rule 4(f)(3), arguing "service by e-mail is not prohibited by international agreement and satisfies due process" and thus could be ordered by the Court. Dkt. 29 ¶ 4. The District of New Hampshire granted Plaintiff's request via minute order. Plaintiff then submitted an affidavit of service of process via email on Mr. Akol. Dkt. 31.

But the District of New Hampshire later concluded that it had no personal jurisdiction over Mr. Akol. Dkt. 73 at 29-32. And a court without personal jurisdiction over a party cannot bind that party with its orders. *Ins. Corp. of Ireland v. Compagnie*

*des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties."). Therefore, the District of New Hampshire's order granting Plaintiff's motion to serve Mr. Akol via email was not valid: Rule 4(f)(3) only permits alternative service "as the court orders." In short, there was no valid service on Mr. Akol in the New Hampshire matter. Nor was proper (or any) service effected after the transfer to the Central District of California. Now years later, Mr. Akol still has not received service in a manner compliant with the Federal Rules of Civil Procedure. Without proper service, this Court cannot not exercise personal jurisdiction over Mr. Akol. *See Ross*, 504 F.3d at 1138. Nor can service of process be made now. Federal Rule of Civil Procedure 4(m) sets a time limit for service of 90 days after the complaint is filed. If a defendant is not served within that period, a court "must dismiss the action" against that defendant. Fed. R. Civ. P. 4(m). Here, years have passed since this deadline for service expired. The initial Complaint ("Complaint" or "Compl."), Dkt. 1, was filed in the District of New Hampshire on February 18, 2019, more than three and a half years ago. The only service of process to Mr. Akol while the case was in the District of New Hampshire was service via email and that service is invalid. Dkt. 31. Transfer to the Central District of California was completed on October 10, 2020, nearly two years ago. Dkt. 84. Since then, not only has Mr. Akol not received any service of process, but the Plaintiff has not taken any steps to pursue his case.

Under these circumstances, the proper remedy is dismissal. As this court has explained, once the time limit set in Rule 4(m) elapses, "the action will be dismissed without prejudice as to that defendant unless the plaintiff shows good cause." *Antelope Valley Allied Arts Ass'n v. Lancaster Redevelopment Agency*, 2011 WL 13218029, at *3 (C.D. Cal. Dec. 20, 2011). "Good cause means a demonstration of good faith ... and some reasonable basis for noncompliance within the time specified in the rules." *Id.* (quotation omitted). Here, Plaintiff has no case for good cause. Plaintiff did not "aggressively pursue serving" Mr. Akol when it learned that the District of New

Hampshire did not have personal jurisdiction over him (and therefore no power to permit alternative service). *Id.* Even now, Plaintiff has been stirred only by the recent Court order indicating that he had to do something or the case would be dismissed for failure to prosecute the action. Dkt. 126. As there was only egregious neglect without excuse, dismissal with prejudice is warranted.

Plaintiff may argue that, despite the lack of service, Mr. Akol nevertheless received actual notice of the Complaint. But actual notice cannot establish personal jurisdiction in this Circuit: "Although a defendant's appearance to attack sufficiency of service is an admission that defendant has actual knowledge of the lawsuit, actual knowledge does not substitute for proper service of process." *Geiche v. City & Cnty. of San Francisco*, 2009 WL 1948830, at *9 (N.D. Cal. July 2, 2009). Rather, "'A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed.R.Civ.P. 4.'" *Id.* at *8 (quoting *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir.1988)). "'[N]either actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction' absent substantial compliance with its requirements.'" *Id.* (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986)). Rather, "Once service of process is properly challenged, 'the party on whose behalf [service] is made must bear the burden of establishing its validity.'" *Id.* at *9 (quotation omitted). Plaintiff cannot bear that burden.

## II. PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION OVER MR. AKOL THROUGH PLAINTIFF'S RICO CLAIMS

Rule 12(b)(2) allows a defendant to move to dismiss for "lack of personal jurisdiction." Personal jurisdiction "is an essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999) (citation omitted).

The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Circ. 2015). "Personal

jurisdiction over each defendant must be analyzed separately." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

To establish personal jurisdiction, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). "Mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). Conflicting statements in affidavits "must be resolved in [the plaintiff's] favor," but "disputed allegations in the Complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *Ama Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (citation omitted).

