**BUCHALTER P.C.**
KEVIN M. LALLY (State Bar No. 226402)
klally@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
213.891.5053 (telephone)
213.896.0400 (facsimile)

**SHEEHAN PHINNEY**
ROBERT H. MILLER (*pro hac vice*)
rmiller@sheehan.com
1000 Elm Street, 17th Floor
Manchester, NH 03101-3701
(603) 627-8145 (telephone)
(603) 641-2380 (facsimile)

*Attorneys for Plaintiff Yalcin Ayasli*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YALCIN AYASLI,<br><br>Plaintiff,<br><br>v.<br><br>SEZGIN BARAN KORKMAZ, *et al.*,<br><br>Defendants. | Case No. CV: 20-9388-CAS-PD<br><br>DECLARATION OF KEVIN M. LALLY IN SUPPORT OF PLAINTIFF YALCIN AYASLI'S MOTION FOR LIMITED LIFT OF THE STAY OF PROCEEDINGS; EXHIBITS<br><br>Honorable Christina A. Snyder |

# DECLARATION OF KEVIN M. LALLY

I, Kevin M. Lally, declare as follows

1. I am an active member in good standing of the State Bar of California and a shareholder at Buchalter P.C. Along with Robert H. Miller, who is a member in good standing of the New Hampshire State Bar and who is admitted in this matter *pro hac vice,* I represent Plaintiff Yalcin Ayasli ("Dr. Ayasli") in the above-captioned civil RICO action. I make this declaration in support of Dr. Ayasli's Motion for a Limited Lift of the Stay of Proceeding.

2. A true and correct copy of the PACER docket report for the federal criminal prosecution: *United States v. Sezgin Baran Korkmaz,* No. CR 21-140-JNP (D. Utah) ("Korkmaz Criminal Action"), updated as of Sunday, June 22, 2025, is attached hereto as Exhibit A.

3. A true and correct copy of the U.S. government's detention request for Sezgin Baran Korkmaz ("Korkmaz") in the Korkmaz Criminal Action is attached hereto as Exhibit B.

4. A true and correct copy of the district court's order of pretrial detention in the Korkmaz Criminal Action is attached hereto as Exhibit C.

5. A true and correct copy of the initially issued indictment in the Korkmaz Criminal Action is attached hereto as Exhibit D.

6. A true and correct copy of the first superseding indictment, which is the operative indictment in the Korkmaz Criminal Action, is attached hereto as Exhibit E.

7. A true and correct copy of the August 3, 2023 Turkish Minute article addressing Korkmaz's release from pre-trial custody, *US Court orders release of Turkish businessman accused of fraud*, is attached hereto as Exhibit F.

8. A true and correct copy of the PACER docket report for the federal criminal prosecution: *United States v. Jacob Kingston, Lev Dermen et al.*, No. CR



BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

18-365-JNP (D. Utah) ("Kingston/Dermen Criminal Action"), updated as of Sunday, June 22, 2025, is attached hereto as Exhibit G.

9. A true and correct copy of the second superseding indictment, which is the operative indictment in the Kingston/Dermen Criminal Action, is attached hereto as Exhibit H.

10. True and correct copies of jail letters that Jacob Kingston ("Kingston") wrote to Korkmaz in advance of Kingston's trial testimony against co-conspirator Lev Aslan Dermen, also known as Levon Termendzhyan[1] ("Dermen"), in which Kingston confirms that he deceived U.S. law enforcement regarding Korkmaz's role in the money laundering conspiracy to protect Korkmaz, asks for Korkmaz's continued authorization to testify against Dermen, and addresses plans for Korkmaz to use laundered funds that remained in Türkiye, including at Korkmaz-controlled asset management firm Mega Varlik, to surreptitiously purchase forfeited assets from the U.S. government at depressed prices, are attached hereto as Exhibit I.

11. True and correct copies of relevant portions of transcripts of testimony from Dermen's trial in the Kingston/Dermen Criminal Action addressing Korkmaz's control of Turkish asset management company Mega Varlik, and the laundering of Fraud Proceeds into and through this business, are attached hereto as Exhibit J.