Plaintiff contends, and the New Hampshire Court found (while concluding that it actually lacked jurisdiction over Mr. Akol), that personal jurisdiction over Mr. Akol would be appropriate in the Central District of California because of the personal jurisdiction provisions of the RICO Act. Dkt. 73 at 33-40; 47-59.

The RICO statute, 18 U.S.C.A. § 1965(b), provides that: "In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof."

The District of New Hampshire followed the interpretation that the Ninth Circuit and the majority of circuits have given to this rule. Dkt. 73 at 38. "For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).

The District of New Hampshire found that, under this majority reading of the RICO statute, there was no personal jurisdiction over the Plaintiff's claims against any of the defendants in New Hampshire.  Dkt. 73 at 39.  The District of New Hampshire reasoned that because it did not have traditional personal jurisdiction over any individual co-defendant, the RICO statute could not extend that jurisdiction to the other co-defendants.  *Id.*  Later, though, the District of New Hampshire found that jurisdiction would be proper against almost all the defendants, including Akol, under the RICO statute in California.  *Id.* at 48-63.

The Court found that personal jurisdiction over Akol was proper under the Ninth Circuit's interpretation of 18 U.S.C.A. § 1965(b) because at least one defendant, SBK Holdings USA, Inc. is at home in California.  Dkt. 73 at 49-50.[1]  So, using that jurisdictional hook, it concluded RICO jurisdiction could pull all the other alleged co-defendants into California court.  This was incorrect for two reasons.

First, Plaintiff has not pled a colorable RICO claim against Mr. Akol.  The most widely adopted approach in the federal courts "is to determine if a plaintiff has presented a 'colorable' RICO claim" before allowing a plaintiff to take advantage of RICO's provisions for nationwide service of process and personal jurisdiction. *Fernandez-Lopez v. Hernandez*, 2020 WL 9396523, at *10 (W.D. Tex. Oct. 1, 2020), *report and recommendation adopted*, 2020 WL 9396487 (W.D. Tex. Nov. 20, 2020). Because Plaintiff has failed to state a colorable RICO claim against Mr. Akol, personal jurisdiction cannot be imposed on him pursuant to the RICO statute.

Second, even if Plaintiff has pled a colorable RICO claim, the mere presence of SBK Holdings USA, Inc. in California cannot justify exercising personal jurisdiction over Mr. Akol under the RICO statute.  The RICO statute allows a Court to exercise personal jurisdiction over an out-of-state defendant where it serves the "ends of

---

[1]   The Court also found that personal jurisdiction over Akol would be proper in California.  *Id.* at 51.  This incorrect finding will be addressed separately in Part III.

justice." Here, there is *no* connection between SBK Holdings USA, Inc. and Mr. Akol much less one sufficient to justify extending personal jurisdiction over him to serve the "ends of justice."

### A. Plaintiff has not pled the elements of an 18 U.S.C. § 1962(c) or 18 U.S.C. § 1964(c) claim with respect to Mr. Akol

Plaintiff brings his RICO claims pursuant to both 18 U.S.C. § 1962 and 18 U.S.C. § 1964 but in analyzing the deficiencies with his allegations, "[t]he standard is the same for both criminal and civil RICO violations." *United States v. Shifman*, 124 F.3d 31, 35 (1st Cir. 1997) *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, 65 (1997). Section 1962(c) provides in relevant part that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Weimer v. EMC-Chase Quality Loan Serv.*, 2011 WL 3809918, at *2 (C.D. Cal. Aug. 26, 2011) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Plaintiff has failed to state a substantive RICO claim against Mr. Akol because: (1) the Complaint does not allege that Mr. Akol knowingly joined in a scheme against Plaintiff; (2) it fails to properly plead predicate acts with respect to Mr. Akol; and (3) it overlooks, by means of an attempt to camouflage, the fact that the alleged harm here is nothing more than a business deal that Plaintiff now regrets—not a pattern of racketeering activity. Similar failures doom Plaintiff's RICO conspiracy claim, including the lack of any allegation that Mr. Akol agreed with the codefendants to pursue any criminal objective.