12. True and correct copies of relevant portions of transcripts of testimony from Dermen's trial in the Kingston/Dermen Criminal Action addressing Korkmaz's control of Luxembourg-based shell company Isanne, and the laundering of Fraud Proceeds into and through this business, are attached hereto as Exhibit K.

13. True and correct copies of relevant portions of transcripts of testimony from Dermen's trial in the Kingston/Dermen Criminal Action addressing Korkmaz's-control of pharmaceutical company Biofarma, and the laundering of Fraud Proceeds through this entity are attached hereto as Exhibit L.

[1] Although brother to Grigor Termendjian, Dermen uses a different spelling of this last name.



BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

14. True and correct copies of relevant portions of transcripts of testimony from Dermen's trial in the Kingston/Dermen Criminal Action addressing the U.S. government's difficulty in securing documents and other information from MLAT requests sent to the Republic of Türkiye are attached hereto as Exhibit M.

15. True and correct copies of relevant portions of the transcript from Dermen's sentencing proceedings addressing the identity of "grandpa" and addressing CIPA litigation involving the U.S. intelligence communities' possession of classified information on Korkmaz and Korkmaz's relationship with Ex-CIA Director James Woolsey are attached hereto as Exhibit N.

16. A true and correct copy of the Los Angeles Magazine Article addressing Korkmaz's relationship with ex-CIA Director James Woolsey, Michele McPhee, *Longtime CIA Boss Central Figure in Green Energy Swindle*, Los Angeles Magazine, October 18, 2023, is attached hereto as Exhibit O.

17. A true and correct copy of the Judgment & Conviction record for Kingston in the Kingston/Dermen Criminal Action is attached hereto as Exhibit P.

18, A true and correct copy of the Judgment & Conviction record for Dermen in the Kingston/Dermen Criminal Action is attached hereto as Exhibit Q.

19. A true and correct copy of the District Court's Memorandum Decision: Findings Re: Specific Property Subject to Forfeiture in the Kingston/Dermen Criminal Action is attached hereto as Exhibit R.

20. A true and correct copy of the court filing addressing the sale of Korkmaz-controlled business Isanne and the forfeiture of the sale proceeds to the U.S. government to offset financial penalties imposed in the Kingston/Dermen Criminal Action is attached hereto as Exhibit S.

21. A true and correct copy of the court filings addressing the sale of Korkmaz-controlled business Biofarma and the forfeiture of the sale proceeds to the U.S. government to offset financial penalties imposed in the Kingston/Dermen

Criminal Action are attached hereto as Exhibit T.

22 True and correct copies of court filings addressing how Korkmaz attempted to shield the Queen Anne yacht from forfeiture, only to have the U.S. government locate and seize the vessel in Lebanon and then sell it at forfeiture for approximately $10,110,000 to offset financial penalties imposed in the Kingston/Dermen Criminal Action are attached hereto as Exhibit U.

23. True and correct copies of court filings in the Kingston/Dermen Criminal Action documenting a $250,000 settlement between the U.S. government and UBS-AG to resolve potential claims that the U.S. government might have in connection with the Bombardier Global XRS jet that UBS-AG had repossessed from Korkmaz after Korkmaz acquired this plane from Dr. Ayasli in connection with the Borajet transaction is attached hereto as Exhibit V.

24. A true and correct copy of the PACER docket report for the federal criminal prosecution: *United States v. Grigor Termendjian*, No. CR 23-453-JLS (C.D.C.A.)[2] ("Termendjian Criminal Action") updated as of Sunday, June 22, 2025, is attached hereto as Exhibit W.

25. A true and correct copy of the indictment in the Termendjian Criminal Action is attached hereto as Exhibit X.

26. True and correct copies of court filings identifying Korkmaz as an informant and expected trial witness in the Termendjian Criminal Action and seeking full discovery of all information within the U.S. government's possession relating to Korkmaz's past dealings with the U.S. government, as well as all *Brady/Giglio* impeachment and credibility-related materials, are attached hereto as Exhibit Y.