The following are the sum total of Plaintiff's allegations against Mr. Akol:

- Mr. Akol took advantage of the fact that Plaintiff lacked contacts in the Turkish Ministry of Transportation, which regulates the airline industry in Turkey. Compl. ¶ 58.
- Mr. Akol told Plaintiff that the Turkish Ministry of Transportation preferred that he sell BoraJet to SBK Turkey.  *Id.* ¶¶ 59, 402.
- Mr. Akol recommended a sale to SBK Turkey rather than to other potential buyers.  *Id.* ¶¶ 60, 401, 413.
- Mr. Akol conducted the negotiations for the sale of BoraJet.  *Id.* ¶¶ 61, 399, 408.
- As General Manager of BoraJet, Mr. Akol repeatedly urged Plaintiff to sell BoraJet to Bugaraj.  *Id.* ¶¶ 188-9.
- Mr. Akol, upon information and belief, was threatened and/or bribed by members of the alleged RICO enterprise to help the enterprise acquire BoraJet.  *Id.* ¶ 400.
- Mr. Akol informed Plaintiff that Bugaraj wanted to sell BoraJet eventually for a profit.  *Id.* ¶ 403.

Two additional facts from the Complaint bear mentioning:

- Plaintiff instructed Mr. Akol to sell BoraJet due to mounting financial pressures. *Id.* ¶ 395.
- Plaintiff had final authority to complete the sale of BoraJet and made the decision to sell with full knowledge and understanding of the terms of the deal. *Id.* ¶¶ 405, 414.

Taken as a whole, the allegations support only one conclusion: Mr. Akol conducted business negotiations to sell a struggling regional airline—negotiations undertaken at the instruction of Plaintiff as the sole owner of the airline.  In his only allegations hinting at criminal behavior involving Mr. Akol, Plaintiff alleges "upon information and belief" that the criminal enterprise threatened or bribed Mr. Akol and that defendant Korkmaz assaulted Mr. Akol.  Compl. ¶¶ 400, 498.  Given these

allegations, Plaintiff can, at most, claim that Mr. Akol was a victim of the alleged criminal enterprise.

> ### 1.   There are no allegations sufficient to show Mr. Akol participated in or conducted the affairs of any enterprise, or that he was even aware of such an enterprise.

"Section 1962(c) reaches only those persons who are involved in directing the affairs of the enterprise." *Sec. Inv. Prot. Corp. v. Holmes*, 76 F.3d 388, at *2 (9th Cir. 1996).   That requires showing the defendant "participated in the 'operation or management' of the enterprise itself." *Id.* (quoting *Reves v. Ernst & Young*, 113 S. Ct. 1163, 1173 (1993)).   The Complaint does not allege that Mr. Akol was involved in the operation or management of the enterprise or that he directed any of its alleged activities.   Plaintiff alleges "upon information and belief" that the enterprise bribed and/or threatened Mr. Akol in order to carry out its scheme, which at most shows that Mr. Akol was an unwilling outsider adverse to the alleged enterprise.   The Complaint also repeatedly alleges that Korkmaz assaulted Mr. Akol and bragged about the assault to others whom the enterprise sought to intimidate.   These allegations do not even imply that Mr. Akol engaged in any type of management or direction of the affairs of the enterprise, and overcome Plaintiff's conclusory allegation that he was a part of it.

"Each RICO defendant must have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'"   *Mir v. Greines, Martin, Stein & Richland*, 2015 WL 4139435, at *12 (C.D. Cal. Jan. 12, 2015), *aff'd*, 676 F. App'x 699 (9th Cir. 2017).   The enterprise alleged in the Complaint is not merely concerned with the acquisition of BoraJet, but instead includes a scheme to defraud the United States through a renewable fuel tax credit operation operated from at least 2011 to 2016 by non-parties Jacob Kingston, Isaiah Kingston, and Lev Aslan Dermen, among others named in the Complaint.   Compl. ¶¶ 299-323.   Nowhere in the discussion of the tax credit scheme does Mr. Akol's name appear; the reason for that absence is that Mr. Akol, as General Manager of BoraJet, had no knowledge or awareness of any such

scheme.  The Complaint shows no more than Mr. Akol as the target of coercive threats forcing him to recommend a specific buyer to Plaintiff in a one-time business deal, a sale that Plaintiff admits he fully approved.  Plaintiff has not shown that Mr. Akol participated in or conducted the affairs of the alleged RICO enterprise or that he was even aware of such an enterprise.