27. A true and correct copy of the declaration and supporting exhibits of Termendjian's counsel, Ariel Neuman, Esq., in support of this motion is attached

---

[2] The indictment was returned in the District of Utah, and later transferred to the Central District of California at Termendjian's request.

hereto as Exhibit Z.

28. A true and correct copy of the grand jury subpoena issued by the Mueller Commission to Korkmaz in advance of Korkmaz's October 2017 in-person interview with Mueller Commission investigators is attached hereto as Exhibit AA.[3]

29. A true and correct copy of the PACER docket report for the federal criminal prosecution: *United States v. Michael Flynn*, No. CR 17-232-EGS (D.D.C.) ("Flynn Criminal Action"), updated as of Sunday, June 22, 2025, is attached hereto as Exhibit BB.

30. True and correct copies of the information and plea agreement in the Flynn Criminal Action is attached hereto as Exhibit CC.

31. True and correct copies of the order and supporting memorandum dismissing the Flynn Criminal Action with prejudice is attached hereto as Exhibit DD.

32. A true and correct copy of the PACER Docket report for the federal criminal prosecution: *United States v. Bijan Rafiekian and Ekim Alptekin*, No. CR 18-457-AJT (E.D.V.A.) ("Rafiekian Criminal Action"), updated as of Sunday, June 22, 2025, is attached hereto as Exhibit EE.

33. A true and correct copy of the indictment in the Rafiekian Criminal Action is attached hereto as Exhibit FF.

34. True and correct copies of the motion and order dismissing the FARA counts against Rafiekian (the entire indictment) and Turkish citizen Alptekin (a portion of the indictment) are attached hereto as Exhibit GG.

35. A true and correct copy of the PACER docket report from the federal criminal prosecution: *United States v. Eric Adams*, No CR 24-556-DEH ("Adams Criminal Action"), updated as of Sunday, June 22, 2025, is attached hereto as Exhibit

[3] Termendjian's counsel noted that the government had produced the transcript of Korkmaz's testimony before the Mueller Commission (Ex. Y at 7).

HH.

36. A true and correct copy of the indictment in the Adams Criminal Action, in which Korkmaz is the government informant identified as "Businessman #3", is attached hereto as Exhibit II.

37. True and correct copies of media reports addressing Korkmaz's status as Businessman #3 in the Adams Criminal Action, *Turkish businessman accused of defrauding US tried to donate $50k to Mayor Adams: report*, Turkish Minute, September 30, 2024; Michele McPhee, *Meet the CIA Asset Who Was Snuck Out of a Utah Jail to Take Down NYC Mayor Eric Adams*, Los Angeles Magazine, November 12, 2024, are attached hereto as Exhibit JJ.

38. A true and correct copy of relevant portions of the district court's opinion and order dismissing the Adams Criminal Action with prejudice is attached hereto as Exhibit KK.

39. A true and correct copy of undersigned counsel's February 10, 2025 e-mail to Richard Rolwing ("Mr. Rolwing"), the lead government counsel in the Korkmaz, Kingston/Dermen and Termendjian Criminal Actions, seeking information as to whether it would proceed to resolution by trial or guilty plea now that Korkmaz would no longer be needed as a testifying informant against Mayor Adams is attached hereto as Exhibit LL.

40. A certified transcript of the English language translation of Türkiye's Fourth High Criminal Court's review of the trial court evidence and prosecutor's recommendation, as well as its decision convicting Korkmaz of forgery and aggravated fraud and sentencing him to 70 months' imprisonment in an unrelated matter, dated April 1, 2021, is attached hereto as Exhibit MM.

41. A certified transcript of the English language translation of the December 6, 2022 opinion of the Yargitay, Türkiye's highest appellate court, affirming both Korkmaz's forgery and aggravated fraud convictions and the

accompanying 70-month sentence is attached hereto as Exhibit NN.

42. A true and correct copy of an English language translation of the January 20, 2021 report of the Financial Crimes Investigation Board Directorate at the Republic of Türkiye's Ministry of Treasury and Finance (the "MASAK Report") detailing the laundering of fraud proceeds through Türkiye by Korkmaz, Dermen, Kingston and others is attached hereto as OO.