> ### 2.    The predicate acts are not alleged with sufficient particularity or supported by anything other than conclusory statements.

The predicate acts attributed to Mr. Akol are (1) Hobbs Act extortion in violation of 18 U.S.C. § 1951; (2) wire fraud in violation of 18 U.S.C. § 1343; and (3) state law extortion in violation of 18 U.S.C. § 1961(1)(A).  Compl. ¶¶ 660-666.  None of these allegations support a RICO claim based on any of the alleged predicate acts.

First, the Hobbs Act allegation is that Mr. Akol "by the wrongful use of actual or threatened force, violence, or fear … obtained BoraJet and its affiliates … from Dr. Ayasli" and "obtained the benefit of Dr. Ayasli paying down additional BoraJet debts after the sale."  Compl. ¶¶ 660-1.  This threadbare recitation of the elements of a Hobbs Act violation, *see, e.g.*, *United States v. Si*, 343 F.3d 1116, 1123–24 (9th Cir. 2003), falls short under the *Iqbal* pleading standard as nothing more than a "formulaic recitation of the elements of a cause of action" that "will not do" to survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is also contrary to the actual allegations made against Mr. Akol, where it is expressly alleged that Plaintiff asked Mr. Akol to negotiate the sale of BoraJet.  Even if Dr. Ayasli was in fear of economic loss from the rumors about him in the Turkish press, in fear of physical harm from Korkmaz, or concerned about ongoing Turkish court cases against him, he does not allege he was fearful of Mr. Akol.

Second, in support of his wire fraud allegations, Dr. Ayasli identifies seven communications involving Mr. Akol, all in December 2016.  Compl. Appendix A.  The Ninth Circuit has "applied the particularity requirements of rule 9(b) to RICO claims." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).  "Rule

9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* Notably absent from Plaintiff's Complaint is the supposedly offensive content of the communications from Mr. Akol. The only "content" of the communications referenced in the Complaint are that Akol told Plaintiff that the Ministry of Transportation would prefer a sale to SBK Turkey, and that he "urged" and "recommended" Plaintiff to choose SBK Turkey for the sale.[2] Plaintiff has not alleged any statements by Mr. Akol were misleading or false or any involvement by Mr. Akol in fraudulent communications or activities directed at Plaintiff.

Finally, Plaintiff gives no more than a bare recitation of the elements of a state law extortion claim, Compl. ¶¶ 663-666, in alleging Mr. Akol threatened to accuse Plaintiff and Ms. Uner "of a crime or to expose them to hatred, contempt or ridicule," language taken directly from N.H. Rev. Stat. Ann. § 637:5 II(d). The Plaintiff failed to update his claim after the transfer of his case from New Hampshire to California, so he is pleading under the wrong statute. Regardless, there are no factual allegations in support of Plaintiff's claim, such as a showing that Mr. Akol and Ms. Uner communicated with each other or an allegation that Mr. Akol made any threats. Given the fatal pleading deficiencies for each of the predicate acts allegedly involving Mr. Akol, there is no colorable basis for Plaintiff's RICO claim against him, defeating Plaintiff's alleged basis for personal jurisdiction over him.

---

[2] "Although in some cases, discovery may be appropriate where evidence of fraud is exclusively in the defendant's possession, that is not the situation Plaintiff faces." *RJ v. Cigna Behav. Health, Inc.*, 2021 WL 1110261, at *10 (N.D. Cal. Mar. 23, 2021). All allegedly fraudulent communications appear to have included Plaintiff. Thus, "the who, what, when and how of the misrepresentations Defendants allegedly made are not exclusively within Defendants' knowledge." *Id.*

### 3. *Plaintiff has failed to allege the elements of a RICO Conspiracy claim.*

In addition to the foregoing infirmities of his substantive RICO claim, Plaintiff has failed to allege multiple elements of a RICO Conspiracy claim against Mr. Akol. Thus, Plaintiff fails to meet the threshold requirements. "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. A defendant must also have been aware of the essential nature and scope of the enterprise and intended to participate in it. To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (quotations and citations omitted). An individual conspirator does not have to "agree to commit or facilitate each and every part of the substantive offense" but still "must agree to pursue the same criminal objective." *Salinas*, 522 U.S. at 63–64 (1997).