43. A certified transcript of the English language translation of the money laundering indictment filed by the Turkish government on April 14, 2021, against Korkmaz, Kingston, Dermen and others is attached hereto as Exhibit PP.

44. A certified copy of the English language translation of Korkmaz's televised September 7, 2024 interview with reporter Fatih Altayli is attached hereto as Exhibit QQ.

45. A true and correct copy of the English language translation of Korkmaz's May 19, 2024 interview with CNN Türkiye is attached hereto as Exhibit RR.

46. A true and correct copy of an English language translation of Korkmaz's August 19, 2024 interview with Erkan Degirmenci is attached hereto as Exhibit SS.

47. A true and correct copy of an English language translation of Korkmaz's August 27, 2024 interview with "Uncle Zaza" is attached hereto as Exhibit TT.

48. A true and correct copy of an English language translation of Korkmaz's December 16, 2024 interview with Baris Pehlivan is attached hereto as Exhibit UU.

49. True and correct copies of Korkmaz's postings on media platform X in which Korkmaz references potential involvement with U.S.-based hotels and/or hotel development projects are attached hereto as Exhibits VV.

50. A true and correct copy of an April 18, 2025 ODA TV article, *We asked SBK, Who is in the new jet?"* in which Korkmaz claimed that he had been allocated

use of a $73 million Bombardier Global 7500 jet[4] is attached hereto as Exhibit WW.

51. A true and correct copy of a June 2025 Korkmaz posting on X in which he attaches a photo from a commercial jet and proclaims that he and a family member are embarking to "rediscover America" is attached hereto as Exhibit XX.

52. When Korkmaz's counsel initially advised undersigned counsel in October 2022 of his intent to move to have the Korkmaz Criminal Action stayed, I, along with co-counsel Robert H. Miller, addressed this issue with Mr. Rolwing. Mr. Rolwing explained that it was in the U.S. government's interests not to have its prosecution of the Korkmaz Criminal Action interrupted or adversely impacted by parallel civil litigation and that the government's position supporting the stay would be made known to the Court. Mr. Rolwing further represented the government's intent to expeditiously bring Korkmaz to justice through either a guilty plea or trial conviction.

53. Given how doggedly Mr. Rolwing had pursued Korkmaz -- *e.g.*, tracking fugitive Korkmaz across multiple borders, securing his arrest, litigating contested extradition proceedings, *etc.* -- there was no reason to believe that the U.S. government would accept "cooperation" peddled by Korkmaz, no matter how eager Korkmaz may have been to turn informant on others. Numerous additional independent factors further diminished the likelihood that Korkmaz would have any value as an informant, including: (1) each of the other charged defendants had been convicted years before Korkmaz made his initial appearance in the United States, greatly limiting the need for cooperation against his co-conspirators[5]; (2) the government had documented in multiple court filings the incredible layers of deception that Korkmaz and his associates had deployed to first orchestrate the

[4] This is a larger luxury jet than the XRS Jet described above.

[5] To rebut claims that his pretrial release was due to cooperation with the United States government, Korkmaz seized on this fact during the Altatyli interview to argue that no cooperation was possible as the Kingston/Dermen Criminal Action had resolved prior to his extradition to the United States. (Ex. QQ at 45.)

massive transnational money laundering operation on which Korkmaz's indictment was based and to later shield assets acquired with fraud proceeds from forfeiture to the U.S. government; and (3) Korkmaz's multiple prior efforts at "cooperation" with the U.S. government had contributed to highly political, deeply flawed, and ultimately failed prosecutions.

54. Dr. Ayasli, therefore, did not oppose the requested stay.

55. From 2001 to 2019, I was an Assistant United States Attorney for the United States Attorney's Office for the Central District of California, where I spent five years as the Chief of the International Narcotics, Money Laundering and Racketeering Section and approximately nine years as a Deputy Chief of the Violent and Organized Crime Section. Through these positions, I both prosecuted and supervised a large number of high profile cases involving government informants and cooperating defendants and therefore, have a deep understanding regarding practices used to develop cooperators, the circumstances under which pre-trial bond is afforded to cooperating defendants who previously were ordered detained pending trial, and how cooperator-based filings are managed on PACER, the public docket. This understanding provided both context and insight to developments in the Korkmaz Criminal Action where numerous critical documents, including but not limited to, the filings through which Korkmaz was released from pre-trial custody in July 2023 and Korkmaz's written cooperation plea agreement, were not identified in any way on the PACER docket report.