### (a) *Plaintiff has not alleged that Mr. Akol intended to join a conspiracy.*

Out of 740 paragraphs, the only allegation involving Mr. Akol's intent to join the alleged enterprise is that "upon information and belief," Korkmaz and the enterprise "threatened and/or bribed" Mr. Akol. Compl. ¶¶ 400, 596. That allegation cannot support the weight of a RICO conspiracy claim. Whether threatened or bribed by the enterprise, neither of these speculative allegations, standing alone, reach the level of intending to join a criminal conspiracy.

(b)  ***There are no allegations that Mr. Akol intended to further an endeavor which, if completed, would have satisfied the pattern requirement of RICO.***

Mr. Akol's participation in a single business transaction, coupled with his lack of any knowledge of a broader scheme, cannot support an inference that he intended to further a RICO enterprise.  "A pattern is defined as at least two acts of racketeering activity within ten years of each other." *Attia v. Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020) (quotations omitted).  The Supreme Court has further explained that a RICO pattern requires that "the racketeering predicates [be] related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Further, the Ninth Circuit has noted that "mere association with members of a conspiracy or knowledge of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator." *United States v. Merino*, 846 F. App'x 494, 495 (9th Cir. 2021).

In this case, Mr. Akol is solely alleged to be aware of and involved in the sale of BoraJet, a single business deal with no threat of continuing related activity.  And "Courts have uniformly held that a routine commercial dealing is insufficient to establish RICO liability." *RJ*, 2021 WL 1110261, at *7.  Here, as in *RJ*, "In an attempt to transform Defendants' commercial dealing into a RICO enterprise, Plaintiff alleges that Defendants' common purpose was to deceive, but there are insufficient facts pled with particularity to plausibly support this theory." *Id.*  But mere "characterization" does not adequately support a RICO claim. *Id.*

**B.     The Presence of SBK Holdings, USA, Inc. in California does not justify personal jurisdiction over Mr. Akol because it does not serve the "ends of justice"**

In this case, the sole jurisdictional "hook" that might allow the Central District of California to exercise personal jurisdiction over Mr. Akol is the fact that SBK Holdings, USA, Inc. is domiciled in Commerce, California.  Compl. ¶ 71.  That is

really no hook at all.  SBK Holdings USA, Inc. has not taken any action in this litigation and appears to have defaulted on its California taxes.  *See California Secretary of State Record for SBK Holdings USA, Inc.* (36241709).  The Court can take judicial notice of these filings when assessing jurisdiction.  *Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 23 n.1 (D.D.C. 2018) ("Courts may take judicial notice of public records of corporate filings maintained online by state Secretaries of State to determine a company's place of incorporation."); *see also Nat'l Grange of the Ord. of Patrons of Husbandry v. California State Grange*, 182 F. Supp. 3d 1065, 1075 n.3 (E.D. Cal. 2016) ("The court takes judicial notice of filings with the California Secretary of State and County of Sacramento because they are matters of public record whose accuracy is not subject to reasonable dispute.").  The Court should find that the "ends of justice" would not be served by asserting jurisdiction over Mr. Akol on such a flimsy basis.  18 U.S.C.A. § 1965(b).

In addition, the main—but not the sole factor—in an "ends of justice" analysis is usually the "availability of an alternative forum" where the action could be brought against all of the defendants.  *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 277 (D.S.C. 1999).  Although this is usually thought of as an alternative district court that might hear the case, in this instance a foreign jurisdiction would provide a suitable forum: Turkey.  In addition to the indisputable facts that the gravamen of this litigation rests squarely in Turkey, along with documentary evidence and the vast majority of witnesses, Plaintiff's acceptance of the BoraJet sales agreement's mandatory forum selection clause is an implicit acknowledgment that Turkey is an adequate forum for this dispute.  When a case, such as this one, involves a forum selection clause in a "freely negotiated international commercial transaction" and the alleged inconvenience that would result from being forced to litigate in the contractual forum was foreseeable at the time of contracting, "the party seeking to escape his contract [must] show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.  Absent that, there is no basis

for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17–18 (1972).

## III.   PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION OVER MR. AKOL ON ANY OTHER BASIS

"Personal jurisdiction over an out-of-state defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." *Id.* "California's long-arm [statute] permits the exercise of jurisdiction to the limits of due process," so the "analysis of personal jurisdiction under California's long-arm and the [Due Process Clause] collapse into one." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

The federal long-arm statute, *see* Fed. R. Civ. P. 4(k)(2), "may, in limited circumstances, be a basis for establishing jurisdiction." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). It permits the exercise of personal jurisdiction when (1) the claim against the defendant arises under federal law, (2) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction, and (3) the exercise of personal jurisdiction comports with due process. *Wanat*, 970 F.3d at 1208. "The due process analysis under [the federal long-arm statute] is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [defendant] and the forum state, [courts] consider contacts with the nation as a whole." *Id.* (citation omitted).

### A.   The Court Lacks General Jurisdiction Over Mr. Akol

The Due Process Clause cabins the authority of courts in a particular forum to "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, at 1780 (2017). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* But simply doing business in a forum "does not suffice to permit the assertion of general jurisdiction."

*BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017).  Rather, our federal system limits the exercise of general jurisdiction to forums where a defendant "is fairly regarded as at home."  *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (citation omitted).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).  "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction."  *Id.*

There is no basis for exercising general jurisdiction over Mr. Akol.  He does not reside in California; he did not reside in California at the time of transfer; nor did he reside in California at the time of the events alleged in the Complaint.  Akol Decl. ¶¶ 1-4.  And the District of New Hampshire (while concluding it lacked jurisdiction over him) based its finding that there was jurisdiction on waiver:

> Though he moved to California only after this lawsuit was initiated, neither he nor any other defendant argues that as an impediment to a district court in California exercising general jurisdiction over him in connection with this action.  In fact, he nowhere argues that personal jurisdiction over him in California would be improper on any grounds.  And despite having recently relocated to Florida, he still does not argue that California lacks personal jurisdiction over time.  Personal jurisdiction arguments may be waived, see *Rife*, 873 F.3d at 19, and Akol has done so by not raising that argument here.

Dkt. 73 at 51.  What the Court failed to note was that in New Hampshire, Akol *objected* to transfer to California because no RICO claim had been stated against him and he had no grounds or opportunity to challenge general personal jurisdiction in California at that time.  Dkt. 67 at 3-4.  He did not challenge personal jurisdiction at oral argument on the transfer because he was admittedly "a resident of California."  Dkt. 71 at 30:23.  But that was all *before* Akol left California.  He sent a letter to the court indicating that he was no longer a California resident.  Dkt. 72.  But a few days later, the Court issued

the order quoted above, saying that Akol had not adequately contested personal jurisdiction in California.  This was not waiver—Mr. Akol had no opportunity to brief or argue the personal jurisdiction issue prior because it arose after briefing and argument concluded.  Moreover, in any case, the New Hampshire court then stated had no jurisdiction over Mr. Akol and was thus unable to make binding findings as to him.

The doctrine of waiver does not even apply here.  Waiver makes sense when a defendant appears in a particular court and does not object to personal jurisdiction by *that* court.  *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants can waive the defect of lack of personal jurisdiction by appearing generally without first challenging the defect …Jurisdiction attaches if a defendant makes a voluntary general appearance, as by filing an answer through an attorney….") (quotations and citations omitted).  If a litigant makes a general appearance in a court without challenging *that* court's jurisdiction, they are indicating that they *seek* the court's personal jurisdiction.  Therefore, they may be barred from later saying that they *object* to that particular court's personal jurisdiction.  But Akol never made a general appearance in California, nor waived any arguments related to personal jurisdiction in California, because this case was not even in California.

## B.   The Court Lacks Specific Jurisdiction Over Mr. Akol

Specific jurisdiction may be proper when a defendant is not "at home" but it must be based on a substantial relationship between the forum and the discrete claim asserted.  *See Bristol-Myers Squibb*, 137 S. Ct. at 1780.  "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Courts conduct a three-part inquiry to determine whether a defendant's contacts with the forum give rise to specific jurisdiction:

(1) "the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[] himself of the privileges of conducting activities in the forum'";

(2) "the claim must be one which arises out of or relates to the defendant's forum related activities"; and

(3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

*Wanat*, 970 F.3d at 1208 (citation omitted).   "The plaintiff bears the burden of satisfying the first two prongs of the test," and if the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable.'"  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017) (citation omitted).   "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Wanat*, 970 F.3d at 1208 (citation omitted).

As to the first prong, "[t]he exact form of [the] jurisdictional inquiry depends on the nature of the claim at issue." *Id.* (citation omitted).  When, as here, claims sound in tort, courts apply "a 'purposeful direction' test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (2015).  "Where allegedly tortious conduct takes place outside the forum and has effects inside the forum, [courts] examine[] purposeful direction using an 'effects test' based on *Calder v. Jones*, 465 U.S. 783 (1984)." *Wanat*, 970 F.3d at 1208.  "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (citation omitted).

Plaintiff has not satisfied this standard.  Plaintiff cannot show that Mr. Akol's role in the sale of BoraJet in Turkey while he lived in Turkey was "expressly aimed" at California and caused harm that Mr. Akol knew was "likely to be suffered in the forum." *Id.* at 1208.  There are simply no facts alleged to this effect in the Complaint. The Complaint only alleges one link to California—a company, SBK Holdings USA, Inc., domiciled in Commerce, California.  Compl. ¶ 71.  And the Complaint never links

SBK Holdings USA, Inc. to Mr. Akol in any way shape or form—nor could it.  SBK Holdings USA, Inc., is allegedly under the "control and influence" of Sezgin Baran Korkmaz, the purported "leader of the RICO Enterprise."  *Id.* ¶ 42.  All the Complaint alleges against Mr. Akol is that he helped broker a deal to purchase BoraJet, the Plaintiff's airline, from SBK Turkey—an entirely different corporate entity from SBK Holdings USA, located in a different country.  *Id.* ¶¶ 58-60.  Indeed, Mr. Akol avers he does not know anything about SBK Holdings USA, Inc.  Dkt. 71 at 30:17-18 ("Mr. Akol doesn't know anything about, you know, much of this.").  There is no basis for specific jurisdiction over Mr. Akol in California anywhere in the Complaint.

## C.   Exercising Jurisdiction Over Mr. Akol Would Offend Notions of Fair Play and Substantial Justice

To determine whether the exercise of jurisdiction over a nonresident defendant comports with "fair play and substantial justice," courts consider seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993).

Here, these factors weigh against the exercise of personal jurisdiction over Mr. Akol.  He did nothing to "interject[]" himself into California.  *See Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).  Rather, all the actions he took were in Turkey.  Apart from residing in California for a brief period of time after the Complaint was filed, he has had no connection or contact here.  Litigating in California would impose a substantial burden, as he now lives across the country.

In addition, California also has next to no interest in adjudicating this dispute. As discussed above, the only tie to California alleged in the Complaint is SBK

Holdings USA, Inc.  This Court should find that personal jurisdiction over Mr. Akol, based solely on this defunct company would offend "traditional notions of fair play and substantial justice." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022 (9th Cir. 2017) (quotation omitted).  By contrast, Turkey would have been a forum with substantial interest in this litigation.  Given the availability of that alternative forum, this forum's lack of interest in adjudicating this extraterritorial dispute, and the undue burden on Mr. Akol of litigating here, exercising jurisdiction over Mr. Akol would be unreasonable.  *See Wanat*, 970 F.3d at 1212 n.9.

In sum, plaintiff cannot carry the burden of showing (1) that Mr. Akol purposefully directed his allegedly tortious activities at the forum and (2) that Plaintiff's claims arise out of or relate to Mr. Akol's forum-related activities. *See id.* at 1209-12.  Even if Plaintiff could, the exercise of personal jurisdiction over Mr. Akol would offend traditional notions of fair play and substantial justice. *See id.* at 1212 n.9.

## IV.    PLAINTIFF'S COMPLAINT AGAINST MR. AKOL SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Due to the deficiencies in Plaintiff's pleading identified above in section II.A, Court should also dismiss Plaintiff's RICO claim (Claim I) against Mr. Akol under Rule 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The complaint 'does not need detailed factual allegations,' but the plaintiff must provide more than 'labels and conclusions' to withstand scrutiny under Rule 12(b)(6)." *Heimrich v. U.S. Dep't of Army*, 947 F.3d 574, 577 (9th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under

a cognizable legal claim." *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

Plaintiff did not adequately plead that Mr. Akol knew of or participated in a RICO enterprise, *see* II.A.1, justifying dismissal. *See De Los Angeles Gomez v. Bank of Am., N.A.*, 642 F. App'x 670, at *11-12 (9th Cir. 2016) (dismissing plaintiffs' RICO claim where "none of their allegations plausibly suggest the … Defendants had any knowledge of [the] scheme or its scope, or that they agreed and intended to participate in it"). Plaintiff did not properly allege the predicate acts required to plead a RICO claim against Mr. Akol, *see* II.A.2, justifying dismissal. *Walls v. Int'l Longshoremen's and Warehousemen's Union, Local 23*, 10 F. App'x 485, 488 (9th Cir. 2001) (upholding dismissal of RICO claim where pleading "contains only general and conclusory allegations with regard to the predicate acts allegedly committed"). Each of these failures, *see* II.A.3, justifies dismissal. *Major v. United States I.R.S.*, 201 F. App'x 564, 565 (9th Cir. 2006) (holding a district court properly dismissed a RICO claim because the plaintiff "failed to allege the elements of such a claim.").

For similar reasons, Plaintiff's RICO conspiracy claim (Claim II) against Mr. Akol must be dismissed. "A defendant is guilty of conspiracy to violate RICO only if the evidence shows that the defendant knowingly and personally 'agreed to facilitate a scheme which includes the operation or management of a RICO enterprise.'" *United States v. Young*, 720 F. App'x. 846, at *8 (9th Cir. Dec. 27, 2017). Plaintiff has not sufficiently pled that Mr. Akol knew of the alleged RICO enterprise, let alone that he personally agreed to facilitate it, *see* II.A.1, and thus cannot prevail on his RICO conspiracy claim.

Plaintiff's third claim against Mr. Akol, Claim III for a violation of the New Hampshire Consumer Protection Act, should also be dismissed. The District of New Hampshire found there is no personal jurisdiction over any of the defendants due to a lack of "minimum contacts" with the forum. Dkt. 73 at 3. It thereby found that the New Hampshire's laws cannot be applied to any of the alleged conduct. *Aanestad v.*

*Beech Aircraft Corporation*, 521 F.2d 1298, 1300 (9th Cir. 1974) ("A state may not acquire personal jurisdiction over a party without that party having certain "minimum contacts" with the forum state."). Nor could this claim be saved by being brought under California law: All of the conduct it alleges would have affected a New Hampshire resident, Plaintiff. Compl. ¶¶ 703-13. There is no California consumer that California law could protect. Dismissal is proper as Plaintiff has not pled a "cognizable legal theory" for his claim. *See Enos v. U.S. Bank*, 831 F. App'x. 289, at *2 (9th Cir. Dec. 14, 2020)

Plaintiff's final claim against Mr. Akol, Claim IV, for fraud, should also be dismissed. *See* Compl. ¶¶ 714-19. Pleading fraud requires pleading, with particularity, a fraudulent misrepresentation. *Barkett v. Sentosa Props., LLC*, 692 F. App'x. 411, at *3 (9th Cir. June 5, 2017) ("Plaintiffs did not allege a fraudulent misrepresentation and thus failed to state a claim for fraud that is plausible on its face."). The only specific statement related to the BoraJet sale that Plaintiff attributes to Mr. Akol is the claim that SBK Turkey was the Turkish Ministry of Transportation's "preferred" buyer for BoraJet. Compl. ¶ 59. And Plaintiff never specifically claims that statement was false. He alleges, as if it proves falsity, that there "were other companies and individuals interested in acquiring BoraJet … and willing to pay more money and/or total value for BoraJet." Compl. ¶ 596(d.). But even if there were other buyers willing to pay more for BoraJet, Mr. Akol's alleged statement that the SBK Turkey purchase was "preferred" by the Turkish Ministry of Transportation could still be true. What the Turkish Ministry of Transportation preferred and what other buyers were willing to pay are separate matters. Plaintiff's claim is deficient on its face. *See Barkett*, 692 F. App'x. at *3.

## CONCLUSION

The Court should dismiss Plaintiffs' case against Mr. Akol for untimely, insufficient lack of personal service, lack of personal jurisdiction and failure to state any claim against him.

1  DATED: August 31, 2022

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _____

Diane Cafferata
Attorney for Fatih Akol

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28