56. It is standard operating procedure for federal prosecutors to require a charged defendant – particularly one with a past history of lying to the U.S. government to intentionally obstruct a prosecution – to truthfully admit to the full scope of his/her own criminal conduct before accepting incriminating information that this individual may wish to provide against others. This is typically done through proffer sessions with members of the prosecution team and frequently is

accompanied by a guilty plea in which the individual truthfully admits to the charged conduct. Moreover, in crafting indictments based on cooperation, it is standard practice for prosecutors to include allegations that align with testimony that they know their witnesses will testify to, and not to include allegations that a witness will undercut through contrary testimony.

57. I am further aware that is exceptionally rare for PACER account entries in federal criminal proceedings to be fully concealed from public view, as the public has both a First Amendment right and a common law right to review the vast majority of court filings in post indictment federal criminal proceedings. Moreover, while filings related to cooperating defendants typically are sealed, public notice of the existence and nature of the event (*e.g.*, filing of plea agreements, presentence reports or sentencing related materials), traditionally are referenced on the docket. Only in rare instances are cooperator-based filings unnoticed on the docket.

58. Beginning in September 2024, there was a prolonged period without substantive activity on the PACER docket of the Korkmaz Criminal Action. When Korkmaz's March 2025 trial date passed without either a motion to continue the trial date or Korkmaz's trial, the specter arose that Korkmaz had pled guilty and that the docket entries for all filings after January 27, 2025 (the last procedural filing), to include the filing of Korkmaz's cooperation plea agreement, were fully concealed from the public record.

59. In investigating this matter, I discovered that the District of Utah had undertaken a pilot program where select filings, including cooperation plea agreements, would be handled in this manner but procedural filings, such as trial continuances, involving cooperation would be recorded in the traditional manner.

60. Initial efforts to confirm that Korkmaz had pled guilty through inquiries with government counsel and Korkmaz's counsel were rebuffed, albeit due to their inability to address sealed filings, which provided further support that

Korkmaz actually had entered a guilty plea.

61. Further support for this fact came through the Ninth Status Report addressing the stay. In all prior filings, Korkmaz cited to a future trial date when advising the Court of the need to continue the stay. In this status report, no trial date was cited, rather Korkmaz advised the Court that the stay should remain in effect "until the completion of the trial proceedings in the Korkmaz action." Through this filing, Dr. Ayasli advised the Court that that there was "reason to believe" that Korkmaz had pled guilty and that he would be addressing the scope and timing of lifting the stay with the interested parties. (Compare Dkt. 197, 198)

62. During the meet and confer process, Mr. Miller and I continued to seek confirmation that Korkmaz pled guilty. In doing so, we expressed that there was considerable and compelling evidence that Korkmaz had pled guilty, that we intended to identify this fact in our filing, and that a limited lifting of the stay, at a minimum, was appropriate. During these discussions, it was confirmed that Korkmaz had pled guilty and that he would be sentenced after the Termendjian trial, where he was expected to be a government witness.

63. Ultimately, the government advised us that it would not oppose a limited lifting of the stay to allow for procedural and jurisdictional matters to be litigated, with the stay remaining in place for all merits related litigation. A true and correct copy of the e-mail memorializing this position is attached as Exhibit YY.

64. After elongated discussions, Korkmaz's counsel ultimately concluded that this matter could not resolve through stipulation and that Korkmaz would oppose any lifting of the stay through his sentencing.

//

//

65. Neither Kingston nor defendant Fatih Akol responded with a position as to this motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I could testify to these facts if called to testify.

Dated: June 30, 2025

KEVIN M. LALLY, ESQ.



BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